# Exhibit A

## EXCLUSIVE RIGHT TO SELL AND/OR LEASE COMMERCIAL PROPERTY

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

**Pennsylvania Association of Realtors®**

Broker (Company) **Mountain Realty ERA Powered**     Licensee(s) (Name) **Marshall L. Miller**

Company License #**RO302864**     State License # **AB028898L**
Company Address **914 Fairfield Road, Gettysburg, PA 17325**     Direct Phone(s) **(717)337-9950**
Cell Phone(s) **(717)752-0225**
Company Phone **(717)337-9950**     Licensee Fax **(717)337-1133**
Company Fax **(717)337-1133**     Email **marty.miller@eramountainrealty.com**

Owner    **Alan Kim Patrono, Jane H. Patrono**

**98 E. Broadway, Gettysburg, PA 17325**

Company/Entity (if applicable) _____
Representative/Authorized Signer _____ Title _____
Owner's mailing address   **98 E. Broadway, Gettysburg, PA 17325**

Phone _____    Cell Phone **(717)253-1883**
E-mail **alank@appleleaf.com**    Fax _____

**Owner understands that this Listing Contract is between Broker and Owner.**
**Does Owner have a listing contract for this Property with another broker?** ☐ Yes    ☒ No
**If yes, explain:** _____

### 1. PROPERTY

(A) Address **28 W. Middle St, Gettysburg, PA 17325**
Municipality **Gettysburg Boro**     County **Adams**
Tax Identification #(s) **16010-0111---000**

Deed Book **6793**
       Page **127**
Zoning Classification & Present Use **OT - Old Town District / Elm Street Overlay/Historic Overlay/Streetscape Enhancement Overlay District - Offices**
☒ A legal description or a description of the Property is attached to this Contract.
Units in Property: **1**     Units Being Listed: **1**
Is the Property or any of its units currently leased? ☐ Yes   ☒ No
    If yes, explain: _____

(B) **Inclusions:** Included with the Property are items listed here or ☐ listed in a property description sheet attached:

_____
_____
_____

The Property is not being sold with a business unless otherwise stated here: _____

(C) **Exclusions:** Excluded from the Property are items and leased equipment listed here or ☐ listed in the attached property description sheet: _____
_____

### 2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM") (8-24)

(A) **No law or Association of Realtors® has set or recommended the term of this contract.** Broker/Licensee and Owner have discussed and agreed upon the term of this Contract.

(B) **Starting Date:** This Contract starts when signed by Broker and Owner, unless otherwise stated here: _____

(C) **Ending Date:** This Contract ends at 11:59 PM on_____ **October 31, 2026** _____. By law, the term of a listing contract may not exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is automatically 364 days from the Starting Date of this Contract.

Broker/Licensee Initials: _____     XLSC Page 1 of 9     Owner Initials: _____

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2025
rev.7/25; rel. 9/25

Case 1:25-bk-02214-HWV    Doc 55-1    Filed 09/30/25    Entered 09/30/25 15:42:37    Desc
Exhibit A-Listing Agreements    Page 1 of 18

### 3. DUAL AGENCY

Owner agrees that Broker and Broker's Licensees may also represent the buyer/tenant of the Property. A broker is a Dual Agent when a broker represents both a buyer/tenant and Owner in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer/tenant and Owner in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer/tenant and Owner. If the same Licensee is designated for a buyer/tenant and Owner, the Licensee is a Dual Agent. Owner understands that Broker is a Dual Agent when a buyer/tenant who is represented by Broker is viewing properties listed by Broker.

☒ **Dual Agency is not applicable.**

### 4. DESIGNATED AGENCY

Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests of Owner. If Licensee is also the buyer/tenant's agent, then Licensee is a DUAL AGENT.

☐ **Designated Agency is not applicable.**

### 5. LISTED PRICE AND TERMS

(A) Owner is hiring Broker to negotiate the following type of transaction regarding the disposition of the Property:

☒ A sale, for the following price and terms:**$420,000.00** _____

_____

_____

_____

_____

or any other price and terms agreeable to Owner.

☐ A lease, or other tenancy, for the following price and terms described here, or by ☐ an exhibit/addendum outlining lease terms that is attached as part of this Contract, or any other price and terms agreeable to Owner: _____

_____

_____

_____

_____

_____

(B) Reasonable marketing expenses will be paid by Broker as follows: _____

_____

_____

_____

(C) Reasonable marketing expenses will be paid by Owner as follows: _____

_____

_____

_____

### 6. BROKER'S DUTY

(A) Broker is engaged as Owner's sole Owner Agent (Listing Agent) as described in the Consumer Notice to represent Owner, to market the Property, and to procure buyers and/or tenants for the Property. Broker will use reasonable diligence and care to procure buyers and/or tenants for the Property.

(B) Broker will not, unless otherwise agreed to in a separate, written agreement, provide management, repair, collection, legal, tax, or other services.

### 7. OWNER'S DUTY

(A) Owner will not enter into another listing contract for the Property(s) identified in Paragraph 1 with another broker that begins before the Ending Date, or any extensions, of this Contract.

(B) Owner will cooperate with Broker to facilitate the sale and/or lease of the Property.

(C) All showings, negotiations and discussions about the sale, lease, or other tenancy of the Property will be done by Broker on Owner's behalf. All written or oral inquires that Owner receives or learns of regarding the Property, regardless of the source, will be referred to Broker.

(D) Within __5__ days of the Starting Date of this Contract, Owner will provide to Broker:
  1. Copies of all leases, subleases, rental agreements, option rights, rights of first refusal, rights of first offer, or other documents containing any other limitations on Owner's ability to finalize a sale or lease of the Property, including any changes to these after the original delivery of this information.
  2. If available to Owner, copies of building plans, inspection reports, and environmental surveys. If the transaction is a sale, Owner will also deliver to Broker, within __5__ days of the Starting Date of this Contract, available title reports, boundary surveys, and existing notes and mortgages that may continue to affect the Property after settlement.

(E) Owner will not permit any real estate signs, other than those belonging to Broker, to be placed on the Property during the term of this Contract.

Broker/Licensee Initials: _MLM_      XLSC Page 2 of 9      Owner Initials: _AKP / GWP_

(F) Owner has full responsibility for maintenance, repair, replacement, operation, and security of the Property. Broker will not be liable for any loss, damage, or injury to the Property or to Owner, any current tenants of the Property, any buyer, prospective buyer, tenant, prospective tenant, or any other person, including those that may occur as a result of Broker's use of a lock box. Owner will hold harmless Broker, Licensee, Broker's employees and agents, and will indemnify such persons and entities from and against all claims, suits, and liability as may arise from property damage or injuries that occur on or about the Property, including judgments, costs of defense, attorneys' fees, and settlement. Owner hereby releases and relieves Broker, and waives Owner's entire right of recovery against Broker, for direct or consequential loss or damage arising out of or incident to the perils covered by insurance carried by Owner, whether or not due to the negligence of Broker.

**8. BROKER'S FEE (8-24)**

(A) **No law or Association of Realtors® has set or recommended the Broker's Fee.** Broker/Licensee and Owner have discussed and agreed upon the terms of the Broker's Fee.

(B) Broker's Fee in the case of a sale is __**6.000**__ % of the gross purchase price of real property, AND $__**295.00**_____, AND __**n/a**__ % of the gross purchase price of personal property, unless otherwise stated here: _____

(C) Broker's Fee in the case of a lease is ___**n/a**___ % of all rent to be collected from tenant AND $ **n/a**_____, unless otherwise stated here: **n/a**

(D) Broker's Fee for any options, renewals, extensions, expansions, or any other continued tenancy is ___**n/a**___ % of the rent to be collected AND $**n/a**_____, unless otherwise stated here: **n/a**

(E) Broker's fee if a tenant procured by Broker later purchases the Property is _____**n/a**_____ of/from the sale price and paid by Owner at settlement.

**9. COOPERATING COMPENSATION OFFERED TO BROKERS WORKING WITH BUYERS (8-24)**

(A) Licensee(s) has explained Seller's options and company policies regarding compensation and cooperation with other brokers. Even though a cooperating broker's fee, or a portion of it, may be paid by the listing broker, the cooperating broker will continue to represent the interests of the buyer.

  (1) In the event of a **purchase transaction** where a buyer is working with a real estate broker, Seller authorizes and instructs Broker to offer cooperating compensation in the amount of _____**2.5%**_____ of/from the Purchase Price (0, if not specified), paid from the Broker's Fee, to a cooperating broker who is the procuring cause of a successful transaction. Broker will document the agreed-upon amount by using a form such as the Cooperating Broker Compensation form (PAR Form CBC) or a similar agreement.

  (2) In the event of a **lease transaction** where a tenant is working with a real estate broker, Seller authorizes and instructs Broker to offer cooperating compensation in the amount of _____**n/a**_____ of the total lease value (0, if not specified), paid from the Broker's Fee, to a cooperating broker who is the procuring cause of a successful transaction. Broker will document the agreed-upon amount by using a form such as the Cooperating Broker Compensation Agreement for Rentals (PAR Form CBC) or a similar agreement.

  (3) If Listing Broker is paid a fee for options, renewals, extensions, expansions, or any other continued tenancy where Tenant's original lease resulted from Leasing Broker's services, Listing Broker agrees to offer cooperating compensation in the amount of _____**n/a**_____ of the total value of the options, renewals, extensions, expansions, or any other continued tenancy (0, if not specified), paid from the Broker's Fee, to a cooperating broker whose efforts resulted in the initial lease.

(B) If Broker uses a Multiple Listing Service (MLS) to market the property, the rules of the MLS do not permit Broker to advertise cooperating compensation through the MLS or in any other system or platform that utilizes data supplied by the MLS. Seller authorizes Broker to advertise or otherwise inform potential buyers and their brokers about any offer of cooperating compensation via any other method of marketing or communication authorized by this Contract, unless otherwise stated here: _____

**10. SELLER CONCESSIONS (8-24)**

Sellers sometimes offer to make financial concessions towards paying buyer's costs at settlement. Seller concessions could be used to pay any costs incurred by buyer, as acceptable to a mortgage lender, if any, including brokerage fees charged by a broker working with the buyer and/or other ordinary and customary closing costs. Any seller concession must be negotiated and included in an agreement of sale to be binding on the buyer and seller. Even though a cooperating broker's fee, or a portion of it, may be paid by a seller, the cooperating broker will continue to represent the interests of the buyer.

Broker/Licensee Initials: _MLM_____  XLSC Page 3 of 9  Owner Initials _AKP/ QHP_

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

(A) **In addition to cooperating compensation offered by Broker, if any,** Seller is willing to consider negotiations in which buyers may request seller concessions, unless otherwise stated here: **n/a**

(B) Seller authorizes Broker to advertise or otherwise inform potential buyers and their brokers about Seller's willingness to negotiate seller concessions, including a maximum amount of up to **n/a** % or $**n/a** of/from the Purchase Price (amount is fully negotiable in an agreement of sale, if not specified), via the MLS any other method of marketing or communication authorized by this Contract, unless otherwise stated here: **n/a**

## 11. PAYMENT OF BROKER'S FEE

(A) **If Sale or Lease Occurs**
1. **Owner will pay Broker's Fee if the Property, or any ownership interest in it, is sold, leased, or exchanged at the listed price or any price acceptable to Owner, during the term of this Contract, by Broker, Licensee, Owner, or by any other person or broker.**
2. Owner will pay Broker's Fee if negotiations that are pending at the Ending Date of this Contract result in a sale, lease or other tenancy.
3. In the case of a sale, Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the transaction involves an installment contract, then Broker's Fee will be paid upon the execution of the installment contract. In the case of a lease, Broker's Fee will be paid upon execution of a lease by Owner and a tenant.
4. Owner will pay Broker's Fee in United States currency. If Owner fails to pay Broker any amount when due under this Contract, then the amount owed will bear interest at the rate of 15 percent per year.
5. Owner will pay Broker's Fee after the Ending Date of this Contract IF:
   a. The Property is sold, leased, or exchanged in whole or in part within __**90**__ days of the Ending Date, AND
   b. The Property was presented to buyer/tenant, or buyer/tenant negotiated to buy or lease the Property, during the term of this Contract. Owner will not owe Broker's Fee under the provisions of subparagraph (A) if, after the expiration of this Contract, Owner has entered into an exclusive right to sell or lease contract for the Property with another broker at the time of the sale.

(B) **If Sale or Lease Does Not Occur**
In the event of any of the following, Broker's Fee will be calculated on the listed price of the Property. Owner will pay Broker's Fee when:
1. **A ready, willing, and able buyer, or in the case of a lease or other tenancy, a ready, willing, and able tenant, is found by Broker or by anyone, including Owner.** A willing buyer is one who will buy the Property at the price and terms stated in this Contract, or at any other price and terms agreeable to Owner. A willing tenant is one who will lease the Property at the price and terms stated in this Contract, or at any other price and terms agreeable to Owner.
2. The Property, or any part of it, is taken by any government for public use (Eminent Domain) which makes the Property unmarketable in its total state as offered in this Contract.
3. The Property, or an interest in it, is voluntarily or involuntarily donated or transferred.
4. Owner is a partnership, joint venture, limited liability company, corporation, trust or other entity, and any interest in Owner is voluntarily or involuntarily sold, contributed, conveyed, or transferred to another person or entity that, as of the date of this Contract, does not have any ownership interest in Owner.
5. Owner withdraws the Property from the market; acts as if the Property is not on the market; breaches, terminates or cancels this Contract; causes or allows the Property to be made unmarketable or to be reduced in value; or fails to do the things required of Owner in the Agreement of Sale or Lease.

(C) **In Case of Buyer/Tenant Default**
If a buyer/tenant enters into an Agreement of Sale or Lease, then refuses to buy or rent the Property, or if the buyer/tenant is unable to buy or rent because of failing to do the things required of the buyer/tenant in the Agreement of Sale or Lease, Owner will pay Broker:
1. **50%** of/from monies paid by buyer/tenant on account of the transaction, including, but not limited to, extension fees, option payments, liquidated damages, judgments, etc, OR
2. Broker's Fee, whichever is less.

(D) **Successors and Assigns**
If a buyer/tenant under a lease for which a Broker's Fee is payable under this Contract, its successors or assigns, or any agent, officer, employee or shareholder of a buyer/tenant purchases the Property, whether strictly in accordance with the terms of any option, right of first refusal, similar right or otherwise during the term of the lease, any extension thereof, or within _____ days after the expiration thereof, then Owner will pay the Broker's Fee in Paragraph 8(B).

## 12. BROKER NOT RESPONSIBLE FOR DAMAGES
Owner agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

Broker/Licensee Initials: _MLM_     XLSC Page 4 of 9     Owner Initials: _AKP / GUP_

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com     28 W Middle St,

## 13. BROKER INDEMNIFICATION

Owner hereby agrees that if any claims for brokerage commissions or fees are ever made against Owner and/or Broker in connection with this transaction, each party shall pay its own legal fees and costs in connection with such claims. It is further agreed that Owner will indemnify and hold harmless Broker from and against the non-performance of this Agreement by Owner or by a buyer/tenant, and from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any person or entity. This paragraph shall survive settlement.

## 14. CONFIDENTIALITY

Owner understands that a buyer/tenant or buyer/tenant's representatives might not treat the existence, terms or conditions of any offer as confidential unless there is a confidentiality agreement between Owner and buyer/tenant.

## 15. DEPOSIT MONEY

(A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Owner have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Owner may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Owner has accepted an offer.

(B) Broker, if named in a lease, will keep all deposit monies paid by or for the tenant in an escrow account until the tenancy ends, the lease is terminated, or the terms of a prior written agreement between the tenant and Owner have been met. This escrow account will be held as required by real estate licensing laws and regulations. Tenant and Owner may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Owner has accepted the lease.

(C) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(D) Owner agrees that if Owner names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Owner.

## 16. BROKER'S SERVICE TO OTHER PARTIES

Broker may provide services to a buyer/tenant for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

## 17. OTHER PROPERTIES

Owner agrees that Broker may list other properties for sale or rent and that Broker may show and sell other properties to prospective buyers/tenants.

## 18. ADDITIONAL OFFERS

Unless prohibited by Owner, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE OWNER ENTERS INTO AN AGREEMENT OF SALE OR LEASE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 19. PROPERTY INFORMATION

Owner is hereby advised of Owner's duty to disclose known material defects and conditions about the Property. If the Property contains not less than one and not more than four residential dwelling units Owner may be required by the Real Estate Seller Disclosure  Law (68 C.S. §7301 et seq.) to disclose these defects and conditions on a separate disclosure statement.

(A) Within 5 days of the Starting Date of this Contract, Owner will (☒ will not) deliver a completed Property Information Sheet to Broker.

(B) Owner represents and warrants that there are no known material defects or environmental hazards affecting the Property including, but not limited to, contamination by radon gas, asbestos, polychlorinated biphenyls, underground storage tanks, or petroleum products, except as noted on a separate disclosure statement or as follows: _____

_____

_____

(C) Owner hereby agrees to indemnify, defend (with counsel reasonably acceptable to Broker), and hold Broker harmless against claims, actions, suits, liabilities, costs, and expenses arising out of Owner's failure to disclose known material defects and conditions, including judgments, costs of defense, attorneys' fees, and settlement. This clause will survive the Contract.

Broker/Licensee Initials: _MLM_____  XLSC Page 5 of 9  Owner Initials: _ALP/QHP____

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

28 W Middle St,

## 20. OWNER REPRESENTATIONS

Owner represents and warrants that:

(A) Owner, or each person signing this Contract on behalf of Owner, has the full right, power and authority to execute this Contract as or on behalf of Owner;

(B) Owner owns the Property and/or has the full right, power, and authority to complete the sale or lease as provided in this Contract;

(C) Neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate, or conservatorship proceeding;

(D) Owner has no notice or knowledge that any tenant or sub-tenant of the Property, if any, is the subject of a bankruptcy or insolvency proceeding;

(E) There are no effective, valid, or enforceable option rights, rights of first refusal, rights of first offer, or any other restrictions, impediments, or limitations on Owner's right, ability, and capacity to complete a sale or lease of the Property, except as disclosed in writing as required in Paragraph 7(D).

(F) If the transaction is a sale, Owner is legally able to sell the Property with a fee simple title, free and clear, except as follows: (additional mortgage, equity loans, debts, liens, judgments, or taxes in arrears, municipal notices or assessments received, mineral rights agreements, etc.) _____

_____

_____

(G) This Property is not subject to preferential tax treatment unless otherwise indicated here: _____

_____

_____

_____

**If this Property is subject to preferential tax treatment, Owner should seek advice from legal and financial experts.**

## 21. RECORDINGS ON THE PROPERTY

(A) Owner understands that potential buyers viewing the Property may engage in photography, videography or videotelephony on the Property. Owner should remove any items of a personal nature Owner does not wish to have photographed or recorded, such as family photos, important or confidential paperwork (including any information related to the listing or communications with Broker or Licensee) and all other personally identifiable information such as birthdates, social security numbers, telephone numbers, etc. Owner is responsible for providing this same notification to any occupants of the Property.

(B) Any person who intentionally intercepts oral communications by electronic or other means without the consent of all parties is guilty of a felony under Pennsylvania law. Owner understands that recording or transmitting audio may result in violation of state or federal wiretapping laws. **Owner hereby releases all BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them, and any PERSON, FIRM or CORPORATION who may be liable by or through them, from any claims, lawsuits and actions which may arise from any audio or video recordings occurring in or around the Property.**

## 22. RECOVERY FUND

Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

## 23. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA

Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

## 24. TRANSFER OF THIS CONTRACT

(A) Owner agrees that Broker may transfer this Contract to another broker when:
   1. Broker stops doing business, OR
   2. Broker forms a new real estate business, OR
   3. Broker joins his business with another.

(B) Broker will notify Owner immediately in writing if Broker transfers this Contract to another broker. Owner will follow all requirements of this Contract with the new broker.

## 25. ALTERNATIVE TRANSACTION

If the sale or lease of the Property changes to any other transaction, including but not limited to sale, lease, exchange, option to buy, right of first refusal, ground lease, sublease or assignment of lease, or expansion or relocation of Tenant in any other property of Owner, then Broker will be Owner's sole and exclusive Agent for the transaction and will represent Owner under the terms and conditions of this Contract.

## 26. CONFLICT OF INTEREST

It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Owner's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Owner in writing in a timely manner.

**Broker/Licensee Initials:** _MLM_  XLSC Page 6 of 9  Owner Initials: _AKP / JNP_

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    28 W Middle St,

## 27. ENTIRE CONTRACT

This Contract is the entire agreement between Broker and Owner. Any verbal or written agreements that were made before are not a part of this Contract.

## 28. CHANGES TO THIS CONTRACT

All changes to this Contract must be in writing and signed by Broker and Owner.

## 29. MARKETING OF PROPERTY (9-25)

(A) Marketing Services

1. A Multiple Listing Service (MLS) and Commercial Information Exchange (CIE) are subscription services used by real estate licensees to market properties to other subscribers. MLS and CIE marketing are governed by specific rules and policies, which may differ depending on the service used.

2. Owners have the right to decide whether their Property will be marketed in an MLS, CIE, or otherwise, but should understand that opting out of MLS marketing may restrict Broker's ability to market the Property in other ways.

☐ Broker **will not** use a Multiple Listing Service (MLS), Commercial Information Exchange (CIE) or other distribution methods to advertise the Property to other real estate brokers and salespersons. Owner understands and agrees that the listing may be reported to an MLS, but will not be marketed for sale via an MLS. Further, Seller understand and agrees that any and all public marketing of the Property through the use of other means such as signs, social media, and public-facing websites may be restricted. Owner may be required to sign an additional waiver or release to comply with MLS rules and policies.

☒ Broker will use the following to advertise the Property to other real estate brokers and salespersons (check all that apply):

☒ MLS ☐ CIE ☒ Other distribution methods

3. Owner agrees that Broker and Licensee, and an MLS, CIE or other distribution methods are not responsible for mistakes in advertising of the Property.

(B) Virtual Office Website (VOW) and Internet Data Exchange (IDX)

1. Some brokers may use a VOW or IDX, which are governed by specific rules and policies. Owners have the right to control some elements of how their property is displayed on a VOW and/or IDX website(s).

2. Owner elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):

☐ Comments or reviews about Owner's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Owner's listing.

☐ Automated estimates of the marketing value of Owner's listing, or a hyperlink to such estimates, in immediate conjunction with Owner's listing.

(C) Other

1. Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here: _____

2. Some MLSs have rules that allow delayed marketing of listed properties, or delayed buyer access to those properties. These rules may be known as "delayed marketing," "delayed showings," "coming soon," "temporarily off market" or other similar terms. Seller may be required to sign an additional waiver or release to comply with MLS rules and policies.

☐ Broker **will not** use delayed marketing/access strategies for the Property.

☒ Broker will use delayed marketing/access strategies stated here, as permitted by MLS rules: **Coming Soon will be utilized**

3. ☐ Owner does not want the listed Property to be displayed on the Internet.

☐ Owner does not want the address of the listed Property to be displayed on the Internet.

4. Owner understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.

(D) Owner understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to the open house.

(E) Other _____

## 30. PUBLICATION OF SALE PRICE

Owner is aware that the MLS, CIE, newspapers, websites, and other media may publish the final sale price of the Property.

**Broker/Licensee Initials:** _MLM_ XLSC Page 7 of 9 Owner Initials: _AKP/JRP_

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

28 W Middle St,

## 31. TAXES & ASSESSMENTS

(A) At settlement, Owner will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here:_____

(B) Yearly Property Taxes $ **9,823.00**            Property Assessed Value $**455,500.00**

(C) Is the property preferentially assessed (including a tax abatement)?   ☐ Yes   ☒ No

     If applicable, how many years remain?_____

(D) Municipality Assessments $ **Yrly Storm Water Mgt Fee**

## 32. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA)

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on disposition of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/buyer, as the withholding agent, may request that you complete a FIRPTA Affidavit regarding your status as a foreign person as defined by the Act. Owner agrees to comply, if applicable.

## 33. TITLE & POSSESSION

(A) Owner will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Owner will transfer full rights of ownership (fee simple) to a buyer except as follows:

    ☐ Oil    ☐ Gas    ☐ Mineral    ☐ Coal    ☐ Other

    If checked, please explain: _____

    _____

(C) Owner has, as of the date of this Agreement:

    ☐ First mortgage with_____Amount of balance $ _____

       Address _____

       Phone _____Acct. #_____

    ☐ Second mortgage with _____Amount of balance $ _____

       Address _____

       Phone _____Acct. #_____

    ☐ Line of credit with _____Amount of balance $ _____

       Address _____

       Phone _____Acct. #_____

    ☐ Owner authorizes Broker to receive mortgage payoff and/or line of credit payoff information from lender(s).

(D) Owner has, as of the date of this Agreement:

    ☐ Judgments $_____    ☐ Past Due Municipal Assessment $ _____

    ☐ Past Due Property Taxes $ _____    ☐ Federal Tax Liens $ _____

    ☐ State Tax Liens $_____    ☐ Other: _____

(E) Owner will immediately notify Broker in the event any of the above information sufficiently changes to render it materially inaccurate. This includes, but is not limited to, the satisfaction of a mortgage, a change in account number, the refinance of a mortgage, and the entry of a new tax lien.

## 34. BUYER FINANCING

Owner will accept the following arrangements for buyer to pay for the Property:

☒ Cash    ☒ Conventional mortgage    ☐ Other _____

## 35. BANKRUPTCY

Owner will notify Broker immediately in the event the Property comes under the jurisdiction of a bankruptcy court. If Owner is the subject of bankruptcy, Owner will take all steps necessary to obtain court approval of Broker's appointment to sell or lease the Property, unless Broker elects to terminate this Contract upon notice of the bankruptcy.

## 36. COPYRIGHT

In consideration of Broker's efforts to market Owner's Property as stated in this Contract, Owner grants Broker a non-exclusive, world-wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Owner to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Owner's Property. This License permits Broker to submit the Materials to one or more Multiple Listing Services, Commercial Information Exchanges or other distribution methods, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Owner and shall survive the ending of this Contract. Owner also grants Broker the right to sublicense to others any of these rights granted to Broker by Owner. Owner represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Owner understands that the terms of the License do not grant Owner any legal right to any works that Broker may produce using the Materials.

Broker/Licensee Initials: _MLM_          XLSC Page 8 of 9          Owner Initials: _AKP / QLP_

Case 1:25-bk-02214-HWV   Doc 55-1   Filed 09/30/25   Entered 09/30/25 15:42:37   Desc
Exhibit A-Listing Agreements   Page 8 of 18

## 37. NOTICE BEFORE SIGNING

When signed by both parties, this is a legal contract. Owner acknowledges that Broker has advised Owner to consult and retain experts to advise and represent Owner concerning the legal and tax effects of this Contract and the completion of the sale, lease, or alternative transaction, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title and environmental aspects. Broker will have no obligation to investigate any such matters unless expressly agreed to in writing by Broker and Owner. Owner further acknowledges that in determining the financial soundness of any prospective buyer, tenant, or security offered, Owner will rely solely on Owner's own investigation, regardless of Broker's assistance in gathering information.

## 38. SPECIAL CLAUSES

(A) **The following are part of this Listing Contract if checked:**
- ☐ Commercial Property Information Sheet (PAR Form CPI)
- ☐ Consumer Services Fee Addendum (PAR Form CSF)
- ☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
- ☐ Short Sale Addendum (PAR Form SSL)
- ☐ _____
- ☐ _____

(B) **Additional Terms:**
**Sale subject to Bankruptcy Court Approval.**
**Sale subject to sellers' ability to do a 1031 Tax Deferred Exchange.**

_AKP JHP_ **Owner has read the Consumer Notice, where applicable, as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.**

_____ **Owner has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.**

_____ **Owner has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.**

**Owner has read the entire Contract before signing. Owner must sign this Contract.**

Owner gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed. Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties. This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE BEFORE SIGNING: IF OWNER HAS LEGAL QUESTIONS, OWNER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.**

OWNER _Alan Kim Patrono_ **Alan Kim Patrono** DATE _9/25/2025_
OWNER _Jane H. Patrono_ **Jane H. Patrono** DATE _9/25/2025_
OWNER _____ DATE _____

BROKER (Company Name) **Mountain Realty ERA Powered**
AUTHORIZED PERSON _Marshall L. Miller_ DATE _09/25/2025_
**Marshall L. Miller**

**XLSC Page 9 of 9**

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

28 W Middle St,



# LISTING CONTRACT
## EXCLUSIVE RIGHT TO SELL AND/OR LEASE COMMERCIAL PROPERTY

XLSC

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

Broker (Company) **Mountain Realty ERA Powered**

Licensee(s) (Name) **Marshall L. Miller**

Company License #**RO302864**

Company Address **914 Fairfield Road, Gettysburg, PA 17325**

Company Phone **(717)337-9950**

Company Fax **(717)337-1133**

State License # **AB028898L**

Direct Phone(s) **(717)337-9950**

Cell Phone(s) **(717)752-0225**

Licensee Fax **(717)337-1133**

Email **marty.miller@eramountainrealty.com**

Owner **Jane H. Patrono (1/3 Interest), Hauser Family Farms LLC**

Company/Entity (if applicable) _____

Representative/Authorized Signer **Jane H. Patrono**          Title **Member**

Owner's mailing address **98 E. Broadway, Gettysburg, PA  17325**

Phone _____     Cell Phone **(717)253-1883**

E-mail **alank@appleleaf.com**     Fax _____

**Owner understands that this Listing Contract is between Broker and Owner.**
**Does Owner have a listing contract for this Property with another broker?** ☐ Yes   ☒ No
**If yes, explain:** _____

## 1. PROPERTY

(A) Address **496 Cashtown Road, Cashtown, PA  17310**
Municipality **Franklin Twp**                County **Adams**
Tax Identification #(s) **12D09-0023---000**

Deed Book **4944**

Page **0209**

Zoning Classification & Present Use **Agricultural / Vineyards & Event Center**

☒  A legal description or a description of the Property is attached to this Contract.
Units in Property: _____ Units Being Listed: _____
Is the Property or any of its units currently leased?  ☐ Yes   ☐ No
    If yes, explain: _____

(B) **Inclusions:** Included with the Property are items listed here or  ☐ listed in a property description sheet attached:

_____
_____
_____

The Property is not being sold with a business unless otherwise stated here: _____

(C) **Exclusions:** Excluded from the Property are items and leased equipment listed here or ☐ listed in the attached property description sheet: _____
_____
_____

## 2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM") (8-24)

(A) **No law or Association of Realtors® has set or recommended the term of this contract.** Broker/Licensee and Owner have discussed and agreed upon the term of this Contract.

(B) **Starting Date:** This Contract starts when signed by Broker and Owner, unless otherwise stated here: _____

(C) **Ending Date:** This Contract ends at 11:59 PM on ___**October 31, 2026**___. By law, the term of a listing contract may not exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is automatically 364 days from the Starting Date of this Contract.

Broker/Licensee Initials: _MLM_          XLSC Page 1 of 9          Owner Initials: _JHP_

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2025
rev.7/25; rel. 9/25

Mountain Realty ERA Powered, 914 Fairfield Rd Gettysburg PA 17325          Phone: 7173379950     Fax: 7173371133
Marshall L. Miller          Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com          496 Cashtown Rd,

Case 1:25-bk-02214-HWV    Doc 55-1    Filed 09/30/25    Entered 09/30/25 15:42:37    Desc
Exhibit A-Listing Agreements    Page 10 of 18

### 3. DUAL AGENCY

Owner agrees that Broker and Broker's Licensees may also represent the buyer/tenant of the Property. A broker is a Dual Agent when a broker represents both a buyer/tenant and Owner in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer/tenant and Owner in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer/tenant and Owner. If the same Licensee is designated for a buyer/tenant and Owner, the Licensee is a Dual Agent. Owner understands that Broker is a Dual Agent when a buyer/tenant who is represented by Broker is viewing properties listed by Broker.

☒ **Dual Agency is not applicable.**

### 4. DESIGNATED AGENCY

Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests of Owner. If Licensee is also the buyer/tenant's agent, then Licensee is a DUAL AGENT.

☐ **Designated Agency is not applicable.**

### 5. LISTED PRICE AND TERMS

(A) Owner is hiring Broker to negotiate the following type of transaction regarding the disposition of the Property:

☒ A sale, for the following price and terms:**Value to be set by Certified Appraisal and Bankruptcy Court Approval**

_____

_____

_____

_____

or any other price and terms agreeable to Owner.

☐ A lease, or other tenancy, for the following price and terms described here, or by ☐ an exhibit/addendum outlining lease terms that is attached as part of this Contract, or any other price and terms agreeable to Owner: _____

_____

_____

_____

_____

(B) Reasonable marketing expenses will be paid by Broker as follows: _____

_____

_____

_____

(C) Reasonable marketing expenses will be paid by Owner as follows: _____

_____

_____

_____

### 6. BROKER'S DUTY

(A) Broker is engaged as Owner's sole Owner Agent (Listing Agent) as described in the Consumer Notice to represent Owner, to market the Property, and to procure buyers and/or tenants for the Property. Broker will use reasonable diligence and care to procure buyers and/or tenants for the Property.

(B) Broker will not, unless otherwise agreed to in a separate, written agreement, provide management, repair, collection, legal, tax, or other services.

### 7. OWNER'S DUTY

(A) Owner will not enter into another listing contract for the Property(s) identified in Paragraph 1 with another broker that begins before the Ending Date, or any extensions, of this Contract.

(B) Owner will cooperate with Broker to facilitate the sale and/or lease of the Property.

(C) All showings, negotiations and discussions about the sale, lease, or other tenancy of the Property will be done by Broker on Owner's behalf. All written or oral inquires that Owner receives or learns of regarding the Property, regardless of the source, will be referred to Broker.

(D) Within __10__ days of the Starting Date of this Contract, Owner will provide to Broker:
1. Copies of all leases, subleases, rental agreements, option rights, rights of first refusal, rights of first offer, or other documents containing any other limitations on Owner's ability to finalize a sale or lease of the Property, including any changes to these after the original delivery of this information.
2. If available to Owner, copies of building plans, inspection reports, and environmental surveys. If the transaction is a sale, Owner will also deliver to Broker, within __10__ days of the Starting Date of this Contract, available title reports, boundary surveys, and existing notes and mortgages that may continue to affect the Property after settlement.

(E) Owner will not permit any real estate signs, other than those belonging to Broker, to be placed on the Property during the term of this Contract.

Broker/Licensee Initials: _____MC M_____    XLSC Page 2 of 9    Owner Initials: _____JHP_____

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    496 Cashtown Rd.

(F) Owner has full responsibility for maintenance, repair, replacement, operation, and security of the Property. Broker will not be liable for any loss, damage, or injury to the Property or to Owner, any current tenants of the Property, any buyer, prospective buyer, tenant, prospective tenant, or any other person, including those that may occur as a result of Broker's use of a lock box. Owner will hold harmless Broker, Licensee, Broker's employees and agents, and will indemnify such persons and entities from and against all claims, suits, and liability as may arise from property damage or injuries that occur on or about the Property, including judgments, costs of defense, attorneys' fees, and settlement. Owner hereby releases and relieves Broker, and waives Owner's entire right of recovery against Broker, for direct or consequential loss or damage arising out of or incident to the perils covered by insurance carried by Owner, whether or not due to the negligence of Broker.

**8. BROKER'S FEE (8-24)**

(A) **No law or Association of Realtors® has set or recommended the Broker's Fee.** Broker/Licensee and Owner have discussed and agreed upon the terms of the Broker's Fee.

(B) Broker's Fee in the case of a sale is __6.000__ % of the gross purchase price of real property, AND $ __295.00__ , AND __n/a__ % of the gross purchase price of personal property, unless otherwise stated here: _____

(C) Broker's Fee in the case of a lease is __n/a__ % of all rent to be collected from tenant AND $ __n/a__ , unless otherwise stated here: __n/a__

(D) Broker's Fee for any options, renewals, extensions, expansions, or any other continued tenancy is __n/a__ % of the rent to be collected AND $__n/a__ , unless otherwise stated here: __n/a__

(E) Broker's fee if a tenant procured by Broker later purchases the Property is _____ __n/a__ _____ of/from the sale price and paid by Owner at settlement.

**9. COOPERATING COMPENSATION OFFERED TO BROKERS WORKING WITH BUYERS (8-24)**

(A) Licensee(s) has explained Seller's options and company policies regarding compensation and cooperation with other brokers. Even though a cooperating broker's fee, or a portion of it, may be paid by the listing broker, the cooperating broker will continue to represent the interests of the buyer.

(1) In the event of a **purchase transaction** where a buyer is working with a real estate broker, Seller authorizes and instructs Broker to offer cooperating compensation in the amount of __2.5 %__ of/from the Purchase Price (0, if not specified), paid from the Broker's Fee, to a cooperating broker who is the procuring cause of a successful transaction. Broker will document the agreed-upon amount by using a form such as the Cooperating Broker Compensation form (PAR Form CBC) or a similar agreement.

(2) In the event of a **lease transaction** where a tenant is working with a real estate broker, Seller authorizes and instructs Broker to offer cooperating compensation in the amount of __n/a__ of the total lease value (0, if not specified), paid from the Broker's Fee, to a cooperating broker who is the procuring cause of a successful transaction. Broker will document the agreed-upon amount by using a form such as the Cooperating Broker Compensation Agreement for Rentals (PAR Form CBC) or a similar agreement.

(3) If Listing Broker is paid a fee for options, renewals, extensions, expansions, or any other continued tenancy where Tenant's original lease resulted from Leasing Broker's services, Listing Broker agrees to offer cooperating compensation in the amount of __n/a__ of the total value of the options, renewals, extensions, expansions, or any other continued tenancy (0, if not specified), paid from the Broker's Fee, to a cooperating broker whose efforts resulted in the initial lease.

(B) If Broker uses a Multiple Listing Service (MLS) to market the property, the rules of the MLS do not permit Broker to advertise cooperating compensation through the MLS or in any other system or platform that utilizes data supplied by the MLS. Seller authorizes Broker to advertise or otherwise inform potential buyers and their brokers about any offer of cooperating compensation via any other method of marketing or communication authorized by this Contract, unless otherwise stated here: _____

**10. SELLER CONCESSIONS (8-24)**

Sellers sometimes offer to make financial concessions towards paying buyer's costs at settlement. Seller concessions could be used to pay any costs incurred by buyer, as acceptable to a mortgage lender, if any, including brokerage fees charged by a broker working with the buyer and/or other ordinary and customary closing costs. Any seller concession must be negotiated and included in an agreement of sale to be binding on the buyer and seller. Even though a cooperating broker's fee, or a portion of it, may be paid by a seller, the cooperating broker will continue to represent the interests of the buyer.

Broker/Licensee Initials: __MLM__   XLSC Page 3 of 9   Owner Initials: __JVP__

(A) **In addition to cooperating compensation offered by Broker, if any,** Seller is willing to consider negotiations in which buyers may request seller concessions, unless otherwise stated here: **n/a**

(B) Seller authorizes Broker to advertise or otherwise inform potential buyers and their brokers about Seller's willingness to negotiate seller concessions, including a maximum amount of up to **n/a** % or $**n/a** of/from the Purchase Price (amount is fully negotiable in an agreement of sale, if not specified), via the MLS any other method of marketing or communication authorized by this Contract, unless otherwise stated here: **n/a**

## 11. PAYMENT OF BROKER'S FEE

(A) **If Sale or Lease Occurs**

1. **Owner will pay Broker's Fee if the Property, or any ownership interest in it, is sold, leased, or exchanged at the listed price or any price acceptable to Owner, during the term of this Contract, by Broker, Licensee, Owner, or by any other person or broker.**

2. Owner will pay Broker's Fee if negotiations that are pending at the Ending Date of this Contract result in a sale, lease or other tenancy.

3. In the case of a sale, Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the transaction involves an installment contract, then Broker's Fee will be paid upon the execution of the installment contract. In the case of a lease, Broker's Fee will be paid upon execution of a lease by Owner and a tenant.

4. Owner will pay Broker's Fee in United States currency. If Owner fails to pay Broker any amount when due under this Contract, then the amount owed will bear interest at the rate of 15 percent per year.

5. Owner will pay Broker's Fee after the Ending Date of this Contract IF:
   a. The Property is sold, leased, or exchanged in whole or in part within **90** days of the Ending Date, AND
   b. The Property was presented to buyer/tenant, or buyer/tenant negotiated to buy or lease the Property, during the term of this Contract. Owner will not owe Broker's Fee under the provisions of subparagraph (A) if, after the expiration of this Contract, Owner has entered into an exclusive right to sell or lease contract for the Property with another broker at the time of the sale.

(B) **If Sale or Lease Does Not Occur**

In the event of any of the following, Broker's Fee will be calculated on the listed price of the Property. Owner will pay Broker's Fee when:

1. **A ready, willing, and able buyer, or in the case of a lease or other tenancy, a ready, willing, and able tenant, is found by Broker or by anyone, including Owner.** A willing buyer is one who will buy the Property at the price and terms stated in this Contract, or at any other price and terms agreeable to Owner. A willing tenant is one who will lease the Property at the price and terms stated in this Contract, or at any other price and terms agreeable to Owner.

2. The Property, or any part of it, is taken by any government for public use (Eminent Domain) which makes the Property unmarketable in its total state as offered in this Contract.

3. The Property, or an interest in it, is voluntarily or involuntarily donated or transferred.

4. Owner is a partnership, joint venture, limited liability company, corporation, trust or other entity, and any interest in Owner is voluntarily or involuntarily sold, contributed, conveyed, or transferred to another person or entity that, as of the date of this Contract, does not have any ownership interest in Owner.

5. Owner withdraws the Property from the market; acts as if the Property is not on the market; breaches, terminates or cancels this Contract; causes or allows the Property to be made unmarketable or to be reduced in value; or fails to do the things required of Owner in the Agreement of Sale or Lease.

(C) **In Case of Buyer/Tenant Default**

If a buyer/tenant enters into an Agreement of Sale or Lease, then refuses to buy or rent the Property, or if the buyer/tenant is unable to buy or rent because of failing to do the things required of the buyer/tenant in the Agreement of Sale or Lease, Owner will pay Broker:

1. **50%** of/from monies paid by buyer/tenant on account of the transaction, including, but not limited to, extension fees, option payments, liquidated damages, judgments, etc, OR

2. Broker's Fee, whichever is less.

(D) **Successors and Assigns**

If a buyer/tenant under a lease for which a Broker's Fee is payable under this Contract, its successors or assigns, or any agent, officer, employee or shareholder of a buyer/tenant purchases the Property, whether strictly in accordance with the terms of any option, right of first refusal, similar right or otherwise during the term of the lease, any extension thereof, or within _____ days after the expiration thereof, then Owner will pay the Broker's Fee in Paragraph 8(B).

## 12. BROKER NOT RESPONSIBLE FOR DAMAGES

Owner agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

Broker/Licensee Initials: _MLM_    XLSC Page 4 of 9    Owner Initials: _JW_

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    496 Cashtown Rd,

## 13. BROKER INDEMNIFICATION

Owner hereby agrees that if any claims for brokerage commissions or fees are ever made against Owner and/or Broker in connection with this transaction, each party shall pay its own legal fees and costs in connection with such claims. It is further agreed that Owner will indemnify and hold harmless Broker from and against the non-performance of this Agreement by Owner or by a buyer/tenant, and from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any person or entity. This paragraph shall survive settlement.

## 14. CONFIDENTIALITY

Owner understands that a buyer/tenant or buyer/tenant's representatives might not treat the existence, terms or conditions of any offer as confidential unless there is a confidentiality agreement between Owner and buyer/tenant.

## 15. DEPOSIT MONEY

(A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Owner have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Owner may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Owner has accepted an offer.

(B) Broker, if named in a lease, will keep all deposit monies paid by or for the tenant in an escrow account until the tenancy ends, the lease is terminated, or the terms of a prior written agreement between the tenant and Owner have been met. This escrow account will be held as required by real estate licensing laws and regulations. Tenant and Owner may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Owner has accepted the lease.

(C) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
   1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
   2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
   3. According to the terms of a final order of court.
   4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(D) Owner agrees that if Owner names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Owner.

## 16. BROKER'S SERVICE TO OTHER PARTIES

Broker may provide services to a buyer/tenant for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

## 17. OTHER PROPERTIES

Owner agrees that Broker may list other properties for sale or rent and that Broker may show and sell other properties to prospective buyers/tenants.

## 18. ADDITIONAL OFFERS

Unless prohibited by Owner, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE OWNER ENTERS INTO AN AGREEMENT OF SALE OR LEASE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 19. PROPERTY INFORMATION

Owner is hereby advised of Owner's duty to disclose known material defects and conditions about the Property. If the Property contains not less than one and not more than four residential dwelling units Owner may be required by the Real Estate Seller Disclosure Law (68 C.S. §7301 et seq.) to disclose these defects and conditions on a separate disclosure statement.

(A) Within 5 days of the Starting Date of this Contract, Owner will (☒ will not) deliver a completed Property Information Sheet to Broker.

(B) Owner represents and warrants that there are no known material defects or environmental hazards affecting the Property including, but not limited to, contamination by radon gas, asbestos, polychlorinated biphenyls, underground storage tanks, or petroleum products, except as noted on a separate disclosure statement or as follows: _____

_____

_____

(C) Owner hereby agrees to indemnify, defend (with counsel reasonably acceptable to Broker), and hold Broker harmless against claims, actions, suits, liabilities, costs, and expenses arising out of Owner's failure to disclose known material defects and conditions, including judgments, costs of defense, attorneys' fees, and settlement. This clause will survive the Contract.

Broker/Licensee Initials: _MLM_  XLSC Page 5 of 9  Owner Initials: _____

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

496 Cashtown Rd,

## 20. OWNER REPRESENTATIONS

Owner represents and warrants that:

(A) Owner, or each person signing this Contract on behalf of Owner, has the full right, power and authority to execute this Contract as or on behalf of Owner;

(B) Owner owns the Property and/or has the full right, power, and authority to complete the sale or lease as provided in this Contract;

(C) Neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate, or conservatorship proceeding;

(D) Owner has no notice or knowledge that any tenant or sub-tenant of the Property, if any, is the subject of a bankruptcy or insolvency proceeding;

(E) There are no effective, valid, or enforceable option rights, rights of first refusal, rights of first offer, or any other restrictions, impediments, or limitations on Owner's right, ability, and capacity to complete a sale or lease of the Property, except as disclosed in writing as required in Paragraph 7(D).

(F) If the transaction is a sale, Owner is legally able to sell the Property with a fee simple title, free and clear, except as follows: (additional mortgage, equity loans, debts, liens, judgments, or taxes in arrears, municipal notices or assessments received, mineral rights agreements, etc.) _____

_____

_____

(G) This Property is not subject to preferential tax treatment unless otherwise indicated here: **Clean & Green**

_____

_____

_____

**If this Property is subject to preferential tax treatment, Owner should seek advice from legal and financial experts.**

## 21. RECORDINGS ON THE PROPERTY

(A) Owner understands that potential buyers viewing the Property may engage in photography, videography or videotelephony on the Property. Owner should remove any items of a personal nature Owner does not wish to have photographed or recorded, such as family photos, important or confidential paperwork (including any information related to the listing or communications with Broker or Licensee) and all other personally identifiable information such as birthdates, social security numbers, telephone numbers, etc. Owner is responsible for providing this same notification to any occupants of the Property.

(B) Any person who intentionally intercepts oral communications by electronic or other means without the consent of all parties is guilty of a felony under Pennsylvania law. Owner understands that recording or transmitting audio may result in violation of state or federal wiretapping laws. **Owner hereby releases all BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them, and any PERSON, FIRM or CORPORATION who may be liable by or through them, from any claims, lawsuits and actions which may arise from any audio or video recordings occurring in or around the Property.**

## 22. RECOVERY FUND

Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

## 23. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA

Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

## 24. TRANSFER OF THIS CONTRACT

(A) Owner agrees that Broker may transfer this Contract to another broker when:
1. Broker stops doing business, OR
2. Broker forms a new real estate business, OR
3. Broker joins his business with another.

(B) Broker will notify Owner immediately in writing if Broker transfers this Contract to another broker. Owner will follow all requirements of this Contract with the new broker.

## 25. ALTERNATIVE TRANSACTION

If the sale or lease of the Property changes to any other transaction, including but not limited to sale, lease, exchange, option to buy, right of first refusal, ground lease, sublease or assignment of lease, or expansion or relocation of Tenant in any other property of Owner, then Broker will be Owner's sole and exclusive Agent for the transaction and will represent Owner under the terms and conditions of this Contract.

## 26. CONFLICT OF INTEREST

It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Owner's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Owner in writing in a timely manner.

**Broker/Licensee Initials:** _____ *PML/M* _____          XLSC Page 6 of 9          Owner Initials: _*GHP*_ _____

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com          496 Cashtown Rd

## 27. ENTIRE CONTRACT

This Contract is the entire agreement between Broker and Owner. Any verbal or written agreements that were made before are not a part of this Contract.

## 28. CHANGES TO THIS CONTRACT

All changes to this Contract must be in writing and signed by Broker and Owner.

## 29. MARKETING OF PROPERTY (9-25)

(A) Marketing Services

1. A Multiple Listing Service (MLS) and Commercial Information Exchange (CIE) are subscription services used by real estate licensees to market properties to other subscribers. MLS and CIE marketing are governed by specific rules and policies, which may differ depending on the service used.

2. Owners have the right to decide whether their Property will be marketed in an MLS, CIE, or otherwise, but should understand that opting out of MLS marketing may restrict Broker's ability to market the Property in other ways.

   ☐ Broker **will not** use a Multiple Listing Service (MLS), Commercial Information Exchange (CIE) or other distribution methods to advertise the Property to other real estate brokers and salespersons. Owner understands and agrees that the listing may be reported to an MLS, but will not be marketed for sale via an MLS. Further, Seller understand and agrees that any and all public marketing of the Property through the use of other means such as signs, social media, and public-facing websites may be restricted. Owner may be required to sign an additional waiver or release to comply with MLS rules and policies.

   ☒ Broker will use the following to advertise the Property to other real estate brokers and salespersons (check all that apply):
   ☒ MLS          ☐ CIE          ☒ Other distribution methods

3. Owner agrees that Broker and Licensee, and an MLS, CIE or other distribution methods are not responsible for mistakes in advertising of the Property.

(B) Virtual Office Website (VOW) and Internet Data Exchange (IDX)

1. Some brokers may use a VOW or IDX, which are governed by specific rules and policies. Owners have the right to control some elements of how their property is displayed on a VOW and/or IDX website(s).

2. Owner elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):

   ☐ Comments or reviews about Owner's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Owner's listing.

   ☐ Automated estimates of the marketing value of Owner's listing, or a hyperlink to such estimates, in immediate conjunction with Owner's listing.

(C) Other

1. Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here: _____

   _____

2. Some MLSs have rules that allow delayed marketing of listed properties, or delayed buyer access to those properties. These rules may be known as "delayed marketing," "delayed showings," "coming soon," "temporarily off market" or other similar terms. Seller may be required to sign an additional waiver or release to comply with MLS rules and policies.

   ☐ Broker **will not** use delayed marketing/access strategies for the Property.

   ☒ Broker will use delayed marketing/access strategies stated here, as permitted by MLS rules: **Coming Soon**

   _____

3. ☐   Owner does not want the listed Property to be displayed on the Internet.
   ☐ Owner does not want the address of the listed Property to be displayed on the Internet.

4. Owner understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.

(D) Owner understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to the open house.

(E) Other _____

   _____

   _____

## 30. PUBLICATION OF SALE PRICE

Owner is aware that the MLS, CIE, newspapers, websites, and other media may publish the final sale price of the Property.

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com          **496 Cashtown Rd,**

## 31. TAXES & ASSESSMENTS

(A) At settlement, Owner will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here:_____
_____

(B) Yearly Property Taxes $ **11,190.00**_____ Property Assessed Value $**643,100.00**_____

(C) Is the property preferentially assessed (including a tax abatement)? ☐ Yes ☐ No
    If applicable, how many years remain?_____

(D) Municipality Assessments $ _____

## 32. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA)

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on disposition of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/buyer, as the withholding agent, may request that you complete a FIRPTA Affidavit regarding your status as a foreign person as defined by the Act. Owner agrees to comply, if applicable.

## 33. TITLE & POSSESSION

(A) Owner will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Owner will transfer full rights of ownership (fee simple) to a buyer except as follows:
    ☐ Oil    ☐ Gas    ☐ Mineral    ☐ Coal    ☐ Other
    If checked, please explain: _____
    _____

(C) Owner has, as of the date of this Agreement:
    ☐ First mortgage with_____Amount of balance $ _____
        Address _____
        Phone _____Acct. #_____
    ☐ Second mortgage with _____Amount of balance $ _____
        Address _____
        Phone _____Acct. #_____
    ☐ Line of credit with _____Amount of balance $ _____
        Address _____
        Phone _____Acct. #_____
    ☐ Owner authorizes Broker to receive mortgage payoff and/or line of credit payoff information from lender(s).

(D) Owner has, as of the date of this Agreement:
    ☐ Judgments $_____    ☐ Past Due Municipal Assessment $ _____
    ☐ Past Due Property Taxes $ _____    ☐ Federal Tax Liens $ _____
    ☐ State Tax Liens $_____    ☐ Other: _____

(E) Owner will immediately notify Broker in the event any of the above information sufficiently changes to render it materially inaccurate. This includes, but is not limited to, the satisfaction of a mortgage, a change in account number, the refinance of a mortgage, and the entry of a new tax lien.

## 34. BUYER FINANCING

Owner will accept the following arrangements for buyer to pay for the Property:
☒ Cash    ☒ Conventional mortgage    ☐ Other _____

## 35. BANKRUPTCY

Owner will notify Broker immediately in the event the Property comes under the jurisdiction of a bankruptcy court. If Owner is the subject of bankruptcy, Owner will take all steps necessary to obtain court approval of Broker's appointment to sell or lease the Property, unless Broker elects to terminate this Contract upon notice of the bankruptcy.

## 36. COPYRIGHT

In consideration of Broker's efforts to market Owner's Property as stated in this Contract, Owner grants Broker a non-exclusive, world-wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Owner to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Owner's Property. This License permits Broker to submit the Materials to one or more Multiple Listing Services, Commercial Information Exchanges or other distribution methods, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Owner and shall survive the ending of this Contract. Owner also grants Broker the right to sublicense to others any of these rights granted to Broker by Owner. Owner represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Owner understands that the terms of the License do not grant Owner any legal right to any works that Broker may produce using the Materials.

Broker/Licensee Initials:_____ML/M_____        XLSC Page 8 of 9        Owner Initials: _GHP_

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com
496 Cashtown Rd,

**37. NOTICE BEFORE SIGNING**

When signed by both parties, this is a legal contract. Owner acknowledges that Broker has advised Owner to consult and retain experts to advise and represent Owner concerning the legal and tax effects of this Contract and the completion of the sale, lease, or alternative transaction, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title and environmental aspects. Broker will have no obligation to investigate any such matters unless expressly agreed to in writing by Broker and Owner. Owner further acknowledges that in determining the financial soundness of any prospective buyer, tenant, or security offered, Owner will rely solely on Owner's own investigation, regardless of Broker's assistance in gathering information.

**38. SPECIAL CLAUSES**

    **(A) The following are part of this Listing Contract if checked:**
- ☐ Commercial Property Information Sheet (PAR Form CPI)
- ☐ Consumer Services Fee Addendum (PAR Form CSF)
- ☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
- ☐ Short Sale Addendum (PAR Form SSL)
- ☐ _____
- ☐ _____

    **(B) Additional Terms:**
       **Sale consists of 1/3 Interest only of Hauser Family Farms, LLC.**
       **Sale Subject to Bankruptcy Court Approval.**

_____ **Owner has read the Consumer Notice, where applicable, as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.**

_____ **Owner has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.**

_____ **Owner has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.**

**Owner has read the entire Contract before signing. Owner must sign this Contract.**

Owner gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed. Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties. This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE BEFORE SIGNING: IF OWNER HAS LEGAL QUESTIONS, OWNER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.**

**OWNER** _Jane H Patrono_    Jane H. Patrono (1/3 Interest)    **DATE** _9/25/2025_

**OWNER** _____ Hauser Family Farms LLC    **DATE** _____

**OWNER** _____    **DATE** _____

**BROKER (Company Name)** Mountain Realty ERA Powered

    **AUTHORIZED PERSON** _____    **DATE** _9/25/2025_
             Marshall L. Miller

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

496 Cashtown Rd,