# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Alan Kim Patrono,<br>Jane H. Patrono,<br><br>Debtors. | Chapter 11<br><br>Case No. 1:25-bk-02214-HWV |

## ORDER

AND NOW, this _____ day of _____, 2026, upon consideration of the Motion of H&M Holdings Group, LLC ("H&M"), Hauser Family Farms, LLC ("HFF"), Hannah Hauser, and Melinda Davis (collectively referred to herein as the "Hauser Parties") for Relief from the October 22, 2025 Order Granting Debtors' Application to Employ Aaron Martin, Esquire as Special Counsel and any response thereto, it is hereby **ORDERED** that:

1. The Motion is **GRANTED**;

2. Attorney Martin is hereby **DISQUALIFIED** from serving as special counsel to the Debtors; and

3. The October 22, 2025, Order granting the Debtors' Application to Employ Aaron Martin, Esquire as Special Counsel is hereby **REVOKED**.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**Alan Kim Patrono,**<br>**Jane H. Patrono,**<br><br>         **Debtors.** | **Chapter 11**<br><br>**Case No. 1:25-bk-02214-HWV** |

**MOTION OF THE HAUSER PARTIES FOR RELIEF FROM THE OCTOBER 22, 2025 ORDER GRANTING DEBTORS' APPLICATION TO EMPLOY AARON MARTIN, ESQUIRE AS SPECIAL COUNSEL**

H&M Holdings Group, LLC ("H&M"), Hauser Family Farms, LLC ("HFF"), Hannah Hauser, and Melinda Davis (collectively referred to herein as the "Hauser Parties"), by and through their undersigned counsel, *Obermayer Rebmann Maxwell & Hippel LLP*, hereby move this Court for the entry of an order granting reconsideration of the October 22, 2025 Order granting Alan Kim Patrono ("K. Patrono") and Jane Patrono's ("J. Patrono" and collectively with K. Patrono, the "Debtors") Application to Employ Aaron Martin, Esquire as Special Counsel (the "Motion"), and in support thereof aver as follows:

**I.    INTRODUCTION**

This Motion seeks reconsideration of the Court's prior order approving the employment of Special Counsel Aaron Martin, Esquire ("Special Counsel") based on facts and circumstances that were not available to, nor properly disclosed to the Court, at the time of appointment and that demonstrate a clear and disqualifying conflict of interest. Specifically, Attorney Martin has represented both the Debtors and non-debtor parties in connection with the same underlying state court matters, without making any meaningful effort to distinguish the scope of representation, segregate services, or allocate billing between debtor and non-debtor interests. Title 11 of the

1

United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") require full disclosure, disinterestedness, and the absence of adverse interests. Those requirements are not technicalities but rather are fundamental safeguards designed to protect the estate. Here, Attorney Martin's simultaneous representation of Debtors and non-debtor defendants in the underlying state court matters without drawing a clear line between those roles requires disqualification. Accordingly, the Hauser Parties respectfully ask this Court to reconsider the October 22, 2025, Order as set forth in detail below.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S. C. § 157(b).

2. The statutory predicate for the relief sought herein is Federal Rule of Civil Procedure (the "Federal Rules") 60, made applicable herein by Bankruptcy Rule 9024.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

## III. REVELANT FACTUAL AND PROCEDURAL BACKGROUND

4. As a result of the numerous motions filed and argued before this Honorable Court by Debtors and the Hauser Parties, this Court is aware of the complex factual and procedural history of this case, and in the interest of brevity, only the relevant background necessary for the resolution of this Motion will be restated herein. This history, as set forth more fully in the Hauser Parties' Motion to Dismiss and its Exhibits filed (ECF 32), is incorporated herein as if set forth fully pursuant to Federal Rule 10(c) as incorporated by Bankruptcy Rule 7010.

5. The Debtors filed their Chapter 11 Petition under Subchapter V of the Bankruptcy Code on Friday, August 8, 2025 (the "Petition Date"). (ECF 1).

6. As of the Petition Date, the Debtors were defendants in several active state court actions initiated by the Hauser Parties in the Adams County Court of Common Pleas (collectively referred to as the "State Court Actions") as follows:

a) *H&M Holdings Group, LLC, Hauser Family Farms, LLC, Melinda H. Davis, and Hannah M. Hauser v. Alan Kim Patrono, Jane Hauser Patrono et al.* (Adams County Docket No. 2018-SU-1293)

b) *H&M Holdings Group, LLC v. Alan Kim Patrono* (Cumberland County Docket No. 2019-12301, coordinated with Adams County No. 2018-SU-1293)

c) *H&M Holdings Group, LLC v. Jane H. Patrono* (Cumberland County Docket No. 2019-12302, coordinated with Adams County No. 2018-SU-1293)

7. As of the Petition Date, the State Court Actions were scheduled for non-jury trials on damages to be held from October 23-28, 2025 with liability against the Debtors having been established well before the Petition Date.

8. On September 30, 2025, the Debtors filed an Application to Employ Aaron Martin, Esquire as Special Counsel (the "Application"). (ECF 56).

9. According to the Application, the Debtors required the services of Attorney Martin, "to represent them with respect to all legal matters relating to the State Court proceedings." (*Id.* ¶ 2).

10. The Application further represented that Attorney Martin's firm, Mette Evans & Woodside ("MEW"), was "a disinterested party as that term is defined in 11 U.S.C. § 101(14)". (*Id.* ¶ 5).

11. Moreover, the Debtors disclosed that MEW had received "the total sum of $541,981.47 **from the Debtors**" and that this amount "was expended by Special Counsel for pre-

3

petition legal services." Notably, Attorney Martin and MEW wished to retain their prepetition claim of $332,977.15 as a condition of representation as special counsel. (*Id.* ¶ 9).

12. On October 3, 2025, the Hauser Parties filed Objections to the Application, specifically raising the issue that Attorney Martin and MEW represented all defendants in the underlying State Court Actions and that the Application was a blatant attempt to otherwise obtain unsecured legal fees as administrative expenses of the estate under the guise of serving as special counsel. (ECF 58).

13. After argument on October 22, 2025, this Court granted the Application and issued an Order that specifically preserved the Hauser Parties' right to raise conflicts of interest, stating, "[n]othing in this Order shall be construed as a waiver of any party's right to raise, or of the Court's authority to address, any issue concerning the existence of a conflict of interest, whether now known or arising in the future." (ECF 68, ¶ 4).

14. Since the entry of the Order approving Attorney Martin's employment, it has become increasingly apparent that Attorney Martin is representing both the Debtors and non-debtor parties in the State Court Actions with no meaningful separation between the work performed for these parties, **nor separate time entries or billing to ensure that estate funds are not being used to subsidize non-debtor representation**.

15. Furthermore, according to the Debtors' August Monthly Operating Report filed September 17, 2025, MEW has received at least two (2) payments after the Petition Date for attorneys fees: $4,952.39 and $7,964.54 on August 11, 2025, without Bankruptcy Court authority. (ECF 41 at p. 9 of 27).

16. This Court may no longer ignore the blatant disqualifying conflict of interest posed by Attorney Martin's representation of both the Debtors and non-debtor defendants at the state

4

court level, and the Hauser Parties respectfully request that this Honorable Court revisit the issue of disqualification.

## IV. LEGAL ARGUMENT

### A. Standard for Reconsideration

17. Federal Rule 60, made applicable in bankruptcy cases by Bankruptcy Rule 9024, states, in pertinent part, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reason: (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or] (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)(6).

18. Bankruptcy Rule 9024 gives bankruptcy courts "the power to vacate or modify its orders, as long as it is equitable to do so." *In re Atravasada Land & Cattle Inc.*, 308 B.R. 255, 271 (Bankr. S.D. Tex. 2008) (quoting *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 282 (N.D. Ga. 1985); *see also In re Lenox*, 902 F. 2d 737,739-740 (9th Cir. 1990) (As courts of equity, bankruptcy courts "have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders").

19. Federal Rule 60(b)(6) gives bankruptcy courts "broad authority to relieve a party from final judgment" for any "other" reason justifying relief from the operation of the order or judgment, including a change in circumstances. *See Gledhill v. State Bank of Southern Utah (in re Gledhill)*, 76 F.3d 1070, 1080-81 (10th Cir. 1996).

### B. Standard for Employment of Special Counsel

20. "Section 327(e) allows the trustee, or as here, a debtor in possession, with court approval, to employ . . . an attorney that has represented the debtor, if such is in the best interest

of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." *In re J.S. II, L.L.C.*, 371 B.R. 311, 317 (Bankr. N.D. Ill. 2007).

21. Courts have observed that "these standards are strict and that attorneys engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration." *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005).

22. Accordingly, courts are "sensitive to preventing conflicts of interest" and require a "painstaking analysis of the facts and precise application of precedent when inquiring into alleged conflicts. If an actual conflict of interest is present, no more need to be shown … to support a denial of compensation." *Id.* (internal citations and quotations omitted).

23. "Section 327 conflicts can be sorted into three subcategories: (1) actual conflicts of interest, (2) potential conflicts of interest, and (3) appearances of conflict." *In re Boy Scouts of Am.*, 35 F.4th 149, 157 (3d Cir. 2022). "Though not unfettered, bankruptcy courts have 'considerable discretion in evaluating whether professionals suffer from conflicts.'" *Id.* (quoting In *re Pillowtex, Inc.*, 304 F.3d 246, 254 (3d Cir. 2002)).

24. "[A]ctual conflicts of interests in the § 327 context do not have a strict definition" and "Courts thus proceed 'case-by-case.'" *Id.* "Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'" *Id.*

25. "[A]n alleged conflict of interest is 'actual' and warrants disqualification under § 327(c) if there is 'active competition between two interests, in which one interest can only be

6

served at the expense of the other.'" *Byrd v. Johnson*, 467 B.R. 832, 849 (D. Md.), *aff'd sub nom. In re Byrd*, 484 F. App'x 845 (4th Cir. 2012) (quoting *In re BH & P,* 103 B.R. 556, 563 (Bankr.D.N.J. 1989)).

26. "[C]ourts have recognized that a professional has a disabling conflict if it has 'either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors— an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *In re JMK Constr. Grp., Ltd.*, 441 B.R. 222, 229–30 (Bankr. S.D.N.Y. 2010) (quoting *In re Martin,* 817 F.2d 175, 180 (1st Cir.1987)). "Thus, disqualification is appropriate 'if it is plausible that the representation of another interest may cause the debtor's attorney to act any differently than they would without other representation.'" *Id.*

27. "The Bankruptcy Court has discretion to deny compensation for even a potential conflict of interest." *In re Witchey Enters., Inc.*, No. 23-1883, 2024 WL 2827928, at *3 (3d Cir. June 4, 2024) (Bankruptcy Court did not abuse its discretion when it denied fee application because attorney's concurrent representation of small business debtor and principal who was also a creditor was conflict of interest that he was required to disclose but did not); *see also In re Boy Scouts of Am.*, 35 F.4th 149, 158 (3d Cir. 2022) ("disqualification is at the court's discretion for attorneys with potential conflicts"). "A potential conflict can then be defined as one in which the competition is presently dormant, but may become active if certain contingencies occur." *In re BH & P, Inc.*, 103 B.R. at 563.

28. The adverse interest limitations set forth in Section 327 governing the employment of professionals cannot be excused by waiver. *See In re Am. Energy Trading, Inc.*, 291 B.R. 154, 158 (Bankr. W.D. Mo. 2003) (trustee could not waive actual conflict to employ law firm as special counsel to prosecute malpractice claim against debtors' former attorney; *see also In re Am.*

7

*Printers & Lithographers, Inc.*, 148 B.R. 862, 867 (Bankr. N.D. Ill. 1992) ("unlike Model Rule 1.8, section 327(e) provides no basis for obtaining a waiver of its requirements to avoid adverse interests. The Code outright prohibits the employment of attorneys who "represent or hold any interest adverse to the debtor or to the estate." 11 U.S.C. 327(e)").

    **C.    Attorney Martin's Dual Representation of Debtors and Non-Debtor Defendants with No Meaningful Separation in the State Court Actions Creates a Disqualifying Conflict**

    29.    The Hauser Parties submit that Attorney Martin's post-appointment representation of the defendants in the State Court Actions unequivocally demonstrates that Attorney Martin's appointment is inherently prejudicial to the Hauser Parties' and the estate's interest, as it cannot be ascertained whether estate funds are being used to subsidize non-debtor litigation in the State Court Actions improperly.

    30.    Attorney Martin's concurrent representation of both the Debtors and non-debtor defendants in the State Court actions likewise has placed and will continue to place him in an untenable conflict as he continuously has to assert defenses on behalf of non-debtor defendants that are to the detriment of the Debtors' position. This undoubtedly represents an actual conflict of interests. *See In re BH & P,* 103 B.R. at 563 (actual conflict of interest is an active competition between two interests, in which one interest can only be served at the expense of the other).

    31.    On October 23-24, and 27-28, 2025, non-jury trials were held in the State Court Actions where Attorney Martin represented all defendants and made no effort to distinguish his representation or advocacy among the Debtors and multiple non-debtor defendants.

    32.    For example, at the non-jury trials, Attorney Martin delivered a blanket closing statement on behalf of all defendants. *See* Excerpts from the non-jury trials, attached hereto as

8

Exhibit "A"[1], N.T. October 28, 2025, 242-250 (closing statements referencing the collective defendants' position as "we").

33. Attorney Martin even argued for lesser damages to be assessed to non-debtor defendants, telling the court that the damages should be assigned to K. Patrono; for example:

   a) At the hearing, Attorney Martin advocated for the court to assess greater punitive damages against the preparers of the fraudulent transfer deed, K. Patrono, rather than Polly Patrono. *See*, Exhibit A, N.T. 249, *ll* 15-21 ("Also, speaking about PUVTA again here for a minute, I would submit to the Court Polly Patrono's involvement at most was a very very small part as a recipient of these deeds that have been prepared. I'd ask the Court to look closely at that testimony and if the Court is inclined to reign sanctions against other parties that she not be included and, again, we had a full hearing on this.")

   b) Special Counsel advocated for sanction damages to be assigned to K. Patrono and not Patrono & Murphy or Apple Leaf Abstracting and Settlement Company, LLC ("Apple Leaf"), as he no longer owned those businesses. *See* N.T. 249 *ll* 22-25; 250 *ll* 1-2.

34. Attorney Martin's conflicted representation of the Debtors was inevitable as K. Patrono has a duty to indemnify his former business partner John Murphy, Esquire, a former co-defendant in the case, who is the sole owner of two of the co-defendants (non-debtors), Apple Leaf and Patrono & Murphy LLC for the costs of the State Court Actions pursuant to the terms of an LLC Membership Assignment and Purchase Agreement executed between K. Patrono and John Murphy in 2022. A copy of the Agreement is attached hereto as Exhibit "B".

---

[1] In the interest of brevity, the entirety of the four days of non-jury trial transcripts are not attached to this Motion; however, they may be supplied to the Court if necessary.

9

35. Per the indemnification agreement identified above, there are unperformed obligations under that agreement that require continuing material duties from both parties (i.e. Apple Leaf and Patrono and Murphy have to tender indemnification demands and K. Patrono has to pay on those indemnification obligations) rendering it an executory contract which the Debtors should have listed in their Schedule G.

36. The indemnification agreement is also an agreement requiring the Debtors to exercise their business judgment to reject under section 365(a) of the Bankruptcy Code, and if they elect not to it will be an act of bad faith as it will intentionally diminish the disposable income, likely rendering any plan they ultimately attempt to confirm not fair and equitable under section 1192 of the Bankruptcy Code.

37. In fact, it appears that K. Patrono may have already undertaken such payments of litigation costs on behalf of Apple Leaf and Patrono & Murphy—unbeknownst to the Hauser Parties and this Court—as was revealed to the Hauser Parties in recent discovery production that was received in aid of the Hauser Parties' execution efforts.

38. Specifically, the discovery exchanged in anticipation of a deposition in aid of against two non-debtor defendants **that Attorney Martin and MEW have never billed Apple Leaf or Patrono & Murphy separately from any of the other defendants in the State Court Actions,** despite the fact that the Debtors alleged in the Application that MEW was paid over $500,000.00 for pre-petition legal services.

39. In a Notice of Deposition in Aid of Execution issued to John Murphy, Esquire, the Hauser Parties requested that John Murphy provide "Copies of all invoices received by Patrono & Murphy and Apple Leaf from Mette Evans and Woodside, along with corresponding payment information for each invoice." John Murphy responded to this Request, "None received as of yet."

10

(emphasis added). A copy of the Notice of Deposition and John Murphy's Responses thereto are attached as Exhibit "C", *see* Request No. 32.

40. Accordingly, Apple Leaf Abstracting and Patrono & Murphy have never paid any legal bills to MEW on their own behalf.

41. In light of the indemnification provision identified at Paragraph 34, the only logical conclusion that can be drawn is that Attorney Martin is billing all legal fees for Apple Leaf and Patrono & Murphy to K. Patrono, despite his express assurances to this Court that his representation of the Debtors would remain separate and distinct from the non-debtor defendants

42. At the very least, the Hauser Parties presume based on this representation from MEW that the legal bills are so intermingled, that they will be impossible to accurately untangle.

43. Neither the Debtors nor Attorney Martin disclosed to this Court in the Application whether the fees already paid to MEW in excess of $500,000.00, nor the claim for unpaid prepetition fees in excess of $300,000.00, represent fees that were incurred on behalf of Apple Leaf or Patrono & Murphy under this indemnification provision.

44. Failure to disclose this conflict absolutely should result in disqualification. *See In re Witchey Enters., Inc.*, 2024 WL 2827928, at *3 (simultaneous representation of small business debtor and principal who was debtor resulted in proper denial of fee application); *see also In re Cook*, 223 B.R. 782, 791 (B.A.P. 10th Cir. 1998) (attorney's dual representation of trustee in four related cases and debtors' largest unsecured creditor, whose claim was disputed, his undisclosed contingent fee arrangement with creditor, and settlement agreement between creditor and debtors resulted in actual conflict of interest); *In re Harris Agency, LLC*, 451 B.R. 378, 391 (Bankr. E.D. Pa.), *aff'd sub nom. In re The Harris Agency, LLC*, 462 B.R. 514 (E.D. Pa. 2011) ("Winterhalter's representation of both Union One and the Debtor also created an actual conflict of interest because

it prevented the Firm from having—as it should—an undivided loyalty to Harris and from taking steps that would benefit the Debtor's interests. As counsel to a bankruptcy estate, it is the job of a firm to maximize value for both the debtor *and* its creditors.").

45. "Absent the spontaneous, timely[,] and complete disclosure required ... court-appointed counsel proceed at their own risk." *In re Witchey Enters., Inc.*, 2024 WL 2827928, at *3

46. At all times relevant Attorney Martin's representation of the Debtors and non-debtor defendants continues to pose a conflict of interest.

47. On October 31, 2025, the trial court issued judgments in favor of the Hauser Parties and against all defendants, in an amount totaling $6,839,422.28 ("Judgments").

48. Following the trial court's issuance of the Judgments, despite the fact that each of the defendants were liable for different judgment amounts Attorney Martin filed a single Post-Trial Motion for Relief, a copy of which is attached hereto as Exhibit "D".

49. Not only is it apparent that Attorney Martin likely failed to advance exhaustive arguments on behalf of all of his defendants in favor of representing all defendants in a single motion, but should Attorney Martin seek reimbursement for the fees associated with such filing from the estate, such reimbursement would necessarily result in the estate inappropriately sponsoring non-Debtor litigation.

50. Similarly, at the appellate level, Attorney Martin's representation of the Debtors cannot be distinguished from the representation of non-debtor defendants.

51. For example, compare the Statement of Errors Complained of on Appeal filed by Attorney Martin on behalf of non-debtor defendant Jonathan Patrono on January 14, 2026, a copy of which is attached as Exhibit "E", with the identical Statement of Errors filed on Behalf of Debtor K. Patrono on January 30, 2026, a copy of which is attached hereto as Exhibit "F". A review of

these statements reveals that Attorney Martin did not perform any work unique to Debtor Kim Patrono but rather simply copied the same statement that was filed for defendant Jonathan Patrono two weeks earlier. In similar fashion, the arguments advanced by Attorney Martin on behalf of the Debtors regarding the alleged errors attributable to Attorney King's testimony were likewise a cut and paste from the arguments raised in the Concise Statement of Errors Complained of on Appeal filed on behalf of non-debtor Polly Patrono on January 2, 2026, a copy of which is attached hereto as Exhibit "G".

52. This Court was clear in its October 22, 2025, Order that Parties retained the right to raise conflicts of interest regarding Special Counsel's appointment. *See* ECF 68, ¶ 4 ("Nothing in this Order shall be construed as a waiver of any party's right to raise, or of the Court's authority to address, any issue concerning the existence of a conflict of interest, whether now known or arising in the future.").

53. Based on the newly discovered evidence set forth above, it is respectfully submitted that the Hauser Parties are entitled to relief from the order authorizing the appointment of MEW or in the alternative, because the clear conflict warrants relief from the judgment under Federal Rule 60(b)(6).

54. This additional evidence demonstrates the inescapable and unwaivable conflict of interest posed by Attorney Martin's dual representation of Debtors and non-debtor Defendants in the State Court Action, which this Court may not countenance.

55. To be certain, even with reasonable diligence, this newly discovered evidence could not have been discovered in time to file a motion for a new trial under Bankruptcy Rule 9023 and Federal Rule 59(b).

13

56. Accordingly, the Hauser Parties respectfully request that this Honorable Court reconsider its October 22, 2025, Order and disqualify Attorney Martin from serving as special counsel pursuant to Section 327(e) of the Bankruptcy Code, as his representation poses an actual and potential conflict.

WHEREFORE, the Hauser Parties respectfully request that this Honorable Court enter an Order in the form annexed hereto disqualifying Attorney Martin from serving as special counsel and granting such further relief as the court deems just and equitable.

Respectfully submitted,

*OBERMAYER REBMANN MAXWELL & HIPPEL, LLP*

Date: February 13, 2026

*/s/ Paige Macdonald-Matthes*
Paige Macdonald-Matthes, Esquire (ID No. 66266)
Michael Vagnoni, Esquire (ID No. 78374)
Jennifer Bruce, Esquire (ID No. 329351)
200 Locust Street, Suite 400
Harrisburg, PA 17101
(717) 234-9730 Telephone
(717) 236-2485 Facsimile
PMM@obermayer.com

*Attorneys for H&M Holdings LLC, Hauser Family Farms LLC, Hannah Hauser, and Melinda Davis*