# Exhibit H-1



**Dale E. Sabadish**
*Prothonotary*

**Erica M. Ernst**
*First Deputy*

## Office of the Prothonotary
### Cumberland County, Pennsylvania

ALAN KIM PATRONO
98 EAST BROADWAY
GETTYSBURG, PA 17325

H & M HOLDINGS GROUP LLC

vs.                                         CIVIL ACTION LAW

ALAN KIM PATRONO                No 2019-12301 CIVIL TERM

TO:    ALAN KIM PATRONO

In accordance with Rule 236 of the Pennsylvania Supreme Court, this is to notify you that the following judgment was entered for H & M HOLDINGS GROUP LLC, against you in this office in the amount of $2,209,414.43 on November 27, 2019.

_____
Dale E. Sabadish, Prothonotary

By
:    _____
Deputy

POST & SCHELL, P.C.
BY: JAMES J. KUTZ, ESQUIRE
E-MAIL: jkutz@postschell.com
I.D. # 21589
BRIAN W. BISIGNANI, ESQUIRE
E-MAIL: bbisignani@postschell.com
I.D. # 57982
JOHN W. CROUMER, ESQUIRE
E-MAIL: jcroumer@postschell.com
I.D. # 208170
17 NORTH SECOND STREET
12TH FLOOR
HARRISBURG, PA 17101-1601
717-731-1970


2019-12301-0000 F#1339150 Fee.$46.00
CONFESSION OF JUDGMENT
Main (Public)
Rcpt 2019-103-01737  11/27/2019 1:36:28 PM
Dale E. Sabadish, County Prothonotary

ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| H & M HOLDINGS GROUP, LLC, assignee of MEMBERS FIRST FEDERAL CREDIT UNION, | COURT OF COMMON PLEAS CUMBERLAND COUNTY |
| Plaintiff, | No. 2019- 12301 |
| vs. | |
| ALAN KIM PATRONO, | |
| Defendant. | |

## CONFESSION OF JUDGMENT

Pursuant to the authority contained in the warrant of attorney, the original or a copy of which is attached to the Complaint filed in this action, I appear for the Defendant Alan Kim Patrono, and confess judgment in favor of Plaintiff H & M Holdings Group, LLC, assignee of Members First Federal Credit Union and against Defendant as follows:

### Note 1

| | |
|---|---|
| Principal | $1,022,817.83 |
| Interest – Pre-Default | $2,459.81 |
| Interest – Post-Default | $447,662.10 |

### Note 2

*Notice mailed*

|  |  |
|---|---|
| Principal | $493,224.30 |
| Interest – Pre-Default | $2,724.22 |
| Interest – Post-Default | $215,864.85 |
| Late Charge | $24,661.22 |

Total for Note 1 and Note 2    $2,209,414.44

**POST & SCHELL, P.C.**

BY: _____

DATED: November 26, 2019

JAMES J. KUTZ, ESQUIRE
BRIAN W. BISIGNANI, ESQUIRE
JOHN W. CROUMER, ESQUIRE
Attorneys for Plaintiff

POST & SCHELL, P.C.
BY: JAMES J. KUTZ, ESQUIRE
E-MAIL: jkutz@postschell.com
I.D. # 21589
BRIAN W. BISIGNANI, ESQUIRE
E-MAIL: bbisignani@postschell.com
I.D. # 57982
JOHN W. CROUMER, ESQUIRE
E-MAIL: jcroumer@postschell.com
I.D. # 208170
17 NORTH SECOND STREET
12TH FLOOR
HARRISBURG, PA 17101-1601
717-731-1970

ATTORNEYS FOR PLAINTIFF

| H & M HOLDINGS GROUP, LLC, assignee of MEMBERS FIRST FEDERAL CREDIT UNION, | COURT OF COMMON PLEAS CUMBERLAND COUNTY |
|---|---|
| Plaintiff, | No. 2019- 12301 civil |
| vs. | |
| ALAN KIM PATRONO, | |
| Defendant. | |

### COMPLAINT IN CONFESSION OF JUDGMENT FOR MONEY

Plaintiff H & M Holdings Group, LLC, assignee of Members First Federal Credit Union ("H&M"), by and through its counsel, Post & Schell, P.C., files this Complaint in Confession of Judgment for Money against Defendant Alan Kim Patrono ("Patrono") and in support thereof avers as follows:

### PARTIES

1. Plaintiff H&M is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a business address of 210 Ridgewood Drive, Gettysburg, PA 17325.

2. Defendant Patrono is an adult individual with a last known address of 98 East Broadway, Gettysburg, PA 17325.

## THE INSTRUMENTS

3. By Promissory Note dated October 26, 2011 ("Note 1"), Members First Federal Credit Union ("Members First") loaned Hauser Estate, Inc. ("Hauser Estate") and Hauser Family Farms, LLC ("HFF") the principal sum of One Million Four Hundred Seventy-Five Thousand and 00/100 Dollars ($1,475,000.00).

4. A true and correct reproduction of Note 1 is attached hereto as **Exhibit A**.

5. Note 1 was secured by an unconditional Guaranty executed by Defendant.

6. A true and correct reproduction of the Guaranty is attached hereto as **Exhibit B**.

7. By Promissory Note dated February 24, 2017 ("Note 2"), Members First loaned Hauser Estate the principal sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00).

8. A true and correct reproduction of Note 2 is attached hereto as **Exhibit C**.

9. Note 2 was secured by an unconditional Guaranty executed by Defendant.

10. A true and correct reproduction of the Guaranty is attached hereto as **Exhibit D**.

## NOT A CONSUMER CREDIT TRANSACTION

11. The judgment is not being entered by confession against a natural person in connection with a consumer credit transaction.

## ASSIGNMENT

12. Note 1 and the associated loan documents, including the unconditional Guaranty executed by Defendant, were assigned by Members First to H&M pursuant to an Assignment Agreement dated July 18, 2018.

13. A true and correct reproduction of the Assignment Agreement is attached hereto as **Exhibit E**.

14. Note 2 and the associated loan documents, including the unconditional Guaranty executed by Defendant, were assigned by Members First to H&M by an Assignment Agreement dated July 18, 2018. See Exhibit E.

## ANCILLARY PROCEEDINGS

15. Judgment is not entered on the instruments in any other jurisdiction.

## CONDITION PRECEDENT

16. Hauser Estate and HFF defaulted on Note 1 and Hauser Estate defaulted on Note 2.

17. Note 1 and Note 2 were in default since December 21, 2016.

18. A true and correct reproduction of an Affidavit of Default is attached hereto as **Exhibit F.**

19. Defendant unconditionally and absolutely guaranteed payment of Note 1 and Note 2. See Exhibits B and D.

20. In the event of default of Note 1, the Guaranty authorizes entry of judgment by confession. See Exhibit B.

21. In the event of default of Note 2, the Guaranty authorizes entry of judgment by confession. See Exhibit D.

## AMOUNT DUE

22. As of the date of this Complaint, the amount due on Note 1 is:

| | |
|---|---|
| Principal | $1,022,817.83 |
| Interest – Pre-Default | $2,459.81 |
| Interest – Post-Default | $447,662.10* |
| Total | $1,472,939.74 |

* Interest continues to accrue post-default on Note 1.

23. Currently, the amount due on Note 2 is:

| | |
|---|---|
| Principal | $493,224.30 |
| Interest – Pre-Default | $2,724.22 |
| Interest – Post-Default | $215,864.85* |
| Late Charge | $24,661.22 |
| Total | $736,474.69 |

\* Interest continues to accrue post-default on Note 2.

24. The aggregate amount confessed due in this Complaint is $2,209,414.43. Pursuant to Promissory Note 1 and Promissory Note 2 and the associated loan documents, including the unconditional Guaranty executed by Defendant, H&M, as assignee of Members First Federal Credit Union, is also entitled collect additional sums not included in the amount confessed due in this Complaint, including, without limitation, late charges and costs of collection, including reasonable attorneys' fees associated with collecting the indebtedness under Notes 1 and 2. The amount confessed due in this Complaint does not include such additional sums and H&M, as assignee of Members First Federal Credit Union, reserves all rights with respect to such additional sums, including, without limitation, the right to assert additional confessions of judgment to collect any such additional sums.

## WARRANT

25. A demand for judgment is authorized by warrant.

## SIGNATURE

26. The instruments are not more than 20 years old and the instruments bear Defendant's signature.

## REQUESTED RELIEF

27. All conditions precedent to H&M's right to recover have been satisfied.

WHEREFORE H & M Holdings Group, LLC, assignee of Members First Federal Credit Union, demands that judgment for money be confessed as authorized by the confession of judgment language contained in the unconditional Guaranty to Note 1 and unconditional Guaranty to Note 2 and entered in favor of Plaintiff and against Defendant Alan Kim Patrono.

POST & SCHELL, P.C.

BY: _____
JAMES J. KUTZ, ESQUIRE
BRIAN W. BISIGNANI, ESQUIRE
JOHN W. CROUMER, ESQUIRE
Attorneys for Plaintiff

DATED: November 26, 2019

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,475,000.00 | 10-26-2011 | 11-01-2036 | 374767-03 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Hauser Estate, Inc.
Hauser Family Farms LLC
28 W. Middle St
Gettysburg, PA 17325

**Lender:** Members 1st Federal Credit Union
ATTN: Business Lending
5000 Louise Drive
Mechanicsburg, PA 17055

---

**Principal Amount: $1,475,000.00**   **Initial Rate: 6.270%**   **Date of Note: October 26, 2011**

**PROMISE TO PAY.** Hauser Estate, Inc.; and Hauser Family Farms LLC ("Borrower") jointly and severally promise to pay to Members 1st Federal Credit Union ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Four Hundred Seventy-five Thousand & 00/100 Dollars ($1,475,000.00), together with interest on the unpaid principal balance from October 26, 2011, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 299 payments of $9,761.98 each payment and an irregular last payment estimated at $9,756.99. Borrower's first payment is due December 1, 2011, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on November 1, 2036, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Weekly U.S Treasury 5-Year Constant Maturity published prior to rate adjustment (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each sixty months after the initial fixed rate period of sixty months. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.320% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.950 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.270% per annum. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.270% per annum or more than (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $1.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Members 1st Federal Credit Union, 5000 Louise Drive Mechanicsburg, PA 17050.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15.000% per annum ("Default Rate"). If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or

a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cumberland County, Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**STATUTORY LIEN.** Borrower agrees that all loan advances under this Note are secured by all shares and deposits in all joint and individual accounts Borrower has with Lender now and in the future. Borrower authorizes Lender, to the extent permitted by applicable law, to apply the balance in these accounts to pay any amounts due under this Note when Borrower is in default under this Note. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to the security interest Borrower has given in Borrower's shares and deposits.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated October 26, 2011, to Lender on real property located in Adams County, Commonwealth of Pennsylvania.

(B) an Assignment of All Rents to Lender on real property located in Adams County, Commonwealth of Pennsylvania.

(C) inventory, chattel paper, accounts, equipment, general intangibles, consumer goods and fixtures described in a Commercial Security Agreement dated October 26, 2011.

(D) inventory, chattel paper, accounts, equipment, general intangibles, farm products, farm equipment, consumer goods, crops and fixtures described in an Agricultural Security Agreement dated October 26, 2011.

**MEMBERSHIP REQUIREMENTS.** All borrowers and Guarantors must maintain a membership with the Credit Union in good standing for the life of the loan.

**OFFICER COMPENSATION.** Compensation of officers and owenrs will be limited to an amount that, when taken, will not adversely affect the repayment ability of the borrower. This amount may not be increased year to year unless (1) an after-tax profit was made in the preceding fiscal year, (2) the borrowers are and will remain in compliance with covenants of the Loan Agreement and Conditional Commitment, (3) all borrowers depts are paid to a current status and (4) prior written concurrence of the lender is obtained.

**OUTSIDE INVESTMENT/LOANS.** Outside investment and loans/advances to stockholders, oweners, officers, or affiliates require the prior written consent of the lender. Loans from stockholders, owners, officers or affilitates must be subordinated to the guaranteed loan or converted to stock. No payments are to be made on these depts unless the loan is current and in good standing.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Members 1st Federal Credit Union 5000 Louisa Drive Mechanicsburg, PA 17050.

**BORROWERS RESPONSIBLITIES.** The borrowes shall not co-sign or otherwise becoming liable for obligations or liabilities of others.
The borrowers shall not, during the life of the guaranteed loan, make any advances and or loans to officers, owners, stockholders, and or affiliates.
The borrowers will not invest in additional fixed asset purchases in an annual aggregate of more than $75,000.00 without concurrence of the lender and USDA.
The borrowers shall not assume additional dept without approval of the lender,
The borrowers shall not enter into any merger or consolidation or sell the business without prior written concurrence of the lender.
Borrowers will not lease, sell, transfer, or otherwise encumber fixed assets without the concurrence of the lender. DISPOSTION of fixed assets serving as collateral for this loan must have the concurrence of the USDA Rural Development.

**ANNUAL FINANCIAL STATEMENTS.** The borrowers must provide financial statements annually, compiled by an independent certified public accountant in accordance with Generally Accepted Accounting principles, and submit them to the lender within 90 days of the business' fiscal yearend. Financial statements will contain, at a minimum, a balance sheet and a profit and loss statement reflecting the financial condition of the borrower as of its yearend together with notes and full disclosures.

All personal guarantors of this loan must provide a copy of there federal income tax returns, including all schedules, attachments and applicable K-1s, and personal financial statement prepared by an independent certified public accountant in accordance with Generally Accepted Accounting Principals to the lender within 90 days of the calendar yearend.

The borrowers' dept-tonet worth, based upon yearend financial statments and as defined by Generally Accepted Accounting Principles, shall not exceed 3.0x.

The borrowers' current ration, based upon yearend financial statements and as defined by Generally Accepted Accounting Principles, shall not fall below 1.20x.

The borrowers' minimum cash flow, based upin yearend financial statements and defined as (net income + depreciation + amortization + interest expense + non-cash items-unfunded capital expenditures - distributions - withdrawls - gain on the sale of fixed assets) / (interest expense + scheduled prinicipal payments on loan term dept), shall not fail below 1.20x.

**DIVIDEND PAYMENTS.** Dividend payments will be limited to an amount that, when taken, will not adversely affect the repayment ability of the borrowers. No dividend payments will be made unless:

1. An after-tax profit was made in the preceding fiscal year.
2. The borrower is and will remain in compliance with covenants of the Loan Agreement and Conditional Commitment.
3. All of the borrowers' depts are paid to a current status, and prior written concurrence of the lender and Agency is obtained.
4. This is not intended to apply to dividend payments to cover personal tax liability resulting from profitability of the business.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

HAUSER ESTATE, INC.

By: _____(Seal)
Jonathan A. Patrono, President of Hauser Estate, Inc.

By: _____(Seal)
Melinda H. Davis, Secretary of Hauser Estate, Inc.

By: _____(Seal)
Hannah M. Hauser, Vice President of Hauser Estate, Inc.

HAUSER FAMILY FARMS LLC

By: _____(Seal)
Melinda H. Davis, Manager of Hauser Family Farms LLC

LENDER:

MEMBERS 1ST FEDERAL CREDIT UNION

X_____
Authorized Signer

LASER PRO Lending, Ver. 5.57.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2011. All Rights Reserved. - PA C:\COMMERCIAL\CFI\LPL\D20.FC TR-2757 PR-6

## ALLONGE TO PROMISSORY NOTE (03 LOAN)

ALLONGE to that certain Promissory Note, dated October 26, 2017, in the stated principal amount of One Million, Four Hundred Seventy-Five Thousand Dollars and No Cents ($1,475,000.00), Loan No. 374167-03, made by HAUSER ESTATE INC., a Pennsylvania corporation, and HAUSER FAMILY FARMS LLC, a limited liability company formed under the laws of the Commonwealth of Pennsylvania, both of 28 W. Middle St., Gettysburg, PA 17325, to MEMBERS 1ST FEDERAL CREDIT UNION, 5000 Louise Drive, Mechanicsburg, PA 17055, a federal credit union ("Assignor").

PAY TO THE ORDER OF H & M HOLDINGS GROUP, LLC, a limited liability company formed under the laws of the Commonwealth of Pennsylvania ("Assignee"), without recourse, as set forth in that certain Assignment Agreement by and between Assignor and Assignee of even date herewith.

<div align="right">

MEMBERS 1ST FEDERAL CREDIT UNION

By: _____

Name: ERIC N. FISCHER

Title: VP, BUSINESS LENDING SALES

Date: 7/18/18

</div>

## THIS ALLONGE SHALL BE FIRMLY AFFIXED TO THE NOTE AND SHALL BECOME PART THEREOF.

Exhibit B

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Hauser Estate, Inc.
Hauser Family Farms LLC
28 W. Middle St
Gettysburg, PA 17325

**Lender:** Members 1st Federal Credit Union
ATTN: Business Lending
5000 Louise Drive
Mechanicsburg, PA 17055

**Guarantor:** Alan K. Patrono
98 East Broadway
Gettysburg, PA 17325

---

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action,

either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cumberland County, Commonwealth of Pennsylvania.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors,

assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided by applicable law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** The terms of this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Hauser Estate, Inc.; and Hauser Family Farms LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Alan K. Patrono, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Members 1st Federal Credit Union, its successors and assigns.

**Note.** The word "Note" means the promissory note dated October 26, 2011, in the original principal amount of $1,475,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**CONFESSION OF JUDGMENT.** GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR GUARANTOR AFTER THE AMOUNTS HEREUNDER BECOME DUE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR THE ENTIRE PRINCIPAL BALANCE OF THIS GUARANTY AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THE INDEBTEDNESS, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS GUARANTY OR A COPY OF THIS GUARANTY VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS GUARANTY TO CONFESS JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS GUARANTY. GUARANTOR HEREBY WAIVES ANY RIGHT GUARANTOR MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO GUARANTOR'S ATTENTION OR GUARANTOR HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED OCTOBER 26, 2011.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X _____(Seal)
Alan K. Patrono

LASER PRO Lending, Ver. 5.57.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2011.  All Rights Reserved.  - PA  C:\COMMERCIAL\CFI\LPL\E20.FC  TR-2757  PR-6

Exhibit C

-164 Filed 13/23/58
Exhibit A1 Page 20
EXHIBIT C

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $500,000.00 | 02-24-2017 | | 374167-0002 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Hauser Estate Inc
28 W. Middle St
Gettysburg, PA 17325

**Lender:** Members 1st Federal Credit Union
ATTN: Business Lending
5000 Louise Drive
Mechanicsburg, PA 17055

**Principal Amount: $500,000.00** **Initial Rate: 3.990%** **Date of Note: February 24, 2017**

PROMISE TO PAY. Hauser Estate Inc ("Borrower") promises to pay to Members 1st Federal Credit Union ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Five Hundred Thousand & 00/100 Dollars ($500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. Unless otherwise agreed or required by applicable law, payments will be applied to costs and expenses, then to interest, and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00PM Eastern Time, Lender will credit Borrower's payment on the next business day.

PAYMENT APPLICATION METHOD. Borrower will pay regular monthly payments of all accrued unpaid interest as billed by Lender. The monthly payments shall be due on the 16th day of each month beginning on the 16th day of the first month following the date of this Note.

Monthly INTEREST will be imposed on all credit advances made under Borrower's line of credit imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, Lender takes the beginning balance of Borrower's line of credit account each day, add any new advances and subtract any payments or credits. This gives Lender a daily balance. Then, Lender adds up all the daily balances for the statement cycle and divides the total by the number of days in the statement cycle. This gives Lender the "average daily balance".

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Wall Street Journal on the last business day of each month (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each the first day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.750% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate equal to the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 3.990% per annum. NOTICE: Under no circumstances will the interest rate on this Note be less than 3.990% per annum or more than (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

JOINT AND SEVERALLY LIABILITY. If there is more than one Borrower, each is jointly and severally liable on this Note. This means Lender can require any Borrower to pay all amounts due under this Note, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Note. Lender can release any Borrower from responsibility under this Note, and the others will remain responsible.

PERMANENT-FINANCING PAYMENT TERMS. Unless Lender requires payment to be made, in whole or in part, on Demand as permitted herein, Borrower shall begin making monthly payments of principal and interest on December 16, 2017, in an amount to be determined by Lender, and on the 16th day of each month thereafter until November 16, 2027, at which time the outstanding principal, interest, and expenses, if any, shall become due and payable in full. The new payment will be determined using the current outstanding balance as of November 17, 2017, a term of 10 years, an amortization of 20 years, and an initial rate of 3.750 percentage points over the Weekly U.S. Treasury 5-Year Constant Maturity.

Since Borrower has elected a variable interest rate, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Weekly U.S. Treasury 5-Year Constant Maturity (the "Index"). If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index in its sole discretion. The interest rate change will occur on the first day of every sixty (60) month period commencing after the initial fixed rate period of sixty (60) months. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 3.750 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below. NOTICE: Under no circumstances will the interest rate on this Note be less than 5.69% per annum or more than (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

LATE CHARGE. If Lender demands payment of this loan, and Borrower does not pay the loan in full within 15 days after Lender's demand, Borrower will be charged either 5.000% of the unpaid portion of the sum of the unpaid principal plus accrued unpaid interest or $25.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15.000% per annum ("Default Rate"). If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

LENDER'S RIGHTS. Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due; and then Borrower will pay that amount.

LENDER'S OPTION. Lender may, in its sole discretion and at any time and for any reason, term out the balance due under this Note without approval or prior notice to the Borrower at which point Borrower shall make monthly principal and interest payments as required by Lender and

upon the terms and conditions as established by Lender, which terms and conditions may include, but are not limited to, an adjustment to the interest rate (fixed or variable), and the creation of a term and amortization period.

CHARGES TO LINE OF CREDIT. Lender may charge Borrower's line of credit to pay other fees and costs that Borrower is obligated to pay under this Note, or any other document related to Borrower's line of credit. In addition, Lender may charge Borrower's line of credit for funds required for continuing insurance coverage as required by Lender, to pay any costs or expenses to protect or perfect Lender's security interest in Borrower's property, to pay for delinquent property taxes or other related taxes, and to cure defaults under any existing liens on Borrower's property. However, Lender has no obligation to provide any of the credit advances referred to in this paragraph.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cumberland County, Commonwealth of Pennsylvania.

STATUTORY LIEN. Borrower agrees that all loan advances under this Note are secured by all shares and deposits in all joint and individual accounts Borrower has with Lender now and in the future. Borrower authorizes Lender, to the extent permitted by applicable law, to apply the balance in these accounts to pay any amounts due under this Note when Borrower is in default under this Note. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to the security interest Borrower has given in Borrower's shares and deposits.

COLLATERAL. Borrower acknowledges this Note is secured by :
(A) an Open-End Mortgage dated June 22, 2011, , to Lender on real property located in Adams County, Commonwealth of Pennsylvania.
(B) an Assignment of All Rents to Lender on real property located in Adams County, Commonwealth of Pennsylvania.

LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

AUTHORIZATION. Notwithstanding the above, the Lender may make any advance pursuant to the line of credit in reliance upon any oral, telephonic, written, teletransmitted or other request (the "Request(s)") that the Lender in good faith believes to be valid and to have been made by Borrower or on behalf of Borrower by any individual signing this Note on behalf of the Borrower, or any other officer, employee or representative of Borrower who is authorized or designated as a signer of loan documents under the provisions of Borrower's most recent resolutions or similar documents on file with the Lender (each an "authorized person"). Notwithstanding that individual names may have been provided to the Lender, the Lender shall be permitted at any time to rely solely on an individual's title to ascertain whether that individual is an authorized person. The Lender may act on the Request(s) of any authorized person until the Lender shall have received from Borrower, and had a reasonable time to act on, written notice revoking the authority of such authorized person. Borrower acknowledges that the transmission between Borrower and Lender of any Request(s) or other instructions with respect to the line of credit involves the possibility of errors, omissions, misinterpretations, fraud and mistakes, and agrees to adopt such internal measures and operational procedures as may be necessary to prevent such occurrences. By reason thereof, Borrower hereby assumes all risk of loss and responsibility for, and releases and discharges the Lender from any and all responsibility or liability for, and agrees to indemnify, reimburse on demand and hold Lender harmless from, any and all claims, actions, damages, losses, liability and expenses by reason of, arising out of, or in any way connected with or related to: (i) Lender's accepting, relying on and acting upon any Request(s) or other instructions with respect to the line of credit; or (ii) any such error, omission, misinterpretation, fraud or mistake, provided such error, omission, misinterpretation, fraud or mistake is not directly caused by the Lender's gross negligence or willful misconduct.

PRIOR NOTE. The Borrower acknowledges, agrees and understands that this Note is given in replacement of and in substitution for, but not in payment of, a prior Promissory Note or prior Credit Agreement and Disclosure dated on or about June 22, 2011, in the original principal amount of $300,000.00, given by Borrower in favor of the Lender, as the same may have been amended or modified from time to time ("Prior Note"), and further, that: (a) the obligations of the Borrower as evidenced by the Prior Note shall continue in full force and effect, as amended and restated by this Note, all of such obligations being hereby ratified and confirmed by the Borrower; (b) any and all liens, pledges, assignments and security interests securing the Borrower's obligations under the Prior Note shall continue in full force and effect, are hereby ratified and confirmed by the Borrower, and are hereby acknowledged by the Borrower to secure, among other things, all of the Borrower's obligations to the Lender under this Note, with the same priority, operation and effect as that relating to the obligations under the Prior Note; and (c) nothing herein contained shall be construed to extinguish, release, or discharge, or constitute, create, or effect a novation of, or an agreement to extinguish, the obligations of the Borrower with respect to the indebtedness originally described in the Prior Note or any of the liens, pledges, assignments and security interests securing such obligations.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

CONFESSION OF JUDGMENT. BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT BORROWER'S REASONABLE EXPECTATION WITH RESPECT TO THE AUTHORIZATION GRANTED PURSUANT TO ANY WARRANT OF ATTORNEY OR POWER OF ATTORNEY HEREUNDER, IS THAT LENDER OR ITS ATTORNEY MAY CONFESS JUDGMENT AS SET FORTH HEREIN, SEEK TO FORECLOSE ON COLLATERAL AND TAKE ALL OTHER ACTIONS WITH RESPECT TO THE EXERCISE OF LENDER'S RIGHTS HEREUNDER. BORROWER HEREBY WAIVES ALL OTHER DUTIES OF LENDER THAT MAY ARISE UNDER 20 PA. C.S.A. §5601.3(b). BORROWER HEREBY REMISES, RELEASES, AND FOREVER DISCHARGES, AND WAIVES ALL CLAIMS, CAUSES OF ACTION AND ANY OTHER RIGHTS AGAINST, LENDER AND ITS PREDECESSORS, LEGAL REPRESENTATIVES, PAST AND PRESENT PARENT COMPANIES, SUBSIDIARIES, AGENTS, EMPLOYEES, SERVANTS, INSURERS, ATTORNEYS, OFFICERS, DIRECTORS, STOCKHOLDERS, AFFILIATES, AFFILIATE COUNTERPARTIES, SUCCESSORS IN INTEREST, AND ASSIGNS OF AND FROM ANY AND ALL CLAIMS, DEMANDS, DAMAGES, FEES, AND COSTS, SUMS OF MONEY, RIGHTS, CAUSES OF ACTION, OBLIGATIONS AND LIABILITIES OF ANY KIND OR NATURE WHATSOEVER INCLUDING ATTORNEYS' FEES, ARISING UNDER OR RELATING TO ANY DUTIES OF AN AGENT UNDER 20 PA. C.S.A. §5601.3 OR OTHERWISE.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

HAUSER ESTATE INC

By: _____ (Seal)
Jonathan A. Patrono, President of Hauser Estate Inc

By: _____ (Seal)
Hannah M. Hauser, Vice President of Hauser Estate Inc

By: _____ (Seal)
Melinda H. Davis, Secretary of Hauser Estate Inc

---

## CORPORATE ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA      )
                                  ) SS
COUNTY OF ADAMS                   )

On this, the 24TH day of MARCH, 20 17, before me JENNIFER L. KULP, the undersigned Notary Public, personally appeared Jonathan A. Patrono, President of Hauser Estate Inc; Hannah M. Hauser, Vice President of Hauser Estate Inc; and Melinda H. Davis, Secretary of Hauser Estate Inc, who acknowledged themselves to be the President of Hauser Estate Inc; Vice President of Hauser Estate Inc; and Secretary of Hauser Estate Inc, of a corporation, and that they as such President of Hauser Estate Inc; Vice President of Hauser Estate Inc; and Secretary of Hauser Estate Inc, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by themselves as President of Hauser Estate Inc; Vice President of Hauser Estate Inc; and Secretary of Hauser Estate Inc.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public in and for the State of PA

```
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JENNIFER L KULP
Notary Public
GETTYSBURG BORO.,ADAMS COUNTY
My Commission Expires ...
```

1997, 2017. All Rights Reserved - PA ZACFILPL0020.FC TR-2656 PR-41

Case 25-05-02124-HWV Doc 01-164 Filed 12/05/58/26 Entered 12/05/58/26 05:43:49 Desc
Exhibit Exhibit-A1 Page 23 of 49

## ALLONGE TO PROMISSORY NOTE (02 LOAN)

ALLONGE to that certain Promissory Note, dated February 24, 2017, in the stated principal amount of Five Hundred Thousand Dollars and No Cents ($500,000.00), Loan No. 374167-0002, made by HAUSER ESTATE INC., 28 W. Middle St., Gettysburg, PA 17325, a Pennsylvania corporation, to MEMBERS 1ST FEDERAL CREDIT UNION, 5000 Louise Drive, Mechanicsburg, PA 17055, a federal credit union ("Assignor").

PAY TO THE ORDER OF H & M HOLDINGS GROUP, LLC, a limited liability company formed under the laws of the Commonwealth of Pennsylvania ("Assignee"), without recourse, as set forth in that certain Assignment Agreement by and between Assignor and Assignee of even date herewith.

MEMBERS 1ST FEDERAL CREDIT UNION

By: _____

Name: _ERIC N. FISCHER_

Title: _VP, BUSINESS LENDING SALES_

Date: _7/18/18_

## THIS ALLONGE SHALL BE FIRMLY AFFIXED TO THE NOTE AND SHALL BECOME PART THEREOF.

Exhibit D

EXHIBIT D

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Hauser Estate Inc
28 W. Middle St
Gettysburg, PA 17325

**Lender:** Members 1st Federal Credit Union
ATTN: Business Lending
5000 Louise Drive
Mechanicsburg, PA 17055

**Guarantor:** Alan K. Patrono
98 East Broadway
Gettysburg, PA 17325

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Credit Agreement and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Credit Agreement and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Credit Agreement and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Credit Agreement and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. This Guaranty covers a revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of the Indebtedness. Guarantor specifically acknowledges and agrees that fluctuations in the amount of the Indebtedness, even to zero dollars ($ 0.00), shall not constitute a termination of this Guaranty. Guarantor's liability under this Guaranty shall terminate only upon (A) termination in writing by Borrower and Lender of the line of credit, (B) payment of the Indebtedness in full in legal tender, and (C) payment in full in legal tender of all of Guarantor's other obligations under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional

loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Arbitration. Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions.

Choice of Venue. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cumberland County, Commonwealth of Pennsylvania.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the

opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided by applicable law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** The terms of this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Hauser Estate Inc and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated June 22, 2011, with credit limit of $300,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Alan K. Patrono, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Members 1st Federal Credit Union, its successors and assigns.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**CONFESSION OF JUDGMENT.** GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR GUARANTOR AFTER THE AMOUNTS HEREUNDER BECOME DUE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST GUARANTOR FOR THE ENTIRE PRINCIPAL BALANCE OF THIS GUARANTY AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THE INDEBTEDNESS, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS GUARANTY OR A COPY OF THIS GUARANTY VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS GUARANTY TO CONFESS JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS GUARANTY. GUARANTOR HEREBY WAIVES ANY RIGHT GUARANTOR MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO GUARANTOR'S ATTENTION OR GUARANTOR HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 22, 2011.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X _____ (Seal)
Alan K. Patrono

LASER PRO Lending, Ver. 5.54.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2011. All Rights Reserved. - PA C:\COMMERCIAL\CFI\LPL\E20.FC TR-2758 PR-13

Exhibit E

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT is made this _18th_ day of July, 2018, by and between **MEMBERS 1ST FEDERAL CREDIT UNION**, a federally chartered credit union, with address of 5000 Louise Drive, Mechanicsburg, Pennsylvania 17055 ("Lender" or "Assignor") and **H & M HOLDINGS GROUP, LLC**, a limited liability company formed under the laws of the Commonwealth of Pennsylvania, with a mailing address of 210 Ridgewood Drive, Gettysburg, Pennsylvania 17325 ("Assignee").

### WITNESSETH:

1.     **HAUSER ESTATE, INC.**, a Pennsylvania corporation, with an address of 28 West Middle Street, Gettysburg, Pennsylvania 17325 ("Hauser Estate") and **HAUSER FAMILY FARMS, LLC**, a Pennsylvania limited liability company, with address of 28 West Middle Street, Gettysburg, Pennsylvania 17325 ("Hauser Family Farms," collectively with Hauser Estate, "Borrowers") are party to several commercial financing agreements as set forth in more detail below. Hauser Family Farms is affiliated with Hauser Estate by common ownership. Assignor and Assignee are entering into this Agreement in order to effect the assignment of Assignor's right, title and interest in the loans and indebtedness of the Borrowers described herein from Assignor to Assignee.

2.     **ALAN K. PATRONO**, an adult individual, with an address of 98 East Broadway, Gettysburg, Pennsylvania 17325; **JANE H. PATRONO**, an adult individual, with an address of 98 East Broadway, Gettysburg, Pennsylvania 17325; **MELINDA H. DAVIS**, an adult individual, with an address of 48 Beachwood Drive, Fairfield, Pennsylvania 17320; **HANNAH M. HAUSER**, an adult individual, with an address of 210 Ridgewood Drive, Gettysburg, Pennsylvania 17325; and **JONATHAN A. PATRONO**, an adult individual, with an address of 160 Country Club Lane,

Gettysburg, Pennsylvania 17325 (collectively, "Guarantors") each guaranteed Borrowers' obligations to Lender.

3.      On or about June 22, 2011, Assignor and Hauser Estate executed a Business Loan Agreement and Assignor extended a revolving credit facility to Hauser Estate with an original credit limit amount of Three Hundred Thousand Dollars and No Cents ($300,000.00), identified on Assignor's books and records as Loan No. 374167-02 (the "02 Loan") (**Exhibit 3.0**[1] hereto). On that same date, in partial consideration of, as partial security for, and as a partial inducement to the Assignor to make the 02 Loan, Hauser Estate, Hauser Family Farms and Guarantors made, executed, and delivered:

a.      A Credit Agreement and Disclosure (the "02 Loan Credit Agreement") which provides, among other things, that Borrower agreed (i) to secure the 02 Loan with certain collateral, including an open-ended mortgage on and indexed against that certain property located at 410 Cashtown Road, Biglerville, Adams County, Pennsylvania 17307 (the "Property") and an Assignment of Rents indexed against the Property; and (ii) that Assignor could confess judgment against Borrower or Guarantors in the event of any default under the 02 Loan (**Exhibit 3.a** hereto);

b.      A Disclosure for Confession of Judgment by Hauser Estate (**Exhibit 3.b** hereto);

c.      A Disbursement Request and Authorization by Hauser Estate (**Exhibit 3.c** hereto);

d.      A Commercial Guaranty by Hauser Family Farms (**Exhibit 3.d** hereto);

e.      A Disclosure for Confession of Judgment by Hauser Family Farms (**Exhibit 3.e** hereto);

---

[1] Exhibits to this Agreement are identified through numbering that corresponds to the paragraph in which the reference to such exhibit first appears. Gaps between these numbers does not indicate missing exhibits.

2

f.	A Commercial Guaranty by Alan K. Patrono, (**Exhibit 3.f** hereto);

g.	A Disclosure for Confession of Judgment by Alan K. Patrono (**Exhibit 3.g** hereto);

h.	A Commercial Guaranty by Jane H. Patrono (**Exhibit 3.h** hereto);

i.	A Disclosure for Confession of Judgment by Jane H. Patrono, (**Exhibit 3.i** hereto);

j.	A Commercial Guaranty by Melinda H. Davis (**Exhibit 3.j** hereto);

k.	A Disclosure for Confession of Judgment by Melinda H. Davis (**Exhibit 3.k** hereto);

l.	A Commercial Guaranty by Jonathan A. Patrono (**Exhibit 3.l** hereto);

m.	A Disclosure for Confession of Judgment by Jonathan A. Patrono (**Exhibit 3.m** hereto);

n.	A Commercial Guaranty by Hannah M. Hauser (**Exhibit 3.n** hereto);

o.	A Disclosure for Confession of Judgment by Hannah M. Hauser (**Exhibit 3.o** hereto); and

p.	A Notice of Insurance Requirements and Agreement to Provide Insurance by Hauser Family Farms (**Exhibit 3.p** hereto).

4.	In connection with the 02 Loan, on or about June 24, 2011, Assignor caused the following two (2) UCC Financing Statements to be filed with the Commonwealth of Pennsylvania:

a.	Financing Statement No. 2011062701118 evidencing a security interest in favor of Assignor against certain collateral owned by Hauser Family Farms (the "118 UCC") (**Exhibit 4.a** hereto); and

b.	Financing Statement No. 2011062701168 evidencing a security interest in favor of Assignor against certain collateral owned by Hauser Estate (the "168 UCC") (**Exhibit 4.b** hereto).

3

5. On or about June 2, 2016, Assignor filed amendment/continuation statements extending the effectiveness of both the 118 UCC and the 168 UCC through and including June 24, 2021 (**Exhibit 5.0** hereto).

6. On or about October 26, 2011, Hauser Estate made, executed, and delivered to Assignor a certain Credit Agreement and Disclosure Change in Terms Agreement (**Exhibit 6.1** hereto), which, modified the 02 Loan Credit Agreement by, among other things, increasing the 02 Loan credit limit to Three Hundred Twenty-One Thousand Dollars and No Cents ($321,000.00). On that same date, in connection with the October 26, 2011 Credit Agreement and Disclosure Agreement, Hauser Family Farms granted a Mortgage on the Property in favor of Assignor (**Exhibit 6.2**; the "02 Loan Mortgage"). Assignor recorded the 02 Loan Mortgage in the land records of Adams County, Pennsylvania, on or about October 28, 2011. The 02 Loan Mortgage is recorded with Adams County on BK 5643 PG 678 and as Instrument No. 201100013461. On that same date, and also in connection with the October 26, 2011 Credit Agreement and Disclosure Agreement, Hauser Family Farms granted and Assignment of Rents on the Property in favor of Assignor (also included in **Exhibit 6.2**, the "02 Assignment of Rents"). Assignor filed a modification to the 03 Loan Mortgage on or about April 11, 2014 as Instrument No. 201400003626 in the land records of Adams County (also included in **Exhibit 6.2**, the "Mortgage Modification").

7. On or about October 26, 2011, Assignor extended a loan (Loan No. 374167-03) (the "03 Loan") to Hauser Estate and Hauser Family Farms, jointly and severally, in the original principal amount of One Million Four Hundred Seventy-Five Thousand Dollars and No Cents ($1,475,000.00) pursuant to a business loan agreement ("03 Business Loan Agreement") (**Exhibit 7.1** hereto) and as evidenced by, among other things, a secured promissory note in the original principal amount of One Million Four Hundred Seventy-Five Thousand Dollars and No Cents

4

($1,475,000.00) (the "03 Loan Promissory Note") (**Exhibit 7.2** hereto). On that same date, in partial consideration of, as partial security for, and as a partial inducement to the Assignor to make the 03 Loan, Hauser Estate and/or Hauser Family Farms made, executed, and delivered

a. A Commercial Security Agreement, which provided, among other things, for certain collateral to secure the 03 Loan (**Exhibit 7.a** hereto);

b. A Disbursement Request and Authorization (**Exhibit 7.b** hereto);

c. A Corporate Resolution to Borrow/Grant Collateral (**Exhibit 7.c** hereto);

d. A Disclosure for Confession of Judgment by Hauser Estate (**Exhibit 7.d** hereto);

e. A Disclosure for Confession of Judgment by Hauser Family Farms (**Exhibit 7.e** hereto);

f. An Agricultural Security Agreement (**Exhibit 7.f** hereto);

g. An Agreement to Provide Insurance and Notice of Insurance Requirements by Hauser Estate (**Exhibit 7.g** hereto);

h. An Agreement to Provide Insurance and Notice of Insurance Requirements by Hauser Family Farms (**Exhibit 7.h** hereto);

i. A Mortgage on the Property granted by Hauser Family Farms in favor of Assignor (the "03 Loan Mortgage") (**Exhibit 7.i** hereto). Assignor recorded the 03 Loan Mortgage in the land records of Adams County, Pennsylvania, on or about October 28, 2011. The 03 Loan Mortgage is recorded with Adams County on BK 5643 PG 658 and as Instrument No. 2011000013459; and

j. An Assignment of Rents granted by Hauser Family Farms in favor of Assignor and recorded in the land records of Adams County on BK 5643 PG 670 as Instrument No. 2011000013460 (**Exhibit 7.j** hereto, the "03 Assignment of Rents").

5

8. In connection with, in additional consideration of, as partial security for, and as a partial inducement to Assignor to make the 03 Loan, the Guarantors made, executed, and delivered the following:

a. A Commercial Guaranty by Alan K. Patrono (**Exhibit 8.a** hereto);

b. A Disclosure for Confession of Judgment by Alan K. Patrono (**Exhibit 8.b** hereto);

c. A Commercial Guaranty by Jane H. Patrono (**Exhibit 8.c** hereto);

d. A Disclosure for Confession of Judgment by Jane H. Patrono (**Exhibit 8.d** hereto);

e. A Commercial Guaranty by Melinda H. Davis (**Exhibit 8.e** hereto);

f. A Disclosure for Confession of Judgment by Melinda H. Davis (**Exhibit 8.f** hereto);

g. A Commercial Guaranty by Hannah M. Hauser (**Exhibit 8.g** hereto);

h. A Disclosure for Confession of Judgment by Hannah M. Hauser (**Exhibit 8.h** hereto);

i. A Commercial Guaranty by Jonathan A. Patrono (**Exhibit 8.i** hereto); and

j. A Disclosure for Confession of Judgment by Jonathan A. Patrono (**Exhibit 8.j** hereto).

9. Pursuant to an April 10, 2014, Credit Agreement and Disclosure Change in Terms Agreement (**Exhibit 9** hereto), the parties amended the 02 Loan Credit Agreement by increasing Hauser Estate's credit limit to Five Hundred Thousand Dollars and No Cents ($500,000.00). On that same date, in connection with, in additional consideration of, as partial security for, and as a partial inducement to Assignor to, among other things, increase the 02 Loan credit limit, Hauser Family Farms and the Guarantors made, executed, and delivered

a. A Commercial Guaranty by Hauser Family Farms (**Exhibit 9.a** hereto);

b. A Commercial Guaranty by Melinda H. Davis (**Exhibit 9.b** hereto);

6

c. A Commercial Guaranty by Jane H. Patrono (**Exhibit 9.c** hereto);

d. A Commercial Guaranty by Alan K. Patrono (**Exhibit 9.d** hereto);

e. A Commercial Guaranty by Jonathan A. Patrono (**Exhibit 9.e** hereto);

f. A Commercial Guaranty by Hannah M. Hauser (**Exhibit 9.f** hereto); and

10. On or about February 24, 2017, in replacement of the 02 Credit Agreement (as subsequently amended), Hauser Estate made, executed and delivered a secured Promissory Note (the "02 Loan Promissory Note") (**Exhibit 10.0** hereto) in favor of Assignor in the original principal amount of Five Hundred Thousand Dollars and No Cents ($500,000.00). On or about that same date, in partial consideration of, as partial security for, and as a partial inducement to the Assignor to agree to accept the 02 Loan Promissory Note in replacement of the prior Credit Agreement and Disclosure, Hauser Estate and/or Hauser Family Farms made, executed, and delivered

a. A Corporate Resolution to Borrow/Grant Collateral by Hauser Estate (**Exhibit 10.a** hereto);

b. A Business Loan Agreement by Hauser Estate (**Exhibit 10.b** hereto); and

c. A Disclosure for Confession of Judgment by Hauser Estate (**Exhibit 10.c** hereto).

d. A Limited Liability Company Resolution to Grant Collateral/Guarantee by Hauser Family Farms (**Exhibit 10.d** hereto);

e. A Commercial Guaranty by Hauser Family Farms (**Exhibit 10.e** hereto);

f. A Disclosure for Confession of Judgment by Hauser Family Farms (**Exhibit 10.f** hereto);

g. A Commercial Guaranty by Melinda H. Davis (**Exhibit 10.g** hereto);

7

h. A Disclosure for Confession of Judgment by Melinda H. Davis (**Exhibit 10.h** hereto);

i. A Commercial Guaranty by Jane H. Patrono (**Exhibit 10.i** hereto);

j. A Disclosure for Confession of Judgment by Jane H. Patrono (**Exhibit 10.j** hereto);

k. A Commercial Guaranty by Jonathan A. Patrono (**Exhibit 10.k** hereto);

l. A Disclosure for Confession of Judgment by Jonathan A. Patrono (**Exhibit 10.l** hereto);

m. A Commercial Guaranty by Hannah M. Hauser (**Exhibit 10.m** hereto);

n. A Disclosure for Confession of Judgment by Hannah M. Hauser (**Exhibit 10.n** hereto);

o. A Commercial Guaranty by Alan K. Patrono (**Exhibit 10.o** hereto); and

p. A Disclosure for Confession of Judgment by Alan K. Patrono (**Exhibit 10.p** hereto).

11. The Assignee desires to acquire all of Assignor's rights, title and interest in and to the 02 Loan, the 03 Loan, including any payment rights and collateral securing either or both of the 02 and 03 Loans, and all documents and agreements relating to the 02 and 03 Loans.

12. Assignor is amenable to the assignment, but only upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the foregoing background, and for other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

8

## AGREEMENT

1.    <u>Background Incorporated; Agreed Accurate</u>. The parties hereto agree that the foregoing background is incorporated herein and, to the best of their knowledge, believe the background is correct and complete in all material respects.

2.    <u>Sale and Assignment</u>. Effective upon receipt of the Purchase Price (hereinafter defined), Assignor does hereby transfer, assign, sell and convey to Assignee, all of Assignor's right, title and interest, in, to and under: (i) the 02 Loan, (ii) the 03 Loan, (iii) the 02 Loan Promissory Note, (iv) the 03 Loan Promissory Note, (v) the 02 Loan Mortgage, (vi) the 03 Loan Mortgage, (vii) the 02 Assignment of Rents, (viii) the 03 Assignment of Rents, (ix) the Mortgage Modification; (x) any and all collateral under either the 02 or 03 Loan; (xi) the 118 UCC, (xii) the 168 UCC, (xiii) any and all guarantee obligations by any person or entity made in connection with the 02 Loan and the 03 Loan; (xiv) any title insurance policy issued in connection with the 02 Loan, the 03 Loan, the 02 Loan Mortgage, and/or the 03 Loan Mortgage; (xv) any and all documents and agreements relating to the 02 and 03 Loans, including, without limitation, any modifications or amendments to the 02 and 03 Loans and the related documents entered into prior to the Closing (as hereinafter defined); and (xvi) any and all other rights Assignor may have in connection with the 02 and/or the 03 Loans (collectively, the "Loans"), AS IS, WITHOUT REPRESENTATION, WARRANTY or RECOURSE OF ANY TYPE. Specifically excluded from this Assignment is the any guarantee from the United States Department of Agriculture.

3.    <u>Transfer Warranties</u>. Notwithstanding the statements made in paragraph 2 of this Agreement, Assignor represents and warrants that (a) it is the current holder of the documents and agreements associated with the Loans and the Loans themselves and that to the best of its knowledge, the documents and agreements are valid; (b) that Assignor has not sold or assigned

9

Case 25-02021-HAW Doc 01-164 Filed 12/05/18/Entered 12/05/18/06:05:44 3:49 Desc
Exhibit Exhibit A-1 Page 39 of 49

any of the foregoing to any other person or entity; (c) that Assignor has full power and authority to make this Assignment, without the concurrence or joinder of any other person or entity; (d) that Assignor will provide Assignee with the originals of the documents and agreements associated with the 02 Loan and 03 Loan to Assignor promptly after closing hereunder and will cooperate in the filing of any documents necessary to effectuate the transfers and assignments contemplated by this Agreement; (e) that by this Assignment, Assignor transfers to Assignee all of its right, title and interest in and to all of the foregoing such that, upon closing of the transaction contemplated hereby, hereunder, Assignor shall have no further interest therein and such that, upon closing of the transaction contemplated hereby, Assignee shall have all right, title, and interest relating to the 02 Loan and 03 Loan which Assignor holds immediately prior to such closing; and (f) that as of July 16, 2018, its books reflect the following balances due on account of the Loans:

## 02 Loan

| | |
|---|---|
| Principal Balance: | $493,224.30 |
| Interest to July 16, 2018 | $ 2,724.22 |
| Satisfaction fees | $ 170.50 |
| Total Amount Due: | $496,119.02 |

## 03 Loan

| | |
|---|---|
| Principal Balance: | $1,022,817.83 |
| Interest to July 16, 2018 | $ 2,459.81 |
| Satisfaction fees | $ 254.50 |
| Total Amount Due: | $1,025,532.14 |

10

4. <u>Purchase Price</u>. The "Purchase Price" for the 02 Loan and 03 Loan shall be One Million, Five Hundred Twenty-Two Thousand Seventy-Four Dollars and Twenty-Three Cents ($1,522,074.23).

5. <u>Closing</u>. Closing hereunder shall occur no later than 2:00 p.m, Mechanicsburg time, on Wednesday, July 18, 2018 (the "Closing"). At Closing, Assignee shall tender the Purchase Price to Assignor by check or wire transfer, and shall deliver two original executed counterparts of this Agreement with exhibits. At Closing, Assignor shall deliver (i) two original executed counterparts of this Agreement with exhibits; (ii) original, executed and (where applicable) acknowledged originals of (a) an original, executed Allonge assigning the 02 Loan Promissory Note to Assignee; (b) an original, executed Allonge assigning the 03 Loan Promissory Note to Assignee; (c) an original, executed Assignment of the 03 Loan Mortgage to Assignee; (d) an original, executed Assignment of the 02 Loan Mortgage to Assignee; (e) an original, executed Assignment of the 02 Assignment of Rents to Assignee; (f) an original, executed Assignment of the 03 Assignment of Rents to Assignee; (g) an original, executed Assignment of the Mortgage Modification to Assignee; (h) an original UCC Financing Statement Amendment assigning the 118 UCC to Assignee; (i) an original UCC Financing Statement Amendment assigning the 168 UCC to Assignee; and (j) original, executed Assignments assigning any and all guarantees associated with the 02 Loan and/or the 03 Loan to Assignee. The recording or filing of any such documents (and the payment of any fees associated therewith) shall be the sole responsibility of the Assignee. At Closing, each party shall provide a resolution authorizing the execution of this Agreement.

6. <u>Substitution</u>. Upon tender as above, Assignee shall be and is hereby substituted for and hereby succeeds to the interest of Assignor as obligee, judgment creditor, and mortgagee, as

11

the case may be, under all agreements and documents related to the 02 Loan and the 03 Loan. Assignor shall sign recordable assignments or other necessary documents required to carry out the terms hereof; provided, however, that such documents do no result in Assignor being subject to additional liability or Assignor making additional representations other than as set forth herein.

7. Post-Closing Acts. All actions, proceedings, documents, agreements and communications concerning the 02 Loan and the 03 Loan shall, following tender, be taken, performed or completed by Assignee in Assignee's name only, and Assignor shall have no rights, obligations or duties with respect to either or both of the 02 Loan and/or the 03 Loan, except as specifically stated herein to effectuate the transfer and assignment.

8. Successors and Assigns Bound. This Assignment shall bind and benefit the parties hereto and their respective successors and assigns.

9. Additional Actions. The parties hereto shall take such additional actions and execute such additional documents as may become necessary in the future to effectuate the purposes of this Agreement.

10. Counterparts. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which taken together shall constitute one and the same Agreement.

11. Entire Agreement. This Agreement constitutes the entire agreement between the parties respecting the subject matter hereof, supersedes all prior or contemporaneous written or oral agreements, and may only be modified by a writing, signed by the party against whom enforcement of the modified term is sought.

12

12. Pennsylvania Law Applies. This Agreement shall be governed by Pennsylvania law, without regard to conflicts of laws principles, and any action brought hereunder shall be in the Court of Common Pleas of Cumberland County, Pennsylvania.

13. Time of the Essence. Time is of the essence of each and every obligation hereunder.

14. Agreement not to be Construed Against Either Party as Drafter. The terms and provisions of this Agreement shall not be construed against either party on the basis that such party was responsible for its drafting.

15. WAIVER of JURY TRIAL. The parties hereto each waive any right to trial by jury on any claim, demand, action or cause of action arising under or related to this Agreement or any other document or instrument referred to herein or delivered in connection herewith, whether sounding in contract or tort or otherwise. The parties agree and consent that any such claim, demand, action or cause of action shall be decided by court trial before a judge, sitting without a jury, and that any party to this Agreement may file an original counterpart or a copy of this section with any court as written evidence of the consent of the other to the waiver of their right to trial by jury.

16. INDEMNIFICATION. Assignee shall indemnify, hold harmless, and defend Assignor and its managers, officers, directors, employees, agents, affiliates, successors, and permitted assigns (collectively, the "Indemnified Party") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including professional fees and reasonable attorneys' fees, that are incurred by Indemnified Party or awarded against Indemnified Party in a final non-appealable judgment, administrative proceeding, or any alternative dispute resolution proceeding

13

(collectively, "Losses"), arising out of any third-party claim relating to this Assignment or the transactions contemplated herein.

IN WITNESS WHEREOF, this Agreement is duly executed on the day, month and year first written above.

MEMBERS 1ST FEDERAL CREDIT UNION

By : _____ (seal)

Name: ERIC N. FISCHER

Title: VP, BUSINESS LENDING SALES

H & M HOLDINGS GROUP, LLC

By : _____ (seal)

Name: MELINDA HAUSER DAVIS

Title: member

14

Exhibit F

EXHIBIT F

| | |
|---|---|
| H & M HOLDINGS GROUP, LLC, assignee of MEMBERS 1st FEDERAL CREDIT UNION, <br><br> Plaintiff, <br><br> vs. <br><br> ALAN KIM PATRONO, <br><br> Defendant. | COURT OF COMMON PLEAS CUMBERLAND COUNTY <br><br> No. |

### AFFIDAVIT OF DEFAULT

I, ___Tina Cook___, being duly sworn according to law, deposes and says that I am authorized to make this Affidavit on behalf of Members 1st Federal Credit Union.

I am familiar with commercial loans XXX4167-02 and XXX4167-03 and associated documents entered into between Hauser Estate, Inc. and Hauser Family Farms, LLC and Members 1st Federal Credit Union.

Pursuant to the loan documents these loans initially went into default on December 21, 2016. At the time of assignment to H&M Holdings Group, LLC, the commercial loans referenced above were still in default.

I verify that the statements made in this affidavit are true and correct to the best of my personal knowledge or information and belief. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to sworn falsification to authorities.

MEMBERS 1st FEDERAL CREDIT UNION

___11-25-2019___
Date

___Tina Cook___
Signature  Commercial Loan
Workout Specialist

___Tina Cook___
Name

*Re:* *H & M Holdings Group, LLC, assignee of Members First Federal Credit Union v. Alan Kim Patrono*

## VERIFICATION

I HEREBY VERIFY that the statements made by H & M Holdings Group, LLC and are contained in the within <u>Complaint</u> are true and correct to the best of my knowledge, information and belief. I understand that any false statements contained herein are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

I certify that I am a duly authorized representative of H & M Holdings Group, LLC and as such, am authorized to make this Verification on its behalf.

11\23\19

Date

*Melinda Davis*

Melinda Davis

# CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| Submitted by: | Attorneys for<br>H & M Holdings Group, LLC |
| Signature: | |
| Name: | John W. Croumer, Esquire |
| Attorney No.: | 208170 |

| H & M HOLDINGS GROUP, LLC, assignee of MEMBERS FIRST FEDERAL CREDIT UNION, | COURT OF COMMON PLEAS CUMBERLAND COUNTY |
|---|---|
| Plaintiff, | No. 2019- 12301 |
| vs. | |
| ALAN KIM PATRONO, | |
| Defendant. | |

## NOTICE PURSUANT TO PA. R.C.P. 236

TO:   Alan Kim Patrono
98 East Broadway
Gettysburg, PA 17325

You are hereby notified in accordance with Pennsylvania Rule of Civil Procedure 236 that on the ____27ᵗʰ____ day of November, 2019, Judgment by Confession for Money was entered against you in the above-captioned matter in the amount of $2,209,414.44 upon the filing of a Praecipe for Entry of Confessed Judgment.

_____
Prothonotary