**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| ALAN KIM PATRONO, fdba PATRONO & MURPHY LLC, fdba APPLE LEAF ABSTRACTING & SETTLEMENT CO. and JANE H. PATRONO, | : | CASE NO. 1:25-bk-02214-HWV |
| Debtors. | : | MOTION FOR ORDER COMPELLING DEBTORS TO AMEND BANKRUPTCY PETITION TO REMOVE SUBCHAPTER V DESIGNATION / CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11 |
| MELINDA DAVIS; H&M HOLDINGS GROUP, LLC; HANNAH HAUSER; and HAUSER FAMILY FARMS, LLC, | : | |
| Movants | : | |
| v. | : | |
| ALAN KIM PATRONO, fdba PATRONO & MURPHY LLC, fdba APPLE LEAF ABSTRACTING & SETTLEMENT CO. and JANE H. PATRONO | : | |
| Respondents. | : | |

## OPINION

This matter is before the Court on confirmation of the Debtors' proposed Subchapter V plan of reorganization, Doc. 72 (the "Plan"), and the objections to confirmation filed by Melinda Davis, H&M Holdings Group, LLC, Hannah Hauser, and Hauser Family Farms, LLC (the "Hauser Parties"), Doc. 87, and the United States Trustee, Doc. 88. Also before the Court is the Hauser Parties' Motion to compel the Debtors to amend their bankruptcy petition to remove their Subchapter V designation, or alternatively for the Court to revoke that designation *sua sponte*, Doc. 91 (the "Motion"), and the Debtors' response thereto, Doc. 93.

For the reasons that follow, the Court concludes that Subchapter V eligibility is a statutory predicate to confirmation of a plan under Subchapter V. The Court further concludes

that the Debtors do not qualify as small business debtors under 11 U.S.C. § 101(51D). Confirmation of the Plan will therefore be denied. Because the Court resolves eligibility in connection with confirmation, separate relief on the Motion is unnecessary. The Motion will be denied as moot to the extent it seeks separate relief compelling amendment of the petition or revoking the Subchapter V designation.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). These are core proceedings pursuant to 28 U.S.C. § 157(b)(2), including matters concerning the administration of the estate and confirmation of a plan. 28 U.S.C. § 157(b)(2)(A), (L), and (O).

Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTS AND PROCEDURAL POSTURE

Mr. Patrono is an attorney licensed to practice law in the Commonwealth of Pennsylvania. The Debtors' Plan describes him as a seventy-nine-year-old attorney who practiced primarily in Adams County, Pennsylvania, with a general business practice focused largely on title insurance and real estate. (Doc. 72.) Mrs. Patrono, his wife, is a retired teacher. (*Id.*)

This case arises against the background of a long-running family business dispute. In or around 2006 or 2007, Mrs. Patrono and her two sisters, Hannah Hauser and Melinda Davis, became involved in a family business venture conducted through Hauser Estate, Inc. ("the Corporation") and Hauser Family Farms, LLC ("the LLC"). The Corporation operated a wine and hard cider business. The LLC owned or held interests in real property used in connection with that business.

To finance the Corporation's winery and related operations, the Corporation and the LLC obtained loans from Members 1st Federal Credit Union ("Members 1st"). Mr. Patrono, Mrs. Patrono, Jonathan Patrono, Melinda Davis, and Hannah Hauser each executed commercial guarantees in connection with that financing. On July 18, 2018, Members 1st assigned the loans and related guarantees to H&M Holdings Group, LLC ("H&M"), an entity formed by Hannah Hauser and Melinda Davis on July 10, 2018. (Doc. 91, pp. 31–44.)[1]

On July 27, 2018, H&M instituted confessed-judgment proceedings against Mr. Patrono, Mrs. Patrono, and Jonathan Patrono in the Court of Common Pleas of Adams County, Pennsylvania. (Doc. 103-3, p. 8.) Four days later, on July 31, 2018, the Corporation filed a voluntary bankruptcy petition. (*See* case no. 1:18-bk-03201-HWV.) According to the schedules filed in that case, Mrs. Patrono held a 1% equity interest in the Corporation when the petition was filed. The case was later converted to Chapter 7, and the Chapter 7 trustee sold substantially all of the Corporation's assets. The case was fully administered and closed on July 12, 2021. Mrs. Patrono does not list any ownership interest in the Corporation on her schedules in this case. She does, however, list a 33.33% membership interest in the LLC. (*See* Doc. 71, p. 14.)

The litigation between the Debtors, the Hauser Parties, and various related entities continued for years, involving multiple complaints, motions, and appeals across various courts. The Court refers to that litigation collectively as the "Adams County Litigation." For present purposes, the details of the Adams County Litigation matter only insofar as they explain the source of the asserted Hauser-related liabilities (including the H&M debt), the timing of this bankruptcy filing, the Debtors' role in the litigation and related entities, and the parties' competing arguments about Subchapter V eligibility.

[1] For ease of reference, and where appropriate, the Court utilizes the page numbers from the CM/ECF footer.

During the same general period, Mr. Patrono owned an interest in Patrono & Murphy, LLC ("Patrono & Murphy"), a separate limited liability company that operated a general business law practice focused largely on title insurance and real estate. The record suggests that Patrono & Murphy owned Apple Leaf Abstracting & Settlement Co. ("Apple Leaf"), a title company. (Doc. 91-2, p. 23.) According to Mr. Patrono, he sold his interest in Patrono & Murphy to his partner on March 1, 2022 for $400,000. (*Id.* at 23–24.) Because Apple Leaf was owned by Patrono & Murphy, Mr. Patrono contends that Apple Leaf transferred with that sale. (*Id.*)

On July 9, 2025, the Adams County Court of Common Pleas entered a scheduling order setting trial and related damages proceedings in the Adams County Litigation for October 2025. (Doc. 32, pp. 15–16.) Before those proceedings occurred, the Debtors filed a joint voluntary petition under Chapter 11 on August 8, 2025, and elected to proceed under Subchapter V. (*See* Doc. 1.) The bankruptcy filing stayed the Adams County Litigation as against the Debtors pending further order of this Court.

The petition lists "FDBA Patrono & Murphy LLC" and "FDBA Apple Leaf Abstracting & Settlement Co." as other names used by Mr. Patrono.[2] (Doc. 1.) In the section asking whether either Debtor was a sole proprietor of any full or part-time business, the Debtors answered "No." (*Id.* at 4.) The petition also states that no bankruptcy case was then pending or being filed by any business partner or affiliate. (*Id.* at 3.)

The Debtors filed their schedules on August 22, 2025. (Doc. 22.) As originally filed, the schedules listed total assets of $4,405,536.18 and total liabilities of $3,599,630.81. The original Summary of Assets and Liabilities also checked the box stating that the Debtors' debts were primarily consumer debts. The Debtors later amended certain schedules. (Doc. 71.) The

[2] The record establishes that Patrono & Murphy, LLC and Apple Leaf Abstracting & Settlement Co. are separate legal entities, not fictitious names or trade names under which Mr. Patrono personally conducted business.

schedules as amended list real estate consisting of the Debtors' residence, two rental properties, and additional real property located in or near Gettysburg, Pennsylvania. The schedules also list Mr. Patrono's undefined percentage interests in Patrono & Murphy and Apple Leaf, each valued at $0.00, and Mrs. Patrono's one-third membership interest in the LLC, also valued at $0.00.[3] (*See* Doc. 22.)

The Debtors' schedules do not show active business income. Schedule I identifies Mr. Patrono as self-employed, but it does not list wages or salary for him. Instead, Schedule I lists Social Security income and a negative amount on the line for "net income from rental property and from operating a business, profession, or farm." The Debtors did not file a separate statement allocating that amount between rental-property activity and any business or professional activity. That ambiguity was clarified at the § 341 meeting, which was held and concluded on September 15, 2025. (*See* Doc. 91-2.) At that meeting, Mr. Patrono confirmed that the Debtors' income consisted solely of Social Security and rent, and that the rent was paid to the Debtors personally because they owned the rental properties individually, not through a business entity. (*Id.* at 14–15, 20–22.) Their Chapter 11 current monthly income statement likewise reports Social Security income and a negative net monthly figure for rental or other real property income. Their amended Statement of Financial Affairs later reported no income from employment[4] or from

---

[3] The amended schedules appear to treat the real property located at 410 Cashtown Road, Gettysburg, Pennsylvania 17325 inconsistently. Schedule A/B lists it in the real-property section and states a value of $2,250,000.00 for both the entire property and the portion owned by the Debtors. But the same entry describes the Debtors' interest as a "1/3 Interest in Hauser Family Farms and Winery," and Schedule A/B separately lists Mrs. Patrono's one-third interest in Hauser Family Farms as a business interest. The Court notes this inconsistency only for completeness. For purposes of this Opinion, the Court does not treat 410 Cashtown Road or other property owned by the LLC as real property owned directly by the Debtors.

[4] In a separate filing, each Debtor also certified that he or she received no payment advices from any source of employment during the sixty days before the petition date. (Doc. 23.)

operating a business during the relevant period, while reporting Social Security income and rental income from the rental properties.

The deadline to object to the Debtors' Subchapter V designation under Federal Rule of Bankruptcy Procedure 1020(b) expired on October 15, 2025, thirty days after the § 341 meeting concluded. No party filed an objection by that deadline. The Debtors, therefore, contend that the later eligibility challenge advanced by the Motion is untimely. (Doc. 93.)

Shortly after the petition date, the Hauser Parties moved to dismiss or, alternatively, for relief from the automatic stay to continue the Adams County Litigation. (Doc. 32.) They argued that the Debtors filed the case in bad faith to delay that litigation, but did not challenge their eligibility to proceed as Subchapter V debtors. The Debtors opposed dismissal and asserted that they faced potential liabilities exceeding $2 million, owed substantial legal fees and other debts, and could not pay creditors outside bankruptcy. (Doc. 42.)

On September 23, 2025, the Court denied the motion to dismiss without prejudice but modified the automatic stay to allow the Hauser Parties to pursue final, unappealable judgments in the Adams County Litigation. (Doc. 47.) The Court prohibited enforcement against the Debtors or property of the estate absent further order. The Adams County court then entered judgment on October 31, 2025 in favor of the Hauser Parties and against several defendants, including the Debtors, Jonathan Patrono, Patrono & Murphy, and Apple Leaf (the "Adams County Judgment"). The Adams County Judgment includes several categories of liability and relief, including amounts relating to notes and guarantees, breach of fiduciary duty, civil conspiracy, professional negligence, conversion, fraudulent-transfer claims, fees, costs, and sanctions. The Adams County Judgment states that the judgments entered against all defendants

total $6,839,422.28. On November 25, 2025, the Hauser Parties filed proofs of claim based on the Adams County Judgment.

The Debtors' monthly operating reports identify their line of business as including Mr. Patrono's status as an attorney, Mrs. Patrono's connection to Hauser Family Farms, LLC, and rental-property activity. The reports consistently list zero employees and zero receivables. (*See* Docs. 41, 66, 81, 85, 90, 97, 113, 135, 146, 165, 176, 189, 207.) They primarily reflect Social Security deposits, rent-related deposits, ordinary personal expenditures, and issues concerning the Debtors' rental properties. Later reports also reflect occasional small deposits identified as notary fees.

On November 5, 2025, the Debtors filed their Subchapter V Plan. (Doc. 72.) The Plan describes the failed family orchard, winery, and hard-cider venture associated with the Corporation and the LLC. It states that Mr. Patrono continues to practice law and identifies three sources of plan funding: the Debtors' income, the sale of Mrs. Patrono's one-third membership interest in the LLC, and the sale of real estate. The Plan further states that the "majority" of the Plan will be implemented through liquidation of the Debtors' assets and that the Debtors' income "could never be adequate" to cover plan payments other than the automobile leases.

The Hauser Parties object to confirmation. (Doc. 87.) They argue, among other things, that the Debtors are not eligible for Subchapter V, that the Plan fails to account properly for the Adams County Judgment, that the case is not a legitimate small-business reorganization, and that the Plan cannot be confirmed either under Subchapter V or as a traditional Chapter 11 plan. The United States Trustee ("UST") also objects to confirmation. (Doc. 88.) The UST argues that the Plan contains internal inconsistencies, fails to include cash-flow projections, fails to address the Adams County Judgment and its effect, fails to identify a plan-payment term or sale timeline,

fails to identify which properties will be liquidated, and fails to classify and treat all scheduled secured creditors.

On December 23, 2025, the Hauser Parties filed the Motion now before the Court. (Doc. 91.) The Motion seeks an order compelling the Debtors to amend their petition to remove the small business debtor designation or, alternatively, revoking the Subchapter V designation. The Debtors oppose the Motion, arguing that Mr. Patrono is still practicing law, that the Hauser Parties' claims are disputed and not final, that the Debtors satisfy Subchapter V, and that the eligibility challenge may be untimely. (Doc. 93.)

The Court held oral argument and continued hearings on confirmation and the Motion. Because the confirmation objections and the Motion raised the same eligibility dispute, the Court directed further briefing on whether the Debtors qualify as small business debtors, including whether they were "person[s] engaged in commercial or business activities" within the meaning of 11 U.S.C. § 101(51D)(A). The parties submitted briefs, Docs. 103, 114, 153, 155, 161, and the Court heard additional argument on May 19, 2026. The matter is therefore ripe for decision.

## III. Analysis

The Debtors' eligibility for Subchapter V is before the Court in two related procedural postures: as the basis for the Motion and as a disputed confirmation requirement. Those postures, however, are not on equal footing. The Motion seeks procedural relief directed to the Debtors' Subchapter V designation after the deadline imposed by Federal Rule of Bankruptcy Procedure 1020(b) expired. Resolving eligibility through that Motion would therefore require the Court to decide whether Rule 1009(a)(2) may be used as a substitute for a timely Rule 1020(b) objection, or as a means to avoid the consequence of missing that deadline. The relief sought by the Motion also appears to rest substantially within the Court's discretion.

Confirmation presents a different posture. The Debtors seek confirmation of a plan under Subchapter V. Unlike the Motion, confirmation is governed by mandatory statutory conditions. If the applicable requirements of § 1191(a) or § 1191(b) are satisfied, the Court "shall" confirm the plan. The Court therefore must determine whether those requirements are met. If eligibility to proceed under Subchapter V is a statutory predicate to confirmation, deciding eligibility in the confirmation context may resolve the substantive issue underlying the Motion and render separate relief on the Motion unnecessary. The Court therefore begins with that issue.

**A. Is Subchapter V Eligibility a Statutory Predicate to Confirmation of a Subchapter V Plan?**

The Code's confirmation provisions supply the governing rule. Confirmation under Subchapter V may proceed, if at all, under either § 1191(a) or § 1191(b). Section 1191(a) governs consensual confirmation and requires satisfaction of all requirements of § 1129(a), except § 1129(a)(15). Section 1191(b) governs nonconsensual confirmation and requires satisfaction of all requirements of § 1129(a), except §§ 1129(a)(8), (10), and (15), as well as the additional requirements imposed by § 1191(b). In either case, §§ 1129(a)(1) and (a)(2) apply. Those provisions require that the "plan" and the "plan proponent" comply with the "applicable provisions of this title." 11 U.S.C. §§ 1129(a)(1), (a)(2), 1191(a), (b).

The "applicable provisions of this title" include §§ 1189(a), 1182(1), and 101(51D), which define who may file a plan and thus act as the plan proponent under Subchapter V. First, § 1189(a) provides that "[o]nly the debtor may file a plan under this subchapter." 11 U.S.C. § 1189(a). Second, § 1182(1) identifies who the "debtor" is for purposes of that limitation by providing that the term debtor means a "small business debtor." 11 U.S.C. § 1182(1). Third, § 101(51D) defines and limits who may qualify as a "small business debtor" for purposes of Subchapter V. 11 U.S.C. § 101(51D). Considered together with §§ 1191(a) and 1191(b), which

incorporate §§ 1129(a)(1) and 1129(a)(2), those provisions establish a direct rule: only a debtor that qualifies as a small business debtor under § 101(51D) may file a plan and act as a plan proponent under Subchapter V in compliance with the applicable provisions of title 11.[5]

Two consequences follow. The first concerns the plan proponent. Section 1129(a)(2) requires the plan proponent to comply with the applicable provisions of title 11. A plan proponent that does not qualify as a small business debtor under § 101(51D) is not a Subchapter V "debtor" under § 1182(1) and therefore is not authorized by § 1189(a) to file a plan under Subchapter V. Such a plan proponent has not complied with the applicable provisions of title 11 and cannot satisfy § 1129(a)(2).

The second consequence concerns the plan. Section 1129(a)(1) requires the plan to comply with the applicable provisions of title 11. A plan filed under Subchapter V by a plan proponent that does not qualify as a small business debtor is not a plan filed in compliance with § 1189(a), because § 1189(a) permits only the Subchapter V "debtor" to file such a plan. Such a plan does not comply with the applicable provisions of title 11 and cannot satisfy § 1129(a)(1). It cannot be confirmed under Subchapter V.

The Court therefore concludes that Subchapter V eligibility is a statutory predicate to confirmation of a Subchapter V plan. That conclusion matters here. The Debtors seek confirmation of a Subchapter V plan, and their eligibility is disputed. Because eligibility is a statutory predicate to confirmation, the Debtors must establish that they are eligible to proceed under Subchapter V as part of their burden to establish that the Plan satisfies the applicable

[5] Section 103(i) independently reinforces this conclusion. It provides that Subchapter V "applies only in a case under chapter 11 in which a debtor (as defined in section 1182) elects that subchapter V of such chapter shall apply." 11 U.S.C. § 103(i). Section 1182(1), in turn, defines "debtor" for purposes of Subchapter V to mean a "small business debtor." 11 U.S.C. § 1182(1). Thus, Subchapter V applies only if the person electing its application qualifies as a small business debtor under § 101(51D).

confirmation requirements. *See, e.g.*, *In re Tribune Co.*, 464 B.R. 126, 151 (Bankr. D. Del. 2011) ("The plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a)[.]").[6]

The Court now turns to the statutory definition that controls Subchapter V eligibility. For these Debtors, the relevant definition is § 101(51D)(A), which defines the term "small business debtor."

**B. Are the Debtors "Small Business Debtors"?**

Section 101(51D)(A) defines the term "small business debtor" as follows:

> (51D) The term "small business debtor"—
>
> (A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $3,424,000 (excluding debts owed to 1 or more affiliates or insiders), not less than 50 percent of which arose from the commercial or business activities of the debtor[.]

11 U.S.C. § 101(51D)(A).

Courts construing §§ 101(51D) and 1182 generally identify four requirements for Subchapter V eligibility: (1) the debtor must be a "person" within the meaning of § 101(41); (2) the debtor must be engaged in commercial or business activities;[7] (3) the debtor's aggregate

---

[6] Courts addressing eligibility objections under Federal Rule of Bankruptcy Procedure 1020 have likewise generally placed the burden of proving Subchapter V eligibility on the debtor. *See In re Stevens*, 667 B.R. 428, 434 (Bankr. S.D.W. Va. 2025) (collecting cases); *NetJets Aviation, Inc. v. RS Air, LLC* (*In re RS Air, LLC*), 638 B.R. 403, 414 (B.A.P. 9th Cir. 2022); *In re Offer Space, LLC*, 629 B.R. 299, 304 (Bankr. D. Utah 2021); *In re Ikalowych*, 629 B.R. 261, 275 (Bankr. D. Colo. 2021). *But see In re Body Transit, Inc.*, 613 B.R. 400, 409 n.15 (Bankr. E.D. Pa. 2020).

[7] As discussed further in Section III.B.1.b. below, this shorthand reference is useful, but incomplete. It omits the parenthetical Congress placed immediately after the phrase "engaged in commercial or business activities." That parenthetical bears directly on the second requirement because it identifies when the activities of an affiliate may be considered for purposes of determining an individual debtor's eligibility. Failing to give the parenthetical operative effect risks obscuring the statutory limit Congress included.

noncontingent liquidated secured and unsecured debts must not exceed the applicable statutory limit as of the petition date; and (4) not less than 50 percent of those debts must have arisen from the commercial or business activities of the debtor. *See, e.g.*, *In re Stevens*, 667 B.R. 428, 434 (Bankr. S.D.W. Va. 2025).

There is no dispute that the Debtors, as individuals, are "persons" within the meaning of § 101(41). Thus, the Court need not decide that issue. Nor must the Court decide whether the Debtors satisfy the statutory debt-limit requirement, because two other requirements of § 101(51D)(A) are dispositive. The first is whether the Debtors were "engaged in commercial or business activities" within the meaning of § 101(51D)(A). The Court will refer to this as the "engaged in" requirement. That inquiry includes whether the Debtors may rely on activities conducted through, for, or on behalf of separate entities. The second requirement is whether "not less than 50 percent" of their qualifying debts arose from commercial or business activities properly treated as their own under § 101(51D)(A). The Court will refer to this as the "debt-composition" requirement. The Court limits its analysis to those two requirements.

**1. Were the Debtors "Engaged in Commercial or Business Activities"?**

Statutory interpretation begins with the text. "When the words of a statute are unambiguous, . . . judicial inquiry is complete." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (internal quotation marks omitted). Where a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted). The Court must also "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)) (internal quotation marks

omitted). When Congress leaves a term undefined, courts give that term its ordinary meaning, read in context. *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006).

With those principles in mind, the Court turns to the "engaged in" requirement. That requirement has two components. The first asks whether the Debtors were presently "engaged in" the asserted activity as of the petition date. The second asks whether the activity that survives that inquiry is a "commercial or business" activity that may properly be treated as the Debtors' own under § 101(51D)(A). The Court begins with the first component.

**a. "Engaged In" Requires "Present" Engagement as of the Petition Date**

Section 101(51D)(A) uses the present tense. It requires that the person be "engaged in" commercial or business activities. It does not ask whether the person was formerly engaged in those activities. Although some early decisions read the definition more broadly, the better-reasoned view is that the term "engaged in" is "inherently contemporary in focus and not retrospective. Thus, a debtor need not be maintaining its core or historical operations on the petition date, but it must be 'presently' engaged in some type of commercial or business activities to satisfy § 1182(1)(A)." *NetJets Aviation, Inc. v. RS Air, LLC* (*In re RS Air, LLC*), 638 B.R. 403, 410 (B.A.P. 9th Cir. 2022); *see also In re Ikalowych*, 629 B.R. 261, 281–83 (Bankr. D. Colo. 2021); *In re Stevens*, 667 B.R. at 438. That does not require a "down-to-the-second review" of the person's activities at the precise moment of filing. *In re Stevens*, 667 B.R. at 439; *see also In re Ikalowych*, 629 B.R. at 283. Activity immediately before or after the petition date may inform the inquiry, but it cannot replace it. The statute requires present engagement in the asserted activity as of the petition date, not merely a past or historical connection to activity. *In re RS Air, LLC*, 638 B.R. at 409–10; *In re Stevens*, 667 B.R. at 438.

Applying that standard here, the Debtors assert several bases for eligibility. First, they rely on the Adams County Litigation, which was pending as of the petition date. As indicated above, that litigation includes claims asserted against the Debtors personally, as well as claims arising from business ventures conducted through separate entities associated with them, including the Corporation, the LLC, Patrono & Murphy, and Apple Leaf. Second, the Debtors rely on Mr. Patrono's alleged continuing law practice and notary business; his asserted ownership interests in Patrono & Murphy and Apple Leaf; Mrs. Patrono's membership interest in the LLC; and personal guarantees, judgment-related debt, and other residual liabilities arising from the failed business ventures.

The record establishes that as of the petition date the Debtors were "presently" engaged in only two of the asserted bases: the Adams County Litigation and the personally owned rental-property activity. It is uncontested that the Adams County Litigation remained pending as of the petition date and included claims against the Debtors in their personal capacities, as well as related proceedings involving separate entities associated with the Debtors. The record also establishes that H&M instituted confessed-judgment proceedings against the Debtors in July 2018; the litigation continued for years through multiple proceedings and appeals; and, before the petition date, the Adams County Court of Common Pleas had entered a scheduling order setting trial and related damages proceedings for October 2025. The Debtors filed this case before those proceedings occurred, and the bankruptcy filing stayed the Adams County Litigation against the Debtors. These facts establish that the Debtors were presently engaged in active litigation when the petition was filed.

Second, the Debtors were presently engaged in personally owned rental-property activity when the petition was filed. The Debtors' schedules identify rental properties owned in their own

names. Mr. Patrono confirmed at the § 341 meeting that the Debtors received rent personally from those properties, and the amended Statement of Financial Affairs and monthly operating reports reflect rental income and rental-property-related activity. These undisputed facts of record establish the Debtors' present engagement in personally owned rental-property activity as of the petition date.

Apart from these two activities, the record does not establish present engagement in any continuing law practice, notary business, or other operating business activity conducted by either Debtor, individually, as a sole proprietor, or otherwise in a personal capacity, as of the petition date. The schedules, current monthly income statement, amended Statement of Financial Affairs, § 341 testimony, and monthly operating reports do not reflect active law-practice income, employees, receivables, or ongoing business operations as of the petition date. Although later monthly operating reports reflect occasional small deposits identified as notary fees, those isolated entries do not establish that either Debtor was operating a continuing notary business or was presently engaged in notary business activity as of the petition date.

Nor does the record establish that the Corporation, the LLC, Patrono & Murphy, or Apple Leaf were actively operating businesses as of the petition date. The petition identifies "FDBA Patrono & Murphy LLC" and "FDBA Apple Leaf Abstracting & Settlement Co." as other names used by Mr. Patrono, but both are separate legal entities, and the Debtors report that neither Debtor operated a sole proprietorship. The schedules value Mr. Patrono's interests in Patrono & Murphy and Apple Leaf at $0.00, and the amended schedules value Mrs. Patrono's one-third membership interest in the LLC at $0.00. The record shows, at most, Mrs. Patrono's passive ownership of a membership interest in the LLC and asserted receipt of a Schedule K-1. It does

not show that she was actively participating in, managing, or conducting activity for the LLC as of the petition date.

Finally, the personal guarantees, judgment-related debt, and other residual liabilities identified by the Debtors do not establish a separate basis for present engagement in activity as of the petition date. As explained more fully below, "activity" refers to behavior or actions of a particular kind. *See infra* Section III.B.1.b.ii. That definition matters here because being obligated under a guarantee or owing a debt describes a legal status or liability, not behavior or action in which the Debtors were engaged.[8] As such, the only possible activity associated with these asserted bases is the execution of a guarantee or the conduct that gave rise to the judgment-related debt and residual liabilities. But even assuming those things qualify as activity, they occurred well before the petition date. Thus, the Debtors were not presently engaged in that activity when the petition was filed. For these reasons, and because the phrase "engaged in" is present tense and requires the Debtors to be presently engaged in the asserted activity as of the petition date, the guarantees, judgment-related debt, and residual liabilities do not establish present engagement in activity for purposes of § 101(51D)(A).[9]

The Court therefore concludes that the Debtors satisfy the present-engagement component of the "engaged in" requirement with respect to the Adams County Litigation and their personally owned rental-property activity. The record does not establish present

---

[8] This ordinary meaning is consistent with dictionary definitions. Merriam-Webster defines "debt" as "a state of being under obligation to pay or repay someone or something in return for something received" and "a state of owing." Debt, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/debt (last visited Aug. 31, 2026). It defines "guarantee" as "to promise to answer for the debt, default, or miscarriage of" another. Guarantee, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/guarantee (last visited Aug. 31, 2026). Thus, just as passive ownership of a membership interest and asserted receipt of K-1s do not themselves constitute activity, the continued existence of a debt or liability does not itself constitute activity. *See infra* Section III.B.1.b.ii.

[9] To the extent the guarantees, judgment-related debt, and residual liabilities are connected to any present activity as of the petition date, that activity is the Adams County Litigation, which the Court has already treated as presently pending. They therefore do not establish present engagement in any additional activity separate from that litigation.

engagement, as of the petition date, in a continuing law practice, notary business, active operations of the Corporation, the LLC, Patrono & Murphy, Apple Leaf, or any other ongoing operating business activity conducted by either Debtor. Nor do the Debtors' passive ownership interests, asserted receipt of K-1s, personal guarantees, judgment-related debt, or residual business liabilities establish present engagement in any activity separate from the Adams County Litigation or the personally owned rental-property activity.

Having determined which activities satisfy the present-engagement component of the "engaged in" requirement, the Court next turns to the question of whether those activities satisfy the "commercial or business activities" component.

**b. Scope of the "Commercial or Business Activities" Component**

Resolving this component begins with a threshold interpretive issue: whether the phrase "a person engaged in commercial or business activities" may be applied in isolation, or whether it must be read together with the immediately following parenthetical and the related debt-composition language in § 101(51D)(A). That threshold issue matters because the Debtors rely in part on activity conducted for, through, or on behalf of separate entities. Once the threshold interpretive issue is resolved, two questions follow. First, whose activities may be considered? Second, among the activities that may be considered, which are commercial or business in nature?

The relevant statutory language is "a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title . . .)." 11 U.S.C. § 101(51D)(A).[10] Courts often describe this inquiry merely as whether the debtor was "engaged

[10] The omitted portion of the parenthetical excludes "a person whose primary activity is the business of owning single asset real estate." 11 U.S.C. § 101(51D)(A). No party developed an argument that this exclusion applies to the Debtors, and the record does not establish that the Debtors' primary activity was the business of owning single asset real estate. The Court need not decide whether the exclusion applies. Even assuming, without deciding, that it does not prevent

in commercial or business activities," without further discussion of the parenthetical. That shorthand may be convenient, but it risks obscuring the role the parenthetical plays in the statutory definition. The parenthetical is part of the statutory text. It is not surplusage, and the Court may not treat it as optional.

The Court recognizes that a substantial body of case law has analyzed Subchapter V eligibility without giving operative effect to the parenthetical. *See, e.g.*, *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 125 F.4th 1365, 1378–80 (11th Cir. 2025); *In re RS Air, LLC*, 638 B.R. at 409–13; *In re Tombul*, No. 1:26-bk-10223, 2026 WL 1096475, at *1–3 (Bankr. E.D. Tenn. Apr. 22, 2026); *In re Stevens*, 667 B.R. at 434–41; *McGriff Ins. Servs., LLC v. Wilson* (*In re Wilson*), 666 B.R. 828, 836–38 (Bankr. M.D. Ga. 2024); *In re Fama-Chiarizia*, 655 B.R. 48, 58–72 (Bankr. E.D.N.Y. 2023); *In re Reis*, No. 22-00517, 2023 WL 3215833, at *3–6 (Bankr. D. Idaho May 2, 2023); *Nat'l Loan Invs., L.P. v. Rickerson* (*In re Rickerson*), 636 B.R. 416, 421–27 (Bankr. W.D. Pa. 2021); *In re McCune*, 635 B.R. 409, 418–22 (Bankr. D.N.M. 2021); *In re Vertical Mac Constr., LLC*, No. 6:21-bk-01520, 2021 WL 3668037, at *1–4 (Bankr. M.D. Fla. July 23, 2021); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 235–39 (Bankr. S.D. Tex. 2021); *In re Blue*, 630 B.R. 179, 186–91 (Bankr. M.D.N.C. 2021); *In re Offer Space, LLC*, 629 B.R. 299, 303–11 (Bankr. D. Utah 2021); *In re Ikalowych*, 629 B.R. at 274 n.66, 283–87 (noting but declining to apply an argument based on the language of the parenthetical); *In re Johnson*, No. 19-42063, 2021 WL 825156, at *4–9 (Bankr. N.D. Tex. Mar. 1, 2021); *In re Blanchard*, No. 19-12440, 2020 WL 4032411, at *1–2 (Bankr. E.D. La. July 16, 2020); *In re Thurmon*, 625 B.R. 417, 421–24 (Bankr. W.D. Mo. 2020). In those decisions, the parenthetical is either omitted from the formulation of the issue, appears only in an initial quotation of the statute, or is

consideration of the Debtors' personally owned rental-property activity, for the reasons set forth in Section III.B.2., the Debtors have not established the separate debt-composition requirement of § 101(51D)(A).

acknowledged without being given operative effect. It then plays no meaningful role in the analysis. The courts generally proceed directly to whether the debtor was engaged in commercial or business activities, often under a broad totality-of-the-circumstances inquiry, without first asking what work the parenthetical performs.

That approach is not persuasive on the specific issue presented here. As explained above, the parenthetical is part of the statutory text and may not be ignored. Because the Court must "give effect, if possible, to every clause and word of a statute," *Duncan*, 533 U.S. at 174, the parenthetical must be given independent effect. To the extent the cited decisions do not do so, this Court declines to follow them on that issue.

Returning to the text, the Court must read the statutory language as a whole because statutory construction is a holistic endeavor. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). A provision that may appear uncertain in isolation is often clarified by the rest of the statutory scheme, including where "the same terminology is used elsewhere in a context that makes its meaning clear." *Id.* Thus, the phrase "a person engaged in commercial or business activities" must be read together with the immediately following parenthetical and the later requirement that not less than 50 percent of the debtor's qualifying debts arise from "the commercial or business activities of the debtor." 11 U.S.C. § 101(51D)(A). The Court must give effect, if possible, to each part of that definition and may not read any portion of the text in isolation or as though another portion were absent. The Court will therefore read those provisions together to determine whose commercial or business activities may be considered.

### i. The Activities Must Be the Debtors' Own Unless the Parenthetical Applies

The structure of the statute shows that the language preceding the parenthetical refers to the debtor's own commercial or business activities, not the activities of another person or separate legal entity. In relevant part, § 101(51D)(A) defines a "small business debtor" as "a person engaged in commercial or business activities." The "person" referred to is the debtor whose eligibility is being tested. The statute then adds, in the parenthetical, "including any affiliate of such person that is also a debtor under this title."[11] That added language would be mere surplusage if the language preceding it already included the activities of separate entities. Put differently, if the language preceding the parenthetical already permitted a debtor to qualify based on another business entity's activities, there would be no reason to specify the condition under which an affiliate's activities may also be considered. Such a reading would create unnecessary tension between the opening phrase and the parenthetical. The Court must avoid that result because statutory text must be read as a whole, and related clauses should be construed to operate harmoniously rather than in tension when the text permits. *See Jones v. Hendrix*, 599 U.S. 465 (2023); *United States v. Bass*, 404 U.S. 336, 344 (1971). Here, the harmonious reading is that the opening phrase refers to the debtor's own commercial or business activities, while the parenthetical identifies the condition under which an affiliate's activities may also be considered. That reading also accords with the cardinal rule that Congress is presumed to say what it means and that courts must give effect, if possible, to every word and clause of a statute.

[11] Congress placed the affiliate clause in the parenthetical immediately after the phrase "engaged in commercial or business activities." This placement shows that the affiliate clause bears on the "commercial or business activities" component of the "engaged in" requirement, rather than changing the eligible "person" whose debts are measured under the debt-limit and debt-composition requirements. The wording confirms the point. The phrase "any affiliate of such person" assumes that the eligible person has already been identified and then refers to that person's affiliate. The affiliate clause therefore does not replace the eligible "person" with the affiliate. It identifies when an affiliate's commercial or business activities may be considered in determining whether the eligible person is "engaged in commercial or business activities."

The Court adopts that harmonious reading. The language preceding the parenthetical refers only to the debtor's own commercial or business activities. The parenthetical identifies the limited circumstance in which the activities of an affiliate may be considered, provided the affiliate is also a debtor under title 11. *See* 11 U.S.C. § 101(51D). In other words, the parenthetical provides the condition under which an affiliate's commercial or business activities may be "attributed" to a debtor for purposes of satisfying this requirement. Absent attribution under the parenthetical, the activities must be the debtor's own commercial or business activities. Context confirms this reading.

First, the debt-composition requirement reinforces this reading. Section 101(51D)(A) uses the phrase "commercial or business activities" again when it later requires that not less than 50 percent of the debtor's qualifying debts arise from "the commercial or business activities of the debtor." The added words "of the debtor" confirm that the statute is concerned not merely with whether the activities are commercial or business in nature, but also with *whose* activities they are. That language recognizes a distinction between the debtor's commercial or business activities and those of another person or entity. Read together with the language preceding the parenthetical, the debt-composition requirement shows that the phrase "commercial or business activities" refers, in the first instance, to the debtor's own commercial or business activities, not to the activities of another person or a separate legal entity.

That conclusion accords with the presumption of consistent usage. When Congress uses the same term or phrase in the same statute, courts generally presume that the words carry the same meaning unless context indicates otherwise. *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). Here, Congress used the same operative phrase, "commercial or business activities," twice within the same definition. The Court therefore gives that phrase the same substantive

meaning in both clauses, while also giving effect to the words "of the debtor" in the debt-composition clause.[12]

The parenthetical's use of the word "including" does not change the Court's reading. The Bankruptcy Code provides that "includes" and "including" are not limiting. 11 U.S.C. § 102(3). Because of that rule, one might argue that the parenthetical merely identifies an example Congress wanted to make clear was included, without foreclosing consideration of other separate-entity activities. But that reading rests on an unsupported premise: that the opening phrase already permits a debtor to rely on activities performed for, through, or on behalf of any separate legal entity, while nevertheless leaving doubt about whether the activities of "any affiliate of such person that is also a debtor under this title" are included. Nothing in the statutory text suggests such a distinction. If the opening phrase already reached separate-entity activities generally, it would necessarily include affiliates of the debtor that are also debtors under title 11. Under that reading, the parenthetical's specific reference to those entities would serve little or no purpose.

The better reading gives meaning to both the opening phrase and the parenthetical. The opening language covers only the debtor's own commercial or business activities. Thus, a debtor may rely on activity conducted personally, as a sole proprietor, under a trade name that is not itself a separate legal entity, or in some other personal capacity without resort to the parenthetical. The parenthetical applies when the activity being considered is that of a separate

[12] The Court recognizes the general principle that when Congress includes language in one part of a statute but omits it in another, courts ordinarily presume the difference was intentional. *See Russello v. United States*, 464 U.S. 16, 23 (1983). But that principle does not support a contrary reading here. The difference in wording reflects the different grammar and function of the two clauses. The opening phrase identifies whose activities matter by referring to "a person engaged in commercial or business activities." The "person" is the debtor whose eligibility is being tested. The debt-composition clause, by contrast, asks which debts arose from which activities, and the words "of the debtor" identify whose commercial or business activities are relevant to that inquiry. Omitting "of the debtor" from the opening phrase therefore does not imply that a debtor may rely on the activities of any separate entity.

legal entity, and then only if the entity is an affiliate that is also a debtor under this title. On that question, Congress did not speak broadly. It did not say that the activities of any related business, commonly controlled entity, or entity for which the debtor acted may be considered. It referred specifically to "any affiliate of such person that is also a debtor under this title." 11 U.S.C. § 101(51D)(A). Reading "including" to permit consideration of separate-entity activity without regard to whether that entity is "also a debtor under this title" would not merely give "including" its non-limiting effect; it would strip the parenthetical's condition of meaningful effect.

The Court's interpretation of the parenthetical is also consistent with the available secondary authority. The United States Trustee Program's Policy and Practices Manual explains that "[a] debtor who is an 'affiliate' as defined in section 101(2), of a small business debtor will itself be considered a small business debtor as long as aggregate non-insider debts of the affiliated debtors do not exceed the [applicable statutory] debt limit." U.S. Trustee Program Policy and Practices Manual, Vol. 3, § 3-14.2. Applying that rule, the Manual explains that "[i]f, therefore, both an individual and that person's closely held corporation or limited liability company (LLC) file chapter 11 petitions and if the aggregate debts of the two entities do not exceed the [applicable statutory] limit, both entities will be treated as small business debtors." *Id.* The Manual then draws the converse. When only the individual files, the individual "would most likely not be a small business debtor because the business entity, and not the individual, is the person 'engaged in commercial or business activities.'" *Id.*[13] Norton Bankruptcy Law and Practice reads the parenthetical in the same way. It explains that the parenthetical may allow an individual business owner to qualify when both the individual and the business file bankruptcy,

[13] Although that discussion appears in the Manual's small-business Chapter 11 discussion rather than in a Subchapter V-specific discussion, the same statutory definition supplies the eligibility requirement at issue here. *See* 11 U.S.C. §§ 101(51D), 1182(1).

even if the individual is not separately engaged in commercial or business activities. 4 Norton Bankr. L. & Prac. 3d § 107:1. Neither source is binding. Both, however, read the statutory text the same way this Court does: the activities of a separate business entity are not automatically the activities of the individual owner, and the parenthetical supplies the statutory path for attributing qualifying affiliate activity to the debtor.

The decisions cited by the parties and referenced above do not persuade the Court otherwise. Many are useful in identifying when a debtor is presently engaged in activity and when particular activity may be commercial or business in nature. But they do not give operative effect to the parenthetical when addressing the distinct statutory question presented here: whose activities may be considered. To the extent those decisions omit the parenthetical from the analysis, quote the parenthetical without giving it operative effect, or proceed directly to a broad totality-of-the-circumstances inquiry, the Court does not find them persuasive on whether activity conducted for, through, or on behalf of a separate entity may be treated as the debtor's own activity. That question must be answered by the statutory text, and the text permits separate-entity activity to be attributed to the debtor only through the condition Congress included in the parenthetical.

Nor does the Court's reading frustrate Subchapter V's remedial purpose. Some courts have expressed concern that a narrow reading of Subchapter V eligibility could exclude meritorious small business debtors merely because their debts arose from former operations or activities conducted in another capacity. *See In re Blue*, 630 B.R. at 191. That concern is not implicated by the Court's interpretation of § 101(51D)(A). A debtor engaged in its own commercial or business activities may qualify based on those activities. If the debtor is an individual, the debtor may rely on activity conducted in a personal capacity or as a sole

proprietor. If the debtor is a limited liability company, corporation, or another eligible person, the debtor may rely on its own commercial or business activities. Thus, the Court's reading does not restrict the primary class of Subchapter V debtors. Nor does it categorically exclude individuals who hold ownership interests in separate legal entities, such as limited liability companies or corporations. An individual owner may qualify based on the owner's own commercial or business activities, or may rely on the activities of a separate legal entity through the parenthetical when that entity is both an affiliate of the debtor and a debtor under title 11. That structure makes sense. Business owners often guarantee business debt, and coordinated relief for the business and its owner may be necessary to achieve a meaningful small-business reorganization. The parenthetical allows that coordinated treatment while ensuring transparency to creditors and subjecting the business whose activities are being relied upon to bankruptcy-court supervision.

The only category of individual owner restricted by the Court's reading is one whose eligibility depends on treating the activities of a separate business entity as the individual's own, even though that entity is not an affiliate of the debtor that is also a debtor under title 11. That restriction makes sense and is consistent with Subchapter V's purpose, which is to facilitate small-business debtor reorganizations under Chapter 11. If the business whose activities are being relied upon is not itself a debtor, then there is no small-business debtor reorganization for Subchapter V to facilitate. There is only an individual debtor seeking relief based on ownership, former ownership, or involvement in a small business that is not itself a debtor under title 11. Extending Subchapter V to that individual under those circumstances would not advance the reorganization or administration of a small business debtor. It would instead allow the individual to obtain Subchapter V relief by relying on the activities of a business that is not seeking

bankruptcy relief and is not subject to bankruptcy-court or creditor supervision. Section 101(51D)(A) does not permit that result.[14]

Accordingly, the Court concludes that the phrase "commercial or business activities" in § 101(51D)(A) refers, in the first instance, to the debtor's own commercial or business activities. Separate-entity activity may be attributed to the debtor only through the parenthetical, and only when the separate entity is both an affiliate of the debtor and a debtor under title 11.

The Court now applies that conclusion to the facts of this case. The analysis of the phrase "engaged in" above narrowed the Debtors' asserted bases for eligibility. Thus, only three categories remain for this part of the analysis. First, the Debtors rely on their involvement in the portions of the Adams County Litigation arising from business ventures conducted through separate entities associated with them. Second, they rely on their own defense of claims asserted against them personally in that litigation. Third, they rely on their personally owned rental-property activity. The first category implicates the parenthetical because it concerns activity conducted for, through, or on behalf of separate entities. The second and third categories do not raise the same issue because they concern acts taken by the Debtors on their own behalf.

The Court first addresses the entity-related litigation activity. An individual may act for a corporation, limited liability company, partnership, or other separate legal entity in many ways. The individual may manage operations, sign documents, negotiate with creditors, direct litigation strategy, participate in litigation, pursue appeals, or otherwise act on the entity's behalf. Those acts are often commercial or business in nature. But when they are performed for, through, or on behalf of the separate entity, they remain the separate entity's commercial or business activities.

---

[14] Under the contrary reading, an individual owner could seek Subchapter V relief based on the activities of a separate business entity even if that entity is solvent, not in bankruptcy, and has no need to reorganize. That result is difficult to reconcile with a statute designed to facilitate the reorganization of small business debtors in bankruptcy.

In that setting, the individual acts not in an individual capacity, but in a representative capacity as an officer, manager, member, agent, or other representative of the entity. The acts do not become the individual debtor's own commercial or business activities merely because the individual supplied the labor, exercised control, or faces personal liability arising from the same underlying events.

On this record, much of the Adams County Litigation arose from or involved business activity conducted for, through, or on behalf of separate entities, including the Corporation, the LLC, Patrono & Murphy, Apple Leaf, and other entities involved in the failed Hauser business venture. With respect to that portion of the litigation, the Debtors acted not in their individual capacities, but in representative capacities on behalf of the separate entities. To rely on that litigation activity for eligibility purposes, they had to show that it was their own activity, rather than activity conducted for, through, or on behalf of a separate entity. They have not made that showing.

Nor have the Debtors shown that the condition stated in the parenthetical applies to that portion of the litigation activity. They have not established that the Corporation, the LLC, Patrono & Murphy, Apple Leaf, or any other relevant entity was both an affiliate of the Debtors and also a debtor under title 11 as of the petition date. Because the parenthetical's condition has not been established, the Court may not treat any of the litigation activity performed for, through, or on behalf of those separate entities as the Debtors' own activity for purposes of § 101(51D)(A).

The Court next considers the Debtors' remaining two bases for asserted eligibility. First, to the extent the Debtors defended claims asserted against them individually, pursued appeals in their own names, or otherwise acted on their own behalf in response to personal liability, those

acts were the Debtors' own activities. Second, the Debtors owned the rental properties individually, received rent personally, and reported rental-property-related income and activity. That rental-property activity was also the Debtors' own activity. Both categories may therefore be considered under the opening phrase "a person engaged in commercial or business activities," without resorting to the parenthetical.

But that conclusion decides only whose activities may be considered. It does not decide whether those activities were commercial or business in nature. The Debtors' own litigation activity does not automatically qualify as commercial or business activity merely because it arose from the same factual setting as commercial or business activities conducted by separate entities. Likewise, personally owned rental-property activity must qualify as commercial or business activity on its own terms. Whether the Debtors' own litigation activity and personally owned rental-property activity satisfy the "commercial or business activities" component of the "engaged in" requirement is addressed in the next section.

**ii. The Activity Must Be Commercial or Business in Nature**

Section 101(51D)(A) does not define "commercial," "business," or "activities." Courts therefore have looked to the ordinary meaning of those terms, using Merriam-Webster definitions. *See, e.g.*, *Stevens*, 667 B.R. at 436–37; *In re Offer Space, LLC*, 629 B.R. at 305–06; *In re Blue*, 630 B.R. at 188–89; *In re Port Arthur Steam Energy, L.P.*, 629 B.R. at 236–37; *In re Vertical Mac Constr., LLC*, 2021 WL 3668037, at *3. That approach is sound.

Under those ordinary meanings, "commercial" refers to matters "of or relating to commerce," and "commerce" refers to "the exchange or buying and selling of commodities." *In re Offer Space, LLC*, 629 B.R. at 305; *In re Blue*, 630 B.R. at 188–89; *In re Port Arthur Steam Energy, L.P.*, 629 B.R. at 236–37. "Business" refers to "a usually commercial or mercantile

activity engaged in as a means of livelihood," or to "dealings or transactions especially of an economic nature." *In re Offer Space, LLC*, 629 B.R. at 305; *In re Blue*, 630 B.R. at 188–89; *Stevens*, 667 B.R. at 436–37. "Dealings" refers to "friendly or business interactions," and "transactions" refers to "an exchange or transfer of goods, services, or funds."[15] Finally, "activity" refers to "the quality or state of being active: behavior or actions of a particular kind." *In re Offer Space, LLC*, 629 B.R. at 305; *In re Blue*, 630 B.R. at 189; *In re Port Arthur Steam Energy, L.P.*, 629 B.R. at 236–37; *In re Vertical Mac Constr., LLC*, 2021 WL 3668037, at *3. The activity need not be part of an operating business, need not be the debtor's historical core business, and need not satisfy a separate profit-motive requirement. *See In re RS Air, LLC*, 638 B.R. at 410–13.

From those definitions, the following rule emerges. The Court must identify the activity in question and determine whether it is commercial or business under the ordinary meaning of those terms. The word "activity" requires some action, behavior, or state of being active. A profit motive is not required. But there still must be activity, and that activity must have a commercial or business character. It must relate to commerce, commercial or mercantile activity, a means of livelihood, or dealings or transactions especially of an economic nature.

Applying that rule here, the Debtors' personally owned rental-property activity is straightforward. As found above, the Debtors owned the rental properties in their individual capacities, received rent personally, and reported rental-property-related income and activity in their filings and monthly operating reports. That conduct qualifies as "activity" because it involves behavior or actions related to leasing income-producing property. It is also

[15] *See* Dealing, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/dealing (last visited Aug. 31, 2026); Transaction, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/transaction (last visited Aug. 31, 2026).

"commercial" or "business" in nature under the ordinary meaning of those terms. The activity involved economic dealings or transactions and the use of property to generate income. The Debtors' personally owned rental-property activity thus satisfies the "commercial or business activities" component of the "engaged in" requirement for purposes of this Opinion.

The pending Adams County Litigation presents a different question. Following the analysis above, the only portion of the Adams County Litigation that remains available to the Debtors for this part of the analysis is their defense of claims asserted against them personally, including related appeals and proceedings undertaken on their own behalf. That portion of the litigation qualifies as "activity." It involved behavior or actions, including defending claims, pursuing appeals, and participating in proceedings to determine, liquidate, or adjust alleged liabilities. But activity alone is not enough. The activity must also be commercial or business in nature. The Court acknowledges that the Adams County Litigation had a business-related origin and subject matter. It arose from the failed Hauser business venture and concerned asserted liability and disputed obligations arising from that venture. The relevant inquiry, however, is not whether the litigation had a business history, but whether the Debtors' own activity in that litigation was commercial or business in nature.

The Debtors' personal litigation activity does not satisfy the ordinary meaning of "commercial" or "business" on this record. It was not activity in commerce, the buying or selling of commodities, a commercial or mercantile activity engaged in as a means of livelihood, or a "dealing" or "transaction" of an economic nature in the statutory sense. Nor was it the collection or enforcement of the Debtors' own business rights, the preservation or liquidation of their own business assets, or the wind-down of their own commercial operations. It was a response to alleged personal liability. A personal defense to alleged liability is therefore not, standing alone,

"commercial or business" activity. Thus, the Debtors have not shown that their personal defense of the Adams County Litigation was commercial or business activity.

The economic consequences of the litigation do not change that conclusion. The Court recognizes that defending personal liability on claims arising from a failed business venture may affect a debtor's economic position. That effect, however, is not enough. Nearly every defense of a monetary claim affects a debtor's economic position. The relevant definition of "commercial or business activity" refers to "dealings or transactions especially of an economic nature." In context, "dealings" refers to business interactions, and "transactions" refers to exchanges or transfers of goods, services, or funds. The Debtors' personal defense of alleged liability did not involve an exchange or transfer of goods, services, or funds. Nor does its connection to an earlier transaction, without more, make the defense itself a "business interaction" within the ordinary meaning of that term. It was litigation activity undertaken to resist alleged personal liability. Thus, the resulting economic consequences, without more, do not make that activity commercial or business in nature.

That conclusion is also consistent with the structure of § 101(51D)(A). Treating the Debtors' own defense of guaranty liability as commercial or business activity merely because the guarantee arose from or related to a separate entity's business activity would permit the commercial character of the entity's activity to be attributed indirectly to the Debtors. That result would create tension with the parenthetical, which identifies when the activities of a separate entity may be treated as the debtor's own. The statute should not be read to permit, through the defense of guaranty liability, what the parenthetical does not permit directly through the activities of the separate entity.[16]

---

[16] Personal guarantees are a common feature of closely held business financing, and enforcement of those guarantees often accompanies the financial distress of the underlying business. If the negotiation or defense of personal liability

The same conclusion follows even if the Debtors' personal exposure arose from conduct alleged to be fraudulent, unauthorized, outside the scope of any agency relationship, or sufficient to support veil-piercing or personal liability. Those theories may explain why the Debtors could be held personally liable for obligations arising from failed business ventures, but they do not establish that the Debtors were engaged in their own commercial or business activity. Personal liability and personal commercial or business activity are distinct concepts. A finding that a person acted outside the authority or protection of an entity may defeat limited liability or entity separateness protections. But it does not convert separate-entity activity, or misconduct connected to that activity, into "commercial or business activities" of the debtor under § 101(51D)(A).

Nor does the Court hold that litigation can never be commercial or business activity. Litigation may qualify when it is part of the debtor's own commercial or business affairs, such as collecting receivables, enforcing business rights, preserving or liquidating business assets, resolving claims arising from the debtor's own business, or winding down the debtor's own commercial operations. The Debtors made no such showing here. To the extent the litigation activity was conducted for, through, or on behalf of separate entities, it cannot be considered because the condition stated in the parenthetical is not satisfied. To the extent the litigation activity was the Debtors' own personal defense against alleged liability, it does not satisfy the requirement that the activity be commercial or business in nature.

Accordingly, of the activities considered, only the Debtors' personally owned rental-property activity qualifies as commercial or business activity for purposes of this Opinion. The

---

on a guarantee of a separate entity's debt were sufficient, by itself, to establish an individual owner's own commercial or business activity, the parenthetical would lose much of its limiting force. The owner could often rely indirectly on the commercial character of the separate entity's business activity even though the entity itself is not also a debtor under title 11.

Adams County Litigation does not supply a qualifying commercial or business activity of the Debtors on this record. Although portions of that litigation qualify as activity, it does not satisfy the "commercial or business activities" component of the "engaged in" requirement.

**2. Have the Debtors Established That Not Less Than 50 Percent of the Relevant Debt Pool Arose from "the Commercial or Business Activities of the Debtor"?**

Section 101(51D)(A) also contains a debt-composition requirement. It separately requires that "not less than 50 percent" of the debtor's "aggregate noncontingent liquidated secured and unsecured debts as of the date of filing of the petition . . . (excluding debts owed to 1 or more affiliates or insiders) . . . arose from the commercial or business activities of the debtor." 11 U.S.C. § 101(51D)(A). For purposes of this analysis, the Court assumes, without deciding, that the Debtors satisfy the statutory debt-limit requirement.

Applying the debt-composition requirement calls for three determinations. First, the Court must identify the debtor's aggregate noncontingent liquidated secured and unsecured debts as of the petition date, excluding debts owed to affiliates or insiders. Second, the Court must determine which debts in that pool arose from "the commercial or business activities of the debtor." Third, the Court must determine whether the debts identified in the second determination constitute not less than 50 percent of the pool identified in the first determination. The debtor bears the burden of establishing the debt-composition requirement, including each of these determinations. *See Stevens*, 667 B.R. at 434; *In re RS Air, LLC*, 638 B.R. at 414; *In re Offer Space, LLC*, 629 B.R. at 304; *In re Ikalowych*, 629 B.R. at 275.

The Debtors did not carry their burden on this requirement. They identify a debt pool that excludes the asserted Hauser-related liabilities when addressing the Subchapter V debt limit, and they assert generally that more than 50 percent of their debts arose from commercial or business activity. But they do not identify which debts in that pool arose from "the commercial or

business activities of the debtor," nor do they compare the amount of those debts to that pool. They rely instead on the business-related context and history underlying the Adams County Litigation, as well as the size of the Hauser-related liabilities, to carry their burden. Section 101(51D)(A) requires more. It requires specific proof that the required percentage of debts arose from commercial or business activities that may properly be treated as the Debtors' activities, not merely a general assertion that the debts arose from events with a business setting or history.

That failure is sufficient to defeat eligibility. The Court could end the analysis there. For completeness, however, the Court will test the debt-composition requirement under assumptions favorable to the Debtors. The Court is not required to reconstruct the Debtors' statutory calculation or supply proof they did not provide. But even when the record is viewed in that favorable manner, the Debtors still have not established that not less than 50 percent of the relevant debt pool arose from "the commercial or business activities of the debtor."

**a. What Is the Relevant Debt Pool?**

The first determination concerns the relevant debt pool. Under § 101(51D)(A), that pool consists of the Debtors' aggregate noncontingent, liquidated, secured and unsecured debts as of the petition date, excluding debts owed to affiliates or insiders.

Although the Debtors did not provide a complete debt-composition calculation, they identified a debt figure of $758,048.23 when arguing that they satisfied the Subchapter V debt limit. (Doc. 114.) That figure included the mortgage for their residence, an IRS claim, and other non-Hauser unsecured debt. The Debtors did not include the asserted Hauser-related liabilities in that figure. They disputed whether, and to what extent, the Hauser Parties' liabilities were noncontingent and liquidated as of the petition date. They also later argued that the debts asserted by the Hauser Parties should be excluded because they were owed to affiliates or insiders.

The Court need not decide whether either asserted basis for excluding the Hauser-related liabilities is correct. For purposes of this analysis, the Court assumes, without deciding, that the Debtors' $758,048.23 non-Hauser figure is the relevant debt pool. That assumption accepts the Debtors' proposed exclusion of the Hauser-related liabilities without deciding whether any particular liability was contingent or unliquidated, was owed to an affiliate or insider, or was otherwise properly excluded from the statutory debt pool.

### b. Which Debts Arose from "the Commercial or Business Activities of the Debtor"?

Section 101(51D)(A) requires that not less than 50 percent of the relevant debt pool arose from "the commercial or business activities of the debtor." Courts have taken different approaches to this requirement. Some courts read this debt-composition requirement together with the "engaged in" requirement and require the relevant debts to arise from the same "commercial or business activities" that satisfy the "engaged in" requirement. *See, e.g.*, *In re Ikalowych*, 629 B.R. at 287–88. The Court will refer to that approach as the same-activities view. Other courts read the debt-composition requirement separately from the "engaged in" requirement and do not require the relevant debts to arise from the same "commercial or business activities" that satisfy the "engaged in" requirement. *See, e.g.*, *In re Blue*, 630 B.R. at 191–96; *In re Reis*, 2023 WL 3215833, at *4–6. The Court will refer to that approach as the separate-inquiry view.

The choice between those views could matter here because the Debtors' debt-composition theory does not rest on the same activity that satisfies the "engaged in" requirement. On this record, the only activity satisfying the "engaged in" requirement is the Debtors' personally owned rental-property activity. The Debtors, however, rely principally on the Hauser-related liabilities associated with the Adams County Litigation and the failed Hauser business venture.

Under the same-activities view, those liabilities cannot count toward the 50 percent requirement because they did not arise from the rental-property activity. Under the separate-inquiry view, they are not excluded for that reason alone, but they still must arise from commercial or business activities properly treated as the Debtors' activities under § 101(51D)(A). The Court must therefore decide which view better fits the statute.

#### i. The Separate-Inquiry View Better Fits § 101(51D)(A)

Although courts have adopted both views, the separate-inquiry view better fits the statutory language. The statute contains two relevant clauses corresponding to the two requirements identified above. The "engaged in" clause asks whether the debtor is "engaged in commercial or business activities." 11 U.S.C. § 101(51D)(A). That clause is in the present tense and asks what commercial or business activities the debtor was engaged in as of the petition date. The debt-composition clause asks whether not less than 50 percent of the relevant debts "arose from the commercial or business activities of the debtor." *Id.* That clause is not in the present tense. It is source-focused and backward-looking, asking which debts arose from the debtor's current or historical commercial or business activities. The two clauses therefore impose different inquiries covering different time periods and potentially involving different activities.

Congress could have required the debts to arise from the same activities that satisfy the "engaged in" requirement by referring to "those commercial or business activities," "the same commercial or business activities," or "the commercial or business activities in which the debtor is engaged as of the petition date." It did not. Thus, although the repeated phrase "commercial or business activities" carries the same substantive meaning in both clauses, the requirements imposed by those clauses need not be satisfied by the same activities. The separate-inquiry view accounts for that distinction; the same-activities view does not.

This conclusion does not convert the debt-composition requirement into a general business-connection test. The separate-inquiry view permits the Court to consider debts arising from historical commercial or business activities different from the activities satisfying the "engaged in" requirement. But two limits remain. First, the activities must still be commercial or business in nature. A debt does not satisfy the requirement merely because it has a business background, arose in a business setting, was asserted against the debtor personally, or has economic consequences for the debtor.[17] Second, the debt must arise from the commercial or business activities "of the debtor." 11 U.S.C. § 101(51D)(A). As explained above, that phrase refers to the debtor's own commercial or business activities and, where the condition stated in the parenthetical is satisfied, the activities of an affiliate that is also a debtor under title 11.

The separate-inquiry view also better serves Subchapter V's purpose. Subchapter V addresses small-business distress. Its purpose is not limited to commercial or business activity existing exactly as it did on the petition date. Over time, the debtor's own commercial or business activity, or that of a qualifying affiliate that is also a debtor under title 11, may change, wind down, or cease before bankruptcy relief is sought. The debtor may therefore carry debt from commercial or business activities other than those that it was engaged in on the petition date. A rule requiring the relevant debt to arise from the same activities that establish the "engaged in" requirement would exclude those debts merely because the business activity changed form, ceased active operations, or was not the precise activity on the petition date. That reading is too narrow to serve Subchapter V's purpose.

---

[17] *In re Reis* illustrates this limit. Although the court adopted the separate-inquiry view, it held that the debtor's medical school loans did not arise from her commercial or business activities. *In re Reis*, 2023 WL 3215833, at *4–7. The debtor incurred the loans to obtain the education and license that later allowed her to practice medicine, and she eventually opened her own medical practice. Even so, the court concluded that the loans did not satisfy § 101(51D)(A). *Id*. at *6–7. *In re Reis* therefore shows that, even under the separate-inquiry view, a debt does not qualify merely because it has a causal, historical, or economic connection to commercial or business activity.

For those reasons, the Court adopts the separate-inquiry view. The relevant debts need not arise from the same commercial or business activities that satisfy the "engaged in" requirement. But they must arise from commercial or business activities that may be treated as the debtor's activities under § 101(51D)(A). Separate-entity activities may be treated as the debtor's activities for purposes of the debt-composition requirement only if the condition stated in the parenthetical is satisfied.

**ii. Application of the Separate-Inquiry View**

Applying that rule here, the Debtors' reliance on the Hauser-related liabilities presents a threshold problem. For purposes of identifying the relevant debt pool, the Court has assumed that the Debtors' $758,048.23 non-Hauser figure is controlling. Under that assumption, the Hauser-related liabilities are outside the relevant debt pool and therefore cannot count toward the 50 percent requirement. The Court could therefore limit its analysis to the non-Hauser debts.

For completeness, however, the Court will consider the Hauser-related liabilities as though they were included in the relevant debt pool. Even so, the Debtors must show that those liabilities arose from commercial or business activities that may be treated as the Debtors' activities under § 101(51D)(A). They have not made that showing.

That conclusion follows from the Court's earlier analysis of which activities may be treated as the Debtors' own and whether those activities are commercial or business in nature. The Hauser-related liabilities arose, at most, from the failed Hauser business venture, alleged misconduct connected to that venture, personal guarantees of obligations connected to that venture, litigation conduct, or activity conducted for, through, or on behalf of separate entities. Those connections are insufficient. A business setting is not enough. Personal liability is not enough. Litigation conduct is not enough. Nor does reducing a claim to judgment change the

source of the debt for purposes of § 101(51D)(A). The relevant question is whether the debt arose from commercial or business activities that may be treated as the Debtors' activities. For the reasons already discussed, the Debtors have not made that showing. Activity conducted for, through, or on behalf of the separate entities cannot be attributed to the Debtors because the condition stated in the parenthetical is not satisfied. Their personal defense of the resulting liability does not itself constitute commercial or business activity. And the Debtors have not shown that the execution of the guarantees or any alleged misconduct giving rise to personal liability independently constituted qualifying commercial or business activities of the Debtors from which the Hauser-related liabilities arose.

The residence-related debts and attorney-fee debts also do not count. The record identifies 98 East Broadway as the Debtors' residence, not as rental or investment property. The Debtors therefore have not shown that either the Members 1st mortgage debt secured by that property or the Adams County tax debt on that property arose from their personally owned rental-property activity or any other qualifying commercial or business activity. Nor have they shown that the attorney-fee debts owed to Mette, Evans & Woodside or Smigel, Anderson & Sacks arose from qualifying activity. Those obligations appear to arise from legal services rendered in connection with the Adams County Litigation. But the Court has already concluded that the Debtors' personal litigation activity does not constitute qualifying commercial or business activity under § 101(51D)(A). To the extent any portion of those fees instead relates to litigation involving the Debtors' separate business entities, the Debtors likewise have not shown that the underlying activity is attributable to them under the parenthetical.

That leaves, at most, a limited group of non-Hauser debts that the Court will treat favorably to the Debtors for purposes of the final determination. The Court assumes, without

deciding, that the following debts, whether reflected in the claims register or scheduled as undisputed, liquidated, and noncontingent, arose from commercial or business activities properly treated as the Debtors' activities: the M&T Bank claim ($19,829.13), the American Express claim ($33,810.38), the IRS claim ($77,553.42), the Dunes Real Estate claim ($5,250.00), the Members 1st credit-card claim ($4,977.91), the Adams County tax claim on 30–32 West Middle Street ($11,442.73), and the Adams County tax claim on Parcel No. 07F09-0037E ($2,095.13). The aggregate amount of these debts is $154,958.70. The Court makes no finding that any or all of those debts actually arose from the Debtors' qualifying commercial or business activities. It considers them only to test the Debtors' position under the most favorable view reasonably available from the record.

Accordingly, for purposes of the final determination, the debts treated as arising from "the commercial or business activities of the debtor" total $154,958.70. The Court next considers whether those debts constitute not less than 50 percent of the assumed debt pool.

**c. Did Those Debts Constitute Not Less Than 50 Percent of the Assumed Debt Pool?**

The final determination requires a simple comparison. The Court has assumed, for purposes of this analysis, that the relevant debt pool is $758,048.23. To satisfy the debt-composition requirement, the Debtors had to establish that at least $379,024.12 of that amount arose from commercial or business activities properly treated as the Debtors' activities under § 101(51D)(A). But the debts the Court treats as arising from "the commercial or business activities of the debtor" total only $154,958.70. Because that amount falls $224,065.42 short of the amount required, the Debtors have not shown that not less than 50 percent of the assumed debt pool arose from "the commercial or business activities of the debtor." They therefore have not established the debt-composition requirement of § 101(51D)(A).

### C. Confirmation Must Be Denied, and the Motion Is Moot

The Debtors have not established that they are small business debtors under § 101(51D)(A). They therefore have not established that they are eligible debtors for purposes of Subchapter V. *See* 11 U.S.C. § 1182(1). That conclusion controls confirmation. Only a debtor eligible to proceed under Subchapter V may obtain confirmation of a Subchapter V plan. *See* 11 U.S.C. §§ 1189(a), 1191. Because the Debtors have not established their eligibility to proceed under Subchapter V, the Plan does not comply with the applicable provisions of the Bankruptcy Code, and the Debtors have not satisfied the requirements for confirmation. *See* 11 U.S.C. §§ 1129(a)(1), (a)(2), 1191(a), (b).

Confirmation of the Plan will therefore be denied. The Court will also enter an order determining that the Debtors' Subchapter V designation is incorrect.[18] That determination is consistent with Federal Rule of Bankruptcy Procedure 1020(a), under which the case proceeds according to the Debtors' designation "unless and until the court issues an order finding that the statement is incorrect." The case will proceed as a Chapter 11 case to which Subchapter V does not apply, unless otherwise ordered. Because the Court resolves the eligibility dispute in the confirmation context and will enter an order determining that the Debtors' Subchapter V designation is incorrect, the Court need not decide whether the Hauser Parties may obtain separate relief under Federal Rule of Bankruptcy Procedure 1009(a)(2), notwithstanding the expiration of the Rule 1020(b) deadline. The Motion will therefore be denied as moot to the extent it seeks separate relief compelling amendment of the petition or revoking the Subchapter V designation.

---

[18] This determination is made after notice and an opportunity to be heard. The Debtors' Subchapter V eligibility was raised in the confirmation objections and in the Motion. The Debtors responded to those filings, the Court directed further briefing on eligibility, and the parties were heard at argument.

Before concluding, the Court makes the following observation. This result does not mean that individual owners of closely held business entities are categorically unable to obtain Subchapter V relief when their business affairs are conducted through separate entities. It means only that the statutory conditions for relying on separate-entity activity must be satisfied. A different case would be presented if the relevant business entity were itself a debtor under title 11 and the debtor established that the entity satisfied the condition stated in the parenthetical in § 101(51D)(A). But that is not this case. The Debtors seek to rely on the activities of separate entities that are not debtors in this bankruptcy case and whose eligibility, assets, operations, creditors, and reorganization needs are not before the Court. Section 101(51D)(A) does not permit the Court to treat those non-debtor entities' activities as the Debtors' own merely because the Debtors need bankruptcy relief or because those activities form the background of the Debtors' financial distress.

## IV. CONCLUSION

The Debtors seek confirmation of a plan under Subchapter V. To obtain that relief, they must establish that they are eligible Subchapter V debtors. That requires proof that they are "small business debtors" within the meaning of § 101(51D)(A), as incorporated by § 1182(1). The absence of a timely objection under Federal Rule of Bankruptcy Procedure 1020(b) does not relieve the Debtors of that burden at confirmation.

At most, the Debtors established that their personally owned rental-property activity may be treated as their own commercial or business activity for purposes of this Opinion. They did not establish that the Adams County Litigation supplied qualifying commercial or business activity of the Debtors. Nor did they establish that the personal guarantees, judgment-related debt, or other Hauser-related liabilities arose from qualifying commercial or business activities of

the Debtors. To the extent those matters involved activities conducted for, through, or on behalf of separate entities, the Debtors did not establish that those activities may be attributed to them under the condition stated in the parenthetical in § 101(51D)(A).

Nor did the Debtors establish the 50 percent debt-composition requirement. Even assuming without deciding that the Debtors satisfy the statutory debt-limit requirement, they failed to show that not less than 50 percent of the assumed debt pool arose from their personally owned rental-property activity or from any other commercial or business activity properly treated as the Debtors' activities under § 101(51D)(A). They therefore have not established that they are small business debtors under § 101(51D)(A), as incorporated by § 1182(1).

Because the Debtors have not established their eligibility to proceed under Subchapter V, the Plan cannot be confirmed under § 1191. Confirmation of the Plan will be denied. The Court will also enter an order determining that the Debtors' Subchapter V designation is incorrect, and the case will proceed as a Chapter 11 case to which Subchapter V does not apply, unless otherwise ordered. Because the Court resolves the eligibility dispute in connection with confirmation and will enter an order determining that the Debtors' Subchapter V designation is incorrect, the Court need not decide whether the Hauser Parties may obtain separate relief under Federal Rule of Bankruptcy Procedure 1009(a)(2), notwithstanding the expiration of the Rule 1020(b) deadline. The Motion will therefore be denied as moot to the extent it seeks separate relief compelling amendment of the petition or revoking the Subchapter V designation.

An appropriate order will follow.

By the Court,

Henry W. Van Eck

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: August 31, 2026